IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,
P.O. Box 14596
Washington, DC 20044,

    Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530,

    Defendant.

Case No. _____

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.    Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brings this action under Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records from the United States Department of Justice ("DOJ") relating to the DOJ's unprecedented collection of confidential voter information and personally identifiable information ("PII").

2.    CREW's FOIA requests at issue concern the DOJ's recent demands for large volumes of confidential voter information, including full copies of states' computerized voter registration lists, from state election officials across the country. At least 40 states have received

requests to date,[1] seeking information ranging from voter rolls and registration applications to sensitive details such as Social Security and driver's license numbers.[2]

3. State election officials, who are responsible for maintaining accurate voter rolls and ensuring compliance with state and federal election and privacy laws, have resisted these demands and challenged their legality.[3] In response, the DOJ has sued at least 21 states, plus the District of Columbia, for refusing to produce complete copies of their statewide voter registration lists.[4]

4. In September and November 2025, CREW submitted three expedited FOIA requests to DOJ components for records shedding light on the DOJ's legal basis for seeking and plans for using voter PII received from election officials, as well as data sharing agreements

---

[1] Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice https://perma.cc/MQ3U-YCYG (last visited Dec. 16, 2025).

[2] Fredreka Schouten, *Trump administration demands state voter data, including partial social security numbers,* CNN (Sept. 1, 2025), https://www.cnn.com/2025/09/01/politics/trump-voter-demands-social-security.

[3] Patrick Marley & Yvonne Wingett Sanchez, *DOJ hits states with broad requests for voter rolls, election data*, Wash. Post (July 16, 2025), https://www.washingtonpost.com/politics/2025/07/16/trump-voter-fraud-elections/; Yunior Rivas, *DOJ Doubles Down on Demands for Maine's Voter Data, Secretary of State Fires Back*, Democracy Docket (Aug. 20, 2025), https://www.democracydocket.com/news-alerts/doj-doubles-down-on-demands-for-maines-voter-data-secretary-of-state-fires-back.

[4] Press Release, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, Dep't of Just. (Sept. 16, 2025), https://perma.cc/69T5-KVM5; Press Release, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, Dep't of Just. (Sept. 25, 2025), https://perma.cc/ZR3E-UN58 ; Press Release, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, Dep't of Just. (Dec. 2, 2025), https://perma.cc/3BQA-JJ67; Press Release, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws*, Dep't of Just. (Dec. 12, 2025), https://www.justice.gov/opa/pr/justice-department-sues-four-additional-states-and-one-locality-failure-comply-federal; Press Release, *Justice Department Sues Four States for Failure to Produce Voter Rolls*, Dept. of Just. (Dec. 18, 2025), https://www.justice.gov/opa/pr/justice-department-sues-four-states-failure-produce-voter-rolls.

between the DOJ and states or state election officials. To date, the DOJ has failed to make timely determinations on any of these requests.

5. CREW now seeks declaratory and injunctive relief requiring the DOJ to process CREW's FOIA requests on an expedited basis, preserve all records potentially responsive to CREW's requests, and promptly disclose all non-exempt responsive records.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.

7. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(b).

## PARTIES

8. Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies and to ensuring the integrity of government officials and agencies. CREW seeks to empower citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW uses government records made available to it under FOIA and widely disseminates those records to the public.

9. Defendant DOJ is an agency within the meaning of 5 U.S.C. § 552(f).

10. Defendant has possession and control of the requested records and is responsible for fulfilling Plaintiff's FOIA request at issue.

**LEGAL FRAMEWORK**

11. FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

12. Upon receipt of a FOIA request, an agency must make a determination whether to comply with it and notify the requester of that determination within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

13. An agency's failure to make this determination within 20 days is subject to judicial review without exhausting administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

14. Moreover, FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

15. After a FOIA request is received by an agency, it must "make reasonable efforts to search for the records." 5 U.S.C. § 552(a)(3)(C). If the agency identifies any responsive records, the agency must make them "promptly available." *Id.*

16. In "unusual circumstances" an agency may extend the time to respond to a request by no more than 10 working days, provided that the agency gives the requester written notice setting forth the unusual circumstances and the date on which the agency expects to make a determination. 5 U.S.C. § 552(a)(6)(B)(i)-(iii). The FOIA defines "unusual circumstances" as including the need to search for and collect responsive records from offices other than the office processing the request; the need to search for, collect, and examine a "voluminous amount of

separate and distinct records;" and the need to consult with another agency. *Id.* § 552(a)(6)(B)(iii)(I)-(III).

17. Further, agencies shall grant requesters requests for expedited processing of their FOIA requests when they demonstrate "compelling need," as well as "other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i).  "Compelling need" requires the requester to show that they are "a person primarily engaged in disseminating information" with an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II).

18. The DOJ's FOIA regulations also require expedited processing for, among other things, "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(l)(iv).

19. A determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I). The DOJ regulations mirror this requirement. *See* 28 C.F.R. § 16.5(e)(4).

20. Agency action to deny a request for expedited processing, and failure by an agency to respond in a timely manner to such a request, is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

## FACTUAL ALLEGATIONS

21. On March 25, 2025, President Trump signed Executive Order 14248 ("Executive Order"), *Preserving and Protecting the Integrity of American Elections*, with the stated purpose

of protecting "the franchise of American citizens and their right to participate in fair and honest elections."[5]

22.     The Executive Order makes a number of incorrect and misleading assertions about federal elections. For example, the Executive Order repeatedly claims that "the United States has not adequately enforced Federal election requirements" that "prohibit States from counting ballots received after Election Day or prohibit non-citizens from registering to vote."[6] There is no federal law that prohibits counting ballots after Election Day. Instead, these claims conflate *receiving* properly postmarked ballots after Election Day with *voting* after Election Day.[7] The EO also ignores the fact that noncitizen voting is vanishingly rare.[8]

23.      Relying on these assertions, the Executive Order calls for vastly expanding the federal government's role in administering elections in two key ways.

24.     First, the Executive Order purports to require states to share an unprecedented volume of voter data with the federal government. For example, the Executive Order calls upon the Secretary of Homeland Security to review state voter records, requested "through subpoena where necessary," alongside federal immigration databases so that it may supply the Attorney General with "complete information on all foreign nationals who have indicated on any immigration form that they have registered or voted" in an election.[9] The Attorney General is

---

[5] Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025).
[6] *Id.*
[7] *See, e.g.*, Va. Code Ann. § 24.2-709 (allowing absentee ballots postmarked on or before election day and received by noon on the third day following the election); *see also* Tex. Elec. Code Ann. § 86.007 (setting the deadline to receive most ballots to 5:00 p.m. on the day after election day.).
[8] *See* Jude Joffe-Block, *6 facts about false noncitizen voting claims and the election*, NPR (Nov. 5, 2024) https://perma.cc/62L9-RVSC ("After the 2016 election, the Brennan Center for Justice … surveyed local election officials in 42 jurisdictions with high immigrant populations and found just 30 cases of suspected noncitizens voting out of 23.5 million votes cast, or 0.0001%.").
[9] Exec. Order No. 14248, *supra* note 5.

also required to "take all appropriate action to enter into information-sharing agreements . . . with the chief State election official or multi-member agency of each State."[10]

25. Second, the Executive Order leverages the DOJ's authority to compel state obedience with the federal government's demands for large volumes of confidential voter information. For example, the Attorney General is called to "prioritize enforcement of Federal election integrity laws in such States" and "review for potential withholding of grants and other funds" for state and local law enforcement.[11]

26. Pursuant to the Executive Order, at least 40 states have received letters from the DOJ Civil Rights Division since May 2025 demanding full copies of their statewide voter registration files.[12] The files requested include sensitive information such as voters' full name, date of birth, residential address, driver's license numbers, and Social Security numbers.[13] The DOJ cites various authorities to collect this information, including the Civil Rights Act of 1960, 52 U.S.C. § 20701 *et seq.*, the National Voter Registration Act, 52 U.S.C. § 20503 *et seq.*, and the Help America Vote Act, 52 U.S.C. § 20901 *et seq.*[14]

27. The Criminal Division has also sent emails[15] and letters to chief election officials in at least 13 states requesting meetings to discuss an "information-sharing agreement."[16]

---

[10] *Id.*
[11] *Id.*
[12] Martinez-Ochoa, *supra* note 1.
[13] *Id.*; *see, e.g.*, Letter from Harmeet K. Dhillon, Assistant Att'y Gen., to Shenna Bellows, Me. Sec'y of State (Aug. 18, 2025), https://perma.cc/Z8QQ-3DAR.
[14] *Id.*
[15] *See, e.g.*, E-mail from Scott Laragy, Principle Deputy Director of the Executive Office for U.S. Att'ys, and Paul Hayden, Senior Counsel at the Dept. of Justice Criminal Division, to Stephanie Thomas, Sec'y of State of Conn. (July 10, 2025), https://perma.cc/5ZC9-AD6P; *see also* E-mail from Scott Laragy, Principle Deputy Director of the Executive Office for U.S. Att'ys, and Paul Hayden, Senior Counsel at the Dept. of Justice Criminal Division, to Gregg Amore, Sec'y of State of RI (July 10, 2025), https://perma.cc/3QVN-XCXT.
[16] Martinez-Ochoa, *supra* note 1. Those states include Oregon, Nevada, Arizona, New Mexico, Nebraska, North Dakota, Wisconsin, Georgia, Michigan, Virginia, Pennsylvania, Vermont, Connecticut, and Rhode Island.

28. As a result of these efforts, the DOJ is reportedly amassing "the largest set of national voter roll data it has ever collected."[17]

29. At least two states—Indiana and Wyoming—have provided its complete statewide voter registration list in response to the Criminal Division's request.[18]

30. Ten other states have provided a publicly available version of their voter list, or instructions on how to obtain it.[19]

31. DOJ has brought legal action against 18 states for failing to provide their full voter registration files.[20]

32. The DOJ is reportedly sharing state voter roll information with the Department of Homeland Security ("DHS").[21]

33. The DOJ has also confirmed that state voter roll data provided in response to requests from the Civil Rights Division is "being screened for ineligible voter entries."[22]

34. In conversations with at least two states, prosecutors from the Civil Rights Division asked election officials to run their entire voter list through the Systematic Alien

---

[17] Devlin Barrett & Nick Corsaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, NY Times (Sept. 9, 2025) https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.
[18] Martinez-Ochoa, *supra* note 1.
[19] *Id.*
[20] *Id.*
[21] Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Stateline (Sept. 12, 2025) https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security/; *See also* Sarah N. Lynch, *US Justice Department considers handing over voter roll data for criminal probes, documents show*, Reuters (Sept. 9, 2025). https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09/ ("The U.S. Justice Department is in talks with Homeland Security Investigations about transferring the sensitive voter roll data it has collected from states for use in criminal and immigration-related investigations, according to government documents seen by Reuters. The voter registration data was gathered over the last several months by the DOJ's Civil Rights Division . . .").
[22] Shorman, *supra* note 21.

Verification for Entitlements ("SAVE") system[23] which the Trump administration has unlawfully transformed into a national citizenship data bank that states are using to purge voter rolls and open criminal investigations.[24]

35. Numerous states, including Texas, Louisiana, and Virginia, are already using SAVE to identify potential noncitizens on their state voter lists.[25]

36. DHS has announced that, as of November 3, the expanded SAVE system had "enabled state voting agencies to submit over 46 million voter verification queries and has also allowed federal agencies to submit over 110 million queries to help verify eligibility for federally funded benefits."[26]

**CREW's September 4, 2025 FOIA Request to the DOJ Criminal Division**

37. On September 4, 2025, CREW submitted a FOIA request to the DOJ Criminal Division. *See* Exhibit A.

38. CREW sought the following records:

   1. All formal or informal data sharing agreements between DOJ and any state or election official providing access to personally identifiable information ("PII").

---

[23] Barrett & Corsaniti, *supra* note 17; Jude Joffe-Block, *A lawsuit tries to block the Trump administration's efforts to merge personal data*, NPR (Sept. 30, 2025, at 4:11 ET), https://perma.cc/3TCL-UYGE.

[24] Makena Kelly & Vittoria Elliott, *DOGE is Building a Master Database to Surveil and Track Immigrants*, WIRED (Apr. 18, 2025), https://perma.cc/64BE-VGED; Hannah Natanson et al., *DOGE aims to pool federal data, putting personal information at risk*, Wash. Post (May 7, 2025), https://perma.cc/J528-AMVN.

[25] Va. Exec. Order No. 53, *Enhancing Security for Election Preparedness* (Sept. 12, 2025), https://perma.cc/VY8P-UZGY; Press Release, *Louisiana First State to Utilize New Voter List Maintenance Database*, La. Sec'y of State (May 21, 2025), https://perma.cc/MF6F-3DTU; Press Release, *After Gaining Access to SAVE Database, Secretary Nelson Refers Potential Noncitizen Voting Cases for Investigation*, Tex. Sec'y of State (June 5, 2025), https://perma.cc/WZ3C-FUXL.

[26] U.S. Citizenship and Immigr. Servs., *USCIS Enhances Voter Verification Systems* (Nov. 3, 2025), https://perma.cc/H68J-5PC8.

        2.        Agency records sufficient to show:

            a.    All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning DOJ's legal basis for requesting and accessing PII held by election officials.

            b.    All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of the PII it seeks from election officials, This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match, link or otherwise combine data obtained from an election official with any other data.

            c.    Privacy or data security safeguards in place for protecting PII shared by election officials.

Exhibit A.

39. CREW sought a fee waiver in accordance with 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k).

40. CREW also sought expedited processing in accordance with 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e), on the grounds that without timely disclosure the public will not know how federal officials are using or storing their voter data, delaying a response would undermine voters' state and federal privacy rights, and that these issue has been the subject of national press coverage raising possible questions about the government's integrity which affect public confidence in election administration and compliance with state and federal privacy laws. *See* Exhibit A.

41. On September 16, 2025, the Criminal Division acknowledged receipt of the request and denied CREW's request for expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(iv). *See* Exhibit B.

42. To date, CREW has received no other communications from the DOJ Criminal Division regarding the request.

**CREW's September 4, 2025 FOIA Request to the DOJ Civil Division**

43.     On September 4, 2025, CREW submitted a FOIA request to the DOJ Civil Division. *See* Exhibit A. CREW sought the following records:

1. All formal or informal data sharing agreements between DOJ and any state or election official providing access to personally identifiable information ("PII").

2. Agency records sufficient to show:

    d. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning DOJ's legal basis for requesting and accessing PII held by election officials.

    b. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of the PII it seeks from election officials, This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match, link or otherwise combine data obtained from an election official with any other data.

    c. Privacy or data security safeguards in place for protecting PII shared by election officials.

Exhibit A.

44.     CREW sought a fee waiver in accordance with 5 U.S.C. § 552(a)(4)(A) and 28 C.F.R. § 16.10(k).

45.     CREW also sought expedited processing in accordance with 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e), on the grounds that without timely disclosure the public will not know how federal officials are using or storing their voter data, delaying a response would undermine voters' state and federal privacy rights, and that these issue has been the subject of national press coverage raising possible questions about the government's integrity which affect public confidence in election administration and compliance with state and federal privacy laws. *See* Exhibit A.

46. On September 8, 2025, the Civil Division acknowledged receipt of the request and denied CREW's request for expedited processing for failure to "identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." Exhibit C.

47. On September 16, 2025, the Civil Division again denied CREW's request for expedited processing for failure to establish that the request is "subject of widespread and exceptional media interest" and asserting that the request "does not pertain to a matter 'in which there exist[s] possible questions about the [federal] government's integrity which affect public confidence.'" The Civil Division also informed CREW that the request falls within the "unusual circumstances" exception to prescribed FOIA time limits. No explicit timeline for records production was provided. *See* Exhibit D.

48. To date, CREW has received no other communications from the DOJ Civil Division regarding the request.

**CREW's November 4, 2025 FOIA Request to the DOJ Civil Rights Division**

49. On November 4, 2025, CREW submitted a FOIA request to the DOJ Civil Rights Division. *See* Exhibit E. CREW sought the following records:

   a. All formal or informal data sharing agreements between DOJ and any state or election official providing access to personally identifiable information ("PII").

   b. All records relating to DOJ's use of the Department of Homeland Security's Systematic Alien Verification for Entitlements ("SAVE") system for purposes of verifying the citizenship of voters or voter registrants in any state.

   c. Agency record sufficient to show:

      i. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of the PII it seeks from election officials. This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match, link, or

        otherwise combine data obtained from an election official with any other data.

     ii. Privacy or data security safeguards in place for protecting PII shared by election officials.

  Exhibit E.

  50. CREW sought a fee waiver in accordance with 5 U.S.C. § 552(a)(4)(A) and DOJ 28 C.F.R. § 16.10(k).

  51. CREW also sought expedited processing in accordance with 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e), on the grounds that without timely disclosure the public will not know how federal officials are using or storing their voter data, delaying a response would undermine voters' state and federal privacy rights, and that these issue has been the subject of national press coverage raising possible questions about the government's integrity which affect public confidence in election administration and compliance with state and federal privacy laws. *See* Exhibit E. CREW argued the exigency is increased by the fact that individuals may face criminal investigation and prosecution based on the data their states share with the federal government. *See id*.

  52. On November 4, 2025, CREW received the following automatic reply from the Civil Rights Division:

> At present, the government has not been funded. It is uncertain how many days this office will be closed. The FOI/PA Branch will be unable to respond to email nor to telephone messages until funding has been authorized. Please resubmit your FOIA/PA request upon restoration of government appropriations, thank you.

  Exhibit F.

  53. To date, CREW has received no other communications from the DOJ Civil Rights Division regarding the request.

## CREW'S CLAIMS FOR RELIEF

### COUNT I
### Violation of FOIA – Failure to Grant Expedited Processing
### (5 U.S.C. § 552)

54. CREW re-alleges and incorporates by reference all preceding paragraphs.

55. In its September 4, 2025 and November 4, 2025 FOIA requests, CREW properly sought records within the possession, custody, and control of Defendant.

56. CREW further requested expedited processing of its FOIA requests.

57. CREW properly sought expedition from Defendants because of the urgency to inform the public about an actual or alleged federal government activity.

58. CREW further properly sought expedition because the subject of the request is a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

59. CREW is primarily engaged in disseminating information.

60. Defendants wrongfully denied CREW's requests for expedited processing and improperly failed to process CREW's requests on an expedited basis.

61. An agency's denial of a request for expedited processing or an agency's failure to respond within 10 calendar days to a request for expedited processing is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

62. By denying CREW's requests for expedition and failing to expeditiously release all requested non-exempt records to CREW, Defendant is in violation of FOIA.

63. Accordingly, CREW is entitled to injunctive and declaratory relief requiring Defendants to process and disclose all non-exempt requested records to CREW on an expedited basis.

## COUNT II
## Violation of FOIA – Wrongful Withholding of Agency Records
## (5 U.S.C. § 552)

64. CREW re-alleges and incorporates by reference all preceding paragraphs.

65. In its September 4, 2025 and November 4, 2025 FOIA requests, CREW properly sought records within the possession, custody, and control of Defendant.

66. Defendant wrongfully withheld agency records requested by CREW by failing to make determinations on CREW's requests within the statutorily prescribed time period of 20 business days, as required by 5 U.S.C. § 552(a)(6)(A), and by continuing to withhold documents that are non-exempt and responsive to CREW's FOIA requests.

67. CREW has constructively exhausted its administrative remedies.

68. Accordingly, CREW is entitled to injunctive and declaratory relief requiring Defendants to immediately process and disclose all non-exempt requested records to Plaintiff.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendant DOJ to grant expedited processing of CREW's FOIA requests, and immediately and fully process those requests and disclose all non-exempt documents to CREW;

(2) Declare CREW is entitled to the expedited processing and disclosure of the the non-exempt records it has requested under FOIA;

(3) Order the Defendants to preserve all records, in whatever form they exist, potentially responsive to all of CREW's pending FOIA requests prior to and during the processing of these requests;

(4) Order Defendants to grant CREW's requests for fee waivers;

(5) Provide for expeditious proceedings in this action;

(6) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld and ensure compliance with this Court's orders;

(7) Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(8) Grant such other relief as the Court may deem just and proper.


Date:  December 19, 2025                           Respectfully Submitted,


                                                   /s/ Kayvan Farchadi_____
                                                   Kayvan Farchadi (D.C. Bar No. 1672753)
                                                   Nikhel Sus (D.C. Bar No. 1017937)
                                                   CITIZENS FOR RESPONSIBILITY AND
                                                    ETHICS IN WASHINGTON
                                                   P.O. Box 14596
                                                   Washington, D.C. 20004
                                                   Telephone: (202) 408-5565
                                                   Fax: (202) 588-5020
                                                   kfarchadi@citizensforethics.org
                                                   nsus@citizensforethics.org

                                                   *Counsel for Plaintiff*