UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>      Plaintiff,<br><br>   v.<br><br>DEPARTMENT OF JUSTICE,<br><br>      Defendant. | Civil Action No. 25-4426 (CKK) |

## **OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities .......................................................................................................... ii

Introduction ........................................................................................................................ 1

Background ......................................................................................................................... 2

    I.      Legal Background .................................................................................... 2

    II.     Factual Background ................................................................................. 3

          A.     The Criminal Division FOIA Request. ....................................... 4

          B.     The Civil Rights Division FOIA Request. ................................. 5

    III.    Procedural History ................................................................................. 5

Legal Standards ................................................................................................................. 6

Argument ............................................................................................................................ 8

    I.      CREW is Unlikely to Succeed on the Merits ......................................... 8

          A.     CREW is Not Entitled to Expedited Processing. ....................... 8

          B.     Processing a FOIA Request Outside the Statutory Deadline Does Not Amount to a FOIA Violation Entitling CREW to a Preliminary Injunction. ................................................................ 15

    II.     CREW Has Not Established Irreparable Harm. ...................................... 16

    III.    The Balance of the Equities and the Public Interest Weigh Against Granting Preliminary Relief. .................................................................. 19

    IV.    The Court Should Order that CREW Post a Bond as a Condition of any Preliminary Relief. ................................................................................... 25

Conclusion ........................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of N. California v. Dep't of Just.*,
  Civ. A. No. 04-4447, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005)........................................... 9

*ACLU v. Dep't of Just.*,
  321 F. Supp. 2d 24 (D.D.C. 2004) .......................................................................................... 12

*Al-Fayed v. CIA*,
  254 F.3d 300 (D.C. Cir. 2001) ........................................................................................ passim

*Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*,
  573 F. Supp. 3d 78 (D.D.C. 2021) .......................................................................................... 21

*Ass'n of Flight Attendants v. Pension Benefit Guar. Corp.*,
  372 F. Supp. 2d 91 (D.D.C. 2005) .......................................................................................... 17

*Aviles-Wynkoop v. Neal*,
  978 F. Supp. 2d 15 (D.D.C. 2013) .......................................................................................... 17

*Benisek v. Lamone*,
  585 U.S. 155 (2018).................................................................................................................. 7

*Brayton v. Off. of the U.S. Trade Representative*,
  641 F.3d 521 (D.C. Cir. 2011) ................................................................................................ 16

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*,
  498 F. Supp. 3d 87 (D.D.C. 2020) ............................................................................. 10, 12, 13

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ..................................................................................... 6, 16, 19

*Chen v. FBI*,
  153 F.4th 1289 (D.C. Cir. 2025)............................................................................................. 14

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
  58 F.3d 738 (D.C. Cir. 1995) ................................................................................................... 7

*Clevinger v. Advoc. Holdings, Inc.*,
  134 F.4th 1230 (D.C. Cir. 2024)............................................................................................. 16

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006) ................................................................................................ 20

*Hunter v. FERC*,
    527 F. Supp. 2d 9 (D.D.C. 2007) ............................................................ 17, 18

*Cornish v. Dudas*,
    540 F. Supp. 2d 61 (D.D.C. 2008) .............................................................. 17

*CREW v. Dep't of Just.*,
    436 F. Supp. 3d 354 (D.D.C. 2020) ............................................................. 3

*CREW v. FEC*,
    711 F.3d 180 (D.C. Cir. 2013) .................................................................. 15

*CREW v. U.S. DOGE Service*,
    769 F. Supp. 3d 8 (D.D.C. 2025) ........................................................... 12, 22

*Ctr. for Pub. Integrity v. Dep't of Def.*,
    411 F. Supp. 3d 5 (D.D.C. 2019) ........................................................... 10, 13

*Daily Caller v. Dep't of State*,
    152 F. Supp. 3d 1 (D.D.C. 2015) ........................................................... 21, 25

*Damus v. Nielsen*,
    Civ. A. No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) .................... 7

*Davis v. Pension Ben. Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) .................................................................. 7

*Democracy Forward Found. v. OMB*,
    780 F. Supp. 3d 61 (D.D.C. 2025) ........................................................... 8, 22

*Dorfmann v. Boozer*,
    414 F.2d 1168 (D.C. Cir. 1969) ................................................................ 20

*Electronic Privacy Information Center v. Dep't of Defense*,
    355 F. Supp. 2d 98 (D.D.C. 2004) .............................................................. 2

*Farris v. Rice*,
    453 F. Supp. 2d 76 (D.D.C. 2006) .............................................................. 8

*Fund for Animals v. Frizzell*,
    530 F.2d 982 (D.C. Cir. 1975) ................................................................. 18

*Gordon v. Holder*,
    632 F.3d 722 (D.C. Cir. 2011) .................................................................. 6

*Henke v. Dep't of Interior*,
   842 F. Supp. 2d 54 (D.D.C. 2012) ................................................................. 19

*Info. Privacy Ctr. v. Dep't of Just.*,
   15 F. Supp. 3d 32 (D.D.C. 2014) .................................................................. 20

*Kim v. FINRA*,
   698 F. Supp. 3d 147 (D.D.C. 2023) ............................................................. 19

*Leadership Conf. on Civil Rights v. Gonzales*,
   404 F. Supp. 2d 246 (D.D.C. 2005) ................................................. 11, 12, 13

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ........................................................................... 8

*Long v. Dep't of Homeland Sec.*,
   436 F. Supp. 2d 38 (D.D.C. 2006) ............................................................... 22

*Morley v. CIA*,
   894 F.3d 389 (D.C. Cir. 2018) ..................................................................... 15

*Mott Thoroughbred Stables, Inc. v. Rodriguez*,
   87 F. Supp. 3d 237 (D.D.C. 2015) ............................................................... 17

*Munaf v. Geren*,
   553 U.S. 674 (2008) ..................................................................................... 21

*Nat'l Conf. on Ministry to the Armed Forces v. James*,
   278 F. Supp. 2d 37 (D.D.C. 2003) ............................................................... 20

*Nken v. Holder*,
   556 U.S. 418 (2009) ....................................................................................... 7

*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) ..................................................................................... 24

*Open Am. v. Watergate Special Prosec. Force*,
   547 F.2d 605 (D.C. Cir. 1976) ....................................................... 12, 15, 16, 25

*Pantoja v. Martinez*,
   No. 21-7118, 2022 WL 893017 (D.C. Cir. 2022) ........................................... 8

*Progress v. CFPB*,
   Civ. A. No. 17-0686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) .......................... 22, 25

*Protect Democracy Project*,
    498 F. Supp. 3d 132 (D.D.C. 2020) ................................................................. 12, 13

*Santos v. Collins*,
    Civ. A. No. 24-1759 (JDB), 2025 WL 1823471 (D.D.C. Feb. 26, 2025)..................... 16, 17, 18

*Scottsdal Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.,*
    678 F. Supp. 3d 88 (D.D.C. 2023) ......................................................................... 7

*Sierra Club v. Dep't of Energy*,
    825 F. Supp. 2d 142 (D.D.C. 2011) ................................................................. 17, 18

*Sierra Club v. EPA*,
    793 F. Supp. 3d 158 (D.D.C. 2025) .................................................................... 18

*The Nation Magazine v. Dep't of State*,
    805 F. Supp. 68 (D.D.C. 1992) ......................................................................... 23

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024) ........................................................................................ 7

*Toensing v. Dep't of Just.*,
    890 F. Supp. 2d 121 (D.D.C. 2012) .................................................................... 16

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ........................................................................................ 20

*Wash. Post v. Dep't of Homeland Sec.*,
    459 F. Supp. 2d 61 (D.D.C. 2006) ................................................................. 12, 13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................................ 6, 7

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) .......................................................................... 17

**Statutes**

5 U.S.C. § 552(a)(3)(A) ........................................................................................ 21

5 U.S.C. § 552(a)(6)(A)(i) ...................................................................................... 3

5 U.S.C. § 552(a)(6)(E).......................................................................................... 2, 8

5 U.S.C. § 552a(b) ............................................................................................... 14

5 U.S.C. § 552a(e)(1)............................................................................................ 14

5 U.S.C. § 552(h)(3) ................................................................................................ 22

**Rules**

Fed. R. Civ. P. 65(c) ............................................................................................... 26

**Regulations**

28 C.F.R. § 16.5(e)(4) ............................................................................................... 3

28 C.F.R. § 16.8(a) .................................................................................................... 3

**Other Authorities**

Exec. Order 14,248: Preserving and Protecting the Integrity of American Elections,
  90 Fed. Reg. 14005 (Mar. 25, 2025) ................................................................. 14, 18

# INTRODUCTION

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed this lawsuit under the Freedom of Information Act ("FOIA") seeking expedited processing of identical FOIA requests submitted to components of the Department of Justice (the "Department"). Impatient with the operational realities of handling the countless FOIA requests the Department receives, CREW has now moved for a preliminary injunction, seeking preferential access to the FOIA resources of the Department's Criminal Division and Civil Rights Division. CREW offers no persuasive reason for this Court to oblige.

First, CREW cannot establish a likelihood of success on the merits because CREW is not entitled to expedited processing. CREW is also unlikely to succeed on the merits of its FOIA claim because an agency's failure to produce records within twenty business days in the face of heavy caseloads does not constitute a violation of FOIA.

Second, CREW has failed to establish irreparable harm because CREW's requested relief—rapid production of government records—does not address the alleged harm that CREW asserts—the Department's interactions with various States related to the collection of certain voter information.

Third, the balance of the equities and the public interest swing decisively against issuing a preliminary injunction. It is not in the public's interest to short circuit the prescribed FOIA litigation process, undermine Congress's express wishes that litigation be a last resort to resolving FOIA disputes, and allow CREW to jump the line ahead of all other requesters. Requiring the Divisions to process records at the pace CREW demands also puts at risk the public interest in ensuring that only non-exempt material is released.

At bottom, this is a routine FOIA request and the Court should treat it as such. For these reasons, the Department respectfully requests that the Court deny CREW's motion for a preliminary injunction and permit the parties to file a joint status report in ninety days.

## BACKGROUND

### I.    Legal Background

Agencies ordinarily process FOIA requests on a first-in, first-out basis. In 1996, Congress amended FOIA to provide for "expedited processing" of certain categories of requests. *See* Electronic Freedom of Information Amendments of 1996 (EFOIA), Pub. L. No. 104-231, § 8, 110 Stat. 3048, 3051-52 (codified at 5 U.S.C. § 552(a)(6)(E)). Expedition, when granted, entitles requesters to move ahead of requests filed previously by other persons but behind other requests previously granted expedited processing. *See Electronic Privacy Information Center v. Dep't of Defense*, 355 F. Supp. 2d 98, 104 (D.D.C. 2004). And, even when expedited processing is granted, that status only requires that the agency process the records "'as soon as practicable.'" *Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001) (quoting 552(a)(6)(E)(iii)). That standard necessarily encompasses the very considerations—limited agency resources to handle a high volume of FOIA requests and the need for an orderly review of records to ensure only non-exempt material is released—that warrant denial of Plaintiff's request for preliminary injunctive relief. The FOIA provides no specific timetables for processing any particular request as to which expedition is granted. *See id.*

As part of FOIA, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency." *Id.* § 552(a)(6)(E)(i)(II). Department regulations provide for expedited processing of FOIA requests where:

    (i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

    (ii) An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information;

    (iii) The loss of substantial due process rights; or

    (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

28 C.F.R. § 16.5(e)(1)(i)-(iv). Outside of expedited processing, FOIA provides that when an agency receives a proper FOIA request, it must determine within twenty business days whether to comply with such request. 5 U.S.C. § 552(a)(6)(A)(i).

Any adverse decision is appealable to the Office of Information Policy. 28 C.F.R. § 16.8(a). "If a request for expedited processing is denied, any appeal of that decision shall be acted on expeditiously." 28 C.F.R. § 16.5(e)(4). Courts, however, have held that requesters do not need to administratively appeal a denial of expedited processing before seeking judicial relief on that determination. *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 436 F. Supp. 3d 354, 359 (D.D.C. 2020) (explaining that "FOIA uses different language in the provision relating to denials of requests for expedited processing: '[a]gency action to deny or affirm denial of a request for expedited processing . . . shall be subject to judicial review'").

## II.  <u>Factual Background</u>

This lawsuit concerns three separate FOIA requests CREW submitted to components of the Department: the Criminal Division, the Civil Division, and the Civil Rights Division. Compl. (ECF No. 1) ¶¶ 4, 5. CREW's preliminary injunction, however, focuses on CREW's requests for expedited processing "of CREW's FOIA requests to the Civil Rights Division and Criminal Division" and asks for an order compelling production of "all nonexempt records along with a

Vaughn index on a rolling basis, processing no fewer than 5,000 pages of potentially responsive records per month."  PI Mot. (ECF No. 8) at 1; *see also* Pl.'s Proposed Order (ECF No. 8-4). Therefore, only CREW's requests to the Civil Rights Division and the Criminal Division are at issue for purposes of CREW's motion for a preliminary injunction.

> **A.      The Criminal Division FOIA Request.**

On September 4, 2025, CREW submitted a FOIA request to the Department's Criminal Division (the "September Request,") seeking agreements between the Department and various states regarding access to personally identifiable information, "formal or informal policies, determinations or conclusions" concerning the "legal basis for requesting and accessing [personal information] held by election officials," records regarding the scope of use by the Department of the personal information, and any privacy and data security safeguards for protecting the personal information.  Compl (ECF No. 1) ¶¶ 37-38; *see also* Ex. 1, Declaration of Mark H. Herrington ("Herrington Decl.) ¶ 7 (attached hereto).  CREW sought a fee waiver and expedited processing, Compl (ECF No. 1) ¶ 39, 40.  The Criminal Division timely acknowledged the request, assigned it administrative tracking number CRM-302349203, and denied CREW's request for expedited processing.  *See* Herrington Decl. ¶ 8; Criminal Division Response (ECF No. 1-2) at 2-3.  The response notified CREW of its right to administratively appeal within ninety days the denials of expedited processing.  *See* Criminal Division Response (ECF No. 1-2) at 2-3.  Rather than administratively appeal, CREW filed this lawsuit.  Herrington Decl. ¶ 10.

Although expedited processing was not granted, upon receipt of the FOIA request, the Criminal Division initiated a search.  *Id*. ¶ 9.  The Criminal Division expects to complete the search by February 27, 2026, and endeavors to make an interim release within sixty days after that, or by approximately April 28, 2026.  *Id*. ¶¶ 9, 12.

**B.    The Civil Rights Division FOIA Request.**

On November 4, 2025, and at the height of a historic lapse of appropriations, CREW submitted to the Civil Rights Division a similar request (the "November Request") for agreements between the Department and various states regarding access to personally identifiable information, "[a]ll records relating to [the Department's] use of the Department of Homeland Security's Systematic Alien Verification for Entitlements ('SAFE') system for purposes of verifying the citizenship of voters or voter registrants in any state," records regarding the scope of use by the Department of the personal information, and any privacy and data security safeguards for protecting the personal information.  *See* Compl. (ECF No.) ¶ 49; Ex. 2, Declaration of Killian Kagle ("Kagle Decl.) ¶¶ 5, 8 (attached hereto).  That request asked for a fee waiver and expedited processing.  Compl. (ECF No. 1) ¶¶ 51, 52; Kagle Decl. ¶ 7.  Upon submitting the request, CREW received an automatic response that FOIA operations had been suspended due to the lapse of appropriations and directing the requestor to resubmit the request upon the restoration of government appropriations.  Compl. (ECF No. 1) ¶ 52.

The Civil Rights Division acknowledged receipt of CREW's FOIA request by letter dated January 13, 2026, assigning it reference number 26-00045-F.  Kagle Decl. ¶ 9.  On the same day, the Civil Rights Division initiated a search of its Voting Section, the office in the Civil Rights Division likely to maintain responsive records.  *Id*. ¶ 10.  That search is ongoing.  *Id*.

## III.    Procedural History

CREW sued on December 19, 2025.  *See* Compl. (ECF No. 1).  Count I alleges improper denial of CREW's requests for expedited processing.  *Id*. ¶¶ 54-63.  Count II alleges wrongful withholding of agency records.  *Id*. ¶¶ 64-68.  The Complaint asks for an order granting expedited processing, disclosure of all records, grant of a fee waiver, and other relief.  *Id*. at 15-16.  CREW

waited until January 7, 2026, to serve the U.S. Attorney's Office. Proof of Service (ECF No. 3-4) (email showing CREW served the Civil Division electronic inbox on January 7, 2026).

Forty-two days after initiating the lawsuit, CREW on January 30, 2026, moved for a preliminary injunction. *See generally* PI Mot. (ECF No. 8). The Criminal Division was not made aware of this lawsuit and the motion for preliminary injunction until February 2, 2026, Herrington Decl. ¶ 11, the business day after CREW moved for a preliminary injunction, *see generally* PI Mot. (ECF No. 8). Despite the asserted urgency underlying CREW's request for preliminary injunctive relief, CREW waited approximately three months to challenge the initial denial of expedited processing, waited approximately three weeks to effectuate service of process for this lawsuit (notwithstanding that service on the U.S. Attorney's Office can be accomplished by email), and then waited an additional three weeks to move for preliminary injunctive relief. These unexplained delays alone support denial of Plaintiff's motion. *See Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011) (the absence of diligence in seeking preliminary injunctive relief "may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong" because "delay indicates a lack of irreparable harm").

For the reasons set forth below, the Department opposes Plaintiff's motion.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The moving party bears the burden of persuasion and must demonstrate "by a clear showing" that the requested relief is warranted. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). A "court must be persuaded

as to all four factors." *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.,* 678 F. Supp. 3d 88, 100 (D.D.C. 2023).  The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another.  *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)).  The Supreme Court subsequently reaffirmed its disagreement with the sliding scale approach holding that "a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20).  Because preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not [even] follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).  Even if the movant can show a strong likelihood of success on the merits but fails to make a sufficient showing of irreparable injury or public interest, the Court must deny the request for preliminary injunctive relief without considering the other factors.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

And where a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher

standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017, at *1 (D.C. Cir. 2022) (characterizing injunction that would reinstate the plaintiff in his prior leadership roles as a "mandatory preliminary injunction . . . requir[ing] a higher standard than an ordinary preliminary injunction"); *but see League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (rejecting distinction between a mandatory and prohibitory injunction).

## ARGUMENT

"Preliminary injunctions in the FOIA context are extraordinarily rare." *Democracy Forward Found. v. OMB*, 780 F. Supp. 3d 61, 66 (D.D.C. 2025) (J. Sooknanan). Congress amended FOIA to provide for expedited processing of requests for agency records only in narrow circumstances. *Id.* (citing *Al-Fayed.*, 254 F.3d at 303). "'Congress' rationale for a narrow application is clear: Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment.'" *Id.* (quoting *Al-Fayed*, 254 F.3d at 303) (cleaned up).  Indeed, CREW has not established any of the *Winter* elements.  At base, CREW has not identified a sufficiently imminent event that would justify expediting its three FOIA requests, including the two at issue in the instant motion.

## I.    **CREW is Unlikely to Succeed on the Merits**

### A.    **CREW is Not Entitled to Expedited Processing.**

CREW asserts two bases for entitlement to expedited processing: an urgent need and exceptional media interest in a matter questioning "the government's integrity."  PI Mem. (ECF No. 8-1) at 27.  As noted above, the FOIA expedited processing provision was added in 1996 by the Electronic Freedom of Information Act Amendments, Pub. L. 104–231, § 8, 110 Stat. 3048,

3051–52.  The D.C. Circuit, in examining the legislative history of that amendment, noted that "'the specified categories for compelling need are intended to be narrowly applied.'"  *Al–Fayed*, 254 F.3d at 310 (citation modified).  The Circuit reiterated Congress's concern for agencies' "'finite resources'" and the possibility that "an unduly generous approach" to expedited processing would unfairly disadvantage other requesters, even those who do qualify for expedition, because prioritizing all requests would effectively prioritize none." *Id.*

"Compelling need" requires both that the expedited processing request be made by a "person primarily engaged in disseminating information," and that a requester meeting that requirement also establish an "urgency to inform."  5 U.S.C. § 552(a)(6)(E)(v)(II).  CREW has established neither requirement.  First, although the expedited processing requests attempt to establish that CREW is engaged in disseminating information, the requests fail to establish that dissemination of information constitutes its primary function.  Indeed, CREW's own description of its main activities on its website fail to mention the dissemination of information.  *See* https://www.citizensforethics.org/about/ (last visited Feb. 8, 2026) (describing CREW's "mission" as fighting to hold the government accountable through "bold legal actions," "in-depth investigations" and "public advocacy work").  And even if dissemination of information is implied in the activities that CREW identifies, that is insufficient to meet the statutory standard.  *ACLU of N. California v. Dep't of Just.*, Civ. A. No. 04-4447, 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) (requester failed to show that information dissemination was the main activity of the ACLU, even though it "engages in substantial dissemination of information").

Second, the required urgency to inform also is lacking.  In evaluating whether there is an urgency to inform, courts consider at least three factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response

would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al–Fayed*, 254 F.3d at 310. "The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard." *Id.* Even significant public interest is insufficient to establish an urgency to inform. The information requested must pertain to a matter of "current exigency" such that "'significant adverse consequence'" would result "if the[] request for expedited processing of these or any other documents were denied, and they therefore received the documents later rather than sooner." *Id.* at 311.

The Court's review is *de novo* and based on the record before the agency at the time of the determination. *Id.* at 308. The Court therefore looks to CREW's request for expedited processing as submitted to the Department, not to arguments newly asserted in its motion for preliminary injunction.

Under this standard, CREW's arguments for entitlement to expedited processing are unpersuasive. In support of its claim of urgency, CREW cites ongoing federal government activity and interactions with various States and alleges illegal government conduct. September FOIA Request (ECF No. 1-1) at 5-6. These types of arguments to foist one FOIA requestor in front of many others have been rejected by this Court. In evaluating whether a delay would compromise the interests of FOIA requesters like CREW, the Court often looks to objective time limits or specific events that will occur in the near future. *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 98–99 (D.D.C. 2020) (concluding that "delay would compromise the Brennan Center's significant interest in informing the public concerning actual or alleged Federal Government activity related to the 2020 census and reapportionment" because "the 2020 census and reapportionment . . . will largely conclude early next year" (citation modified)); *Ctr. for Pub.*

*Integrity v. Dep't of Def.*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019) ("Given that the congressional hearings . . . are 'imminent,' the Court finds that Plaintiff adequately demonstrated that the value of the information would be lessened or lost absent expedited processing."); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) ("Furthermore, the urgency element is met because of the upcoming expiration at the special provisions of the Voting Rights Act in 2007.").

CREW ties its September Request to the November 2025 elections.  September FOIA Request (ECF No. 1-1) at 6.  But those elections have come and gone.  CREW cannot now in litigation rewrite its request by pointing to upcoming elections, PI Mem. (ECF No. 8-1) at 21, ("Primary season is already well underway, with three states holding primary elections on March 3, 2026."), because judicial review is limited to the record before the agency at the time the decision was made.  *Al–Fayed*, 254 F.3d at 310.  For this reason alone, CREW cannot claim the requisite urgency to inform to support expedited processing of the September Request.

Perhaps recognizing the futility of its position, CREW submitted its Civil Rights Division Request on Election Day—November 4, 2025.  November Request (ECF No. 1-5) at 2.  That request ties CREW's expedited processing request to the November 2026 elections.  *Id*. at 6.  But even that request fails to articulate a sufficient need for expedited processing.  *See Al–Fayed*, 254 F.3d at 310 (listing factors).

CREW first cites to two articles from August 19, 2025, and September 12, 2025, on obscure websites and a Department of Justice September 25, 2025, press release announcing a lawsuit against States regarding voter registration records to allege the existence of a "current exigency to the American public."  November Request (ECF No. 1-5) at 6 n.10-12.  Under CREW's theory, any requestor pointing to two articles and a press release touching on election issues can establish

entitlement to expedited processing. That is not the law, particularly when the next election was one year away at the time the request was submitted. *See Open Am. v. Watergate Special Prosec. Force*, 547 F.2d 605, 615 (D.C. Cir. 1976) ("If everyone could go to court when his request had not been processed within thirty days, and by filing a court action automatically go to the head of the line at the agency, we would soon have a listing based on priority in filing lawsuits, i. e., first into court, first out of the agency. This would be nothing but an inflation of a simple administrative request to a United States district court action, and like inflation in the monetary world would ultimately profit no one, since no one would be assigned a priority position any different than he would achieve if all applicants were left to the priorities fixed by the agency.").

Where requestors have established entitlement to expedited processing, they have provided evidence of "extensive media interest." *CREW v. U.S. DOGE Service*, 769 F. Supp. 3d 8, 27 (D.D.C. 2025) (citation modified) (Requestor provided "many articles on the subject" to establish immediate public concern); *see also Brennan Ctr. for Just.*, 498 F. Supp. 3d at 97 ("The Brennan Center's submissions to the agencies cite more than fifty recent articles from a variety of sources on the census, reapportionment, and the potential use of citizenship data in this process[.]"); *ACLU v. Dep't of Just.*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004) ("over a dozen additional news articles"). CREW here comes nowhere close to meeting its burden. And even if an exigency existed at the time of those publications, CREW offers nothing to establish that any exigency is "current." *Al–Fayed*, 254 F.3d at 310.

CREW cites three cases for the proposition that "approaching elections further heighten the urgency to inform the public about the subjects of CREW's requests." PI Mem. (ECF No. 8-1) at 30 (citing *Protect Democracy Project*, 498 F. Supp. 3d 132, 140 (D.D.C. 2020), *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74-75 (D.D.C. 2006), and *Gonzales*, 404 F. Supp.

2d at 260). *Democracy Project* concerned a FOIA request submitted on July 17, 2020, less than four months before the 2020 general elections. *Protect Democracy Project*, 498 F. Supp. 3d at 135. *Washington Post* concerned a FOIA request submitted on June 12, 2006, less than five months prior to the 2006 midterm elections. *Wash. Post*, 459 F. Supp. 2d at 64. The district court in both cases considered motions for preliminary injunction a month before an election. *See Protect Democracy Project*, 498 F. Supp. 3d at 137 ("On October 2, 2020, Protect Democracy filed its lawsuit against DOJ and subsequently moved for a preliminary injunction on October 9, 2020." (citation modified)); *Wash. Post*, 459 F. Supp. 2d at 65 ("The plaintiff subsequently commenced this action on October 10, 2006, seeking injunctive relief."). CREW points to no authority requiring expedited of a FOIA request submitted nearly a year ahead of an election.[1] *See, e.g.*, *Ctr. for Public Integrity*, 411 F. Supp. 3d at 10 ("[P]reliminary injunctions are ordinarily not awarded in FOIA cases."); *Brennan Ctr. for Just.*, 498 F. Supp. 3d at 101 (explaining that "a few rare FOIA cases" have established irreparable harm based on processing delays). Nor is an injunction required because both the Criminal Division and the Civil Rights Division are already processing CREW's requests. *See* Herrington Decl. ¶ 9, 12; Kagle Decl. ¶¶ 6-10.

Specifically, "[o]n September 16, 2025, the FOIA/PA Unit initiated an initial search effort in the Criminal Division section likely to maintain responsive records." Herrington Decl. ¶ 9. The Criminal Division "expects to finalize the search in this matter, including working with the Criminal Division's Information Technology Management ("ITM") Unit staff to conduct an electronic search of relevant email communications and shared drives by February 27, 2026." *Id.*

---

[1]     *Gonzales* is inapposite because the request for expedited processing was not tied to an upcoming election but rather to the expiration of certain provisions in the Voting Rights Act. *Gonzales.*, 404 F. Supp. 2d at 260.

¶ 12. "The FOIA/PA Unit anticipates issuing at least an interim disclosure determination within 60 days after the searches are completed or by approximately April 28, 2026." *Id.*

Similarly, the Civil Rights Division "[b]y letter dated January 13, 2026, CRT acknowledged receipt of Plaintiff's FOIA request, assigning it reference number 26-00045-F." Kagle Decl. ¶ 9. "On the same day, CRT initiated a search of its Voting Section, which is the office in CRT likely to maintain records responsive to Plaintiff's request." *Id.* ¶ 10. "That search is ongoing." *Id.*

CREW's allegation of government misconduct as justification for expedited processing likewise fails. CREW asserts that the Privacy Act "generally requires federal agencies to identify a lawful authority and purpose for requesting personal records." September FOIA Request (ECF No. 1-1) at 5 (citing 5 U.S.C. § 552a(b)); *see also* November Request (ECF No. 1-5) at 6-7. CREW is simply wrong on the law. The Privacy Act "prohibits government agencies from publicly disclosing certain records about individuals without prior consent from the individual to whom the record pertains." *Chen v. FBI*, 153 F.4th 1289, 1291 (D.C. Cir. 2025) (citing 5 U.S.C. § 552a(a)(4), (b)). More, the Privacy Act permits the government to maintain "information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). Section 5 of Executive Order 14,248 directs the Attorney General to enter into information-sharing agreements with the States for law enforcement purposes. Exec. Order 14,248: Preserving and Protecting the Integrity of American Elections § 5, 90 Fed. Reg. 14005, 14008 (Mar. 25, 2025). CREW does not allege that such purpose is improper under the Privacy Act. While CREW's request certainly seeks information about the Department's policies and safeguards for the information, nothing distinguishes this FOIA request from any other FOIA request similarly requesting government

policies and procedures.  CREW's stated bases for expedited processing thus fail to meet the demanding standard for that relief.

**B.      Processing a FOIA Request Outside the Statutory Deadline Does Not Amount to a FOIA Violation Entitling CREW to a Preliminary Injunction.**

CREW asserts it is likely to succeed on its FOIA claim because the Department did not issue determinations within the statutorily required twenty business days.  PI Mem. (ECF No. 8-1) at 24-27.  This Court can easily dispatch with that faulty argument because missing the statutory deadline "is true of a vast number of FOIA requests."  *Morley v. CIA*, 894 F.3d 389, 393 (D.C. Cir. 2018); *see also CREW v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("We agree entirely with the FEC" that it is "'a practical impossibility to process all [FOIA] requests completely within twenty days…. We are intimately familiar with the difficulty that FOIA requests pose for executive and independent agencies."); *Open Am.*, 547 F.2d at 616 (FOIA statutory deadlines are "not mandatory but directory").  Where an agency does not meet those deadlines, "*the* 'penalty' is that the agency cannot rely on the administrative exhaustion requirement" and the agency's actions on that FOIA request can become subject to "judicial oversight." *CREW*, 711 F.3d at 189-190 (emphasis added).

Indeed, both the Criminal Division and Civil Rights Division experience heavy caseloads. *See* Herrington Decl. ¶ 15-16 (noting that there are 1,365 open requests the Criminal Division's administrative queue, 125 requests in the litigation queue, "the vast majority of which pre-date" CREW's); Kagle Decl. ¶¶ 19-26 (describing increase in number and complexity of FOIA request, and noting that the current backlog is more than 600 requests).  Both Divisions process records on a first-in, first-out basis.  *See* Herrington Decl. ¶ 17 ("Generally speaking, Criminal Division processes requests on a first- in, first-out basis"); Kagle Decl. ¶¶ 11 (The Civil Rights Division "generally processes FOIA requests on a first-in, first-out (FIFO) basis and maintains two FOIA

processing tracks: simple and complex.").  The D.C. Circuit has found that approach equitable and consistent with an agency's obligations under FOIA.  *Open Am.* 547 F.2d at 615.  CREW readily admits that it received responses to each of its FOIA requests.  Compl. (ECF No. 1) ¶¶ 41, 46, 52.

Indeed, temporal delays play no role in assessing an agency's compliance with its FOIA obligations.  When a plaintiff challenges an agency's response to a FOIA request, the agency must show that (1) it "conducted a search reasonably calculated to uncover all relevant documents," and (2) "each document that falls within the class requested either has been produced or is wholly exempt from the Act's inspection requirements." *Toensing v. Dep't of Just.*, 890 F. Supp. 2d 121, 131 (D.D.C. 2012) (citation modified).  "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Like everybody else, CREW just needs to wait until its request reaches the top of the queue.  If it is still dissatisfied, the parties can cross-move for summary judgment.  Short of that, CREW cannot establish likelihood of success on the merits of its wrongful withholding claim.

## II.    **CREW Has Not Established Irreparable Harm.**

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  Even if a plaintiff can show standing, that does not mean they have shown irreparable harm because "while standing and irreparable harm overlap, they are far from the same." *Santos v. Collins*, Civ. A. No. 24-1759 (JDB), 2025 WL 1823471, at *6 (D.D.C. Feb. 26, 2025).  The moving party must demonstrate an injury that is "'both certain and great'" and "of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id*. (emphasis in original) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 298). The injury must "be beyond remediation," meaning that where, as here, the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Clevinger v. Advoc.*

*Holdings, Inc.*, 134 F.4th 1230, 1234 (D.C. Cir. 2024) (citation modified).  A plaintiff has the burden to put forth sufficient evidence to satisfy this high standard.  "The movant cannot simply make 'broad conclusory statements' about the existence of harm. Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm[.]'"  *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)).  In short, "irreparable harm requires not only a concrete, particularized harm, but a harm that is sufficiently serious and irremediable so as to warrant the extraordinary relief of a court's intervention in a case before factual and legal development."  *Santos*, 2025 WL 1823471, at *6.

CREW's motion fails at its origin because, to satisfy the irreparable harm prong, CREW must show that "the alleged harm will directly result from the action which the movant seeks to enjoin."  *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (1985).  In other words, CREW must make a clear showing that the injunction "will alleviate the threat of irreparable harm."  *Hunter v. FERC*, 527 F. Supp. 2d 9, 15 (D.D.C. 2007); *see also Ass'n of Flight Attendants v. Pension Benefit Guar. Corp.*, 372 F. Supp. 2d 91, 101 (D.D.C. 2005) (finding no irreparable injury where it was unclear whether granting an injunction would curtail the alleged injury).  "Thus, a preliminary injunction is particularly ill-suited [where] it would not necessarily redress the alleged irreparable harm."  *Mott Thoroughbred Stables, Inc. v. Rodriguez*, 87 F. Supp. 3d 237, 247 (D.D.C. 2015); *see also Sierra Club v. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) ("It would make little sense for a court to conclude that a plaintiff has shown irreparable harm when the relief sought would not actually remedy that harm."). "The inquiry must be whether the plaintiff has shown that the relief sought will actually prevent irreparable harm."  *Sierra Club*, 825 F. Supp. 2d at 153.

CREW asserts irreparable harm on account of the Department's interactions with various States related to the collection of certain voter information. PI Mem. (ECF No. 8-1) at 34-35. According to CREW, "that alone establishes irreparable harm." *Id*. at 35. Not so because the relief CREW seeks will not "actually prevent irreparable harm." *Sierra Club*, 825 F. Supp. 2d at 153. CREW does not challenge the propriety of the Department's interactions with the various states, or indeed Executive Order 14,248 setting the government's policy. Nor does CREW ask for an injunction to preclude the Attorney General from implementing Section 5 or any other part of Executive Order 14,248. CREW's sole request is access to government records, without even asserting it would enable it to take unspecified actions related to this issue. CREW, therefore, has not made a clear showing that an injunction granted by this Court in this case "will alleviate the threat of irreparable harm." *Hunter*, 527 F. Supp. 2d at 15. Finding irreparable harm in these circumstances would mean that any requestor seeking government records about a challenged executive order necessarily suffers irreparable harm.

Even assuming that CREW has asserted an information deficit injury, CREW does not explain why such injury is irreparable. *Santos*, 2025 WL 1823471, at *6. CREW submitted its FOIA request in September and November 2025 but waited to file suit until December. *See generally* Compl. (ECF No. 1). Even then, CREW waited over forty days to move for a preliminary injunction without explanation. "The D.C. Circuit has held that a party's 'inexcusable' forty-four-day delay in seeking a preliminary injunction 'bolstered' the conclusion that "an injunction should not issue." *Sierra Club v. EPA*, 793 F. Supp. 3d 158, 165 (D.D.C. 2025) (quoting *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975)).

Nor does CREW explain what efforts, if any, it has made to obtain the requested information from other sources. For example, CREW seeks all "formal or informal data sharing

agreements between DOJ and any state or election official providing access to personally identifiable information[.]" November Request (ECF No. 1-5) at 2. Such records would presumably be also available through a State's equivalent of FOIA. Were the subject of the FOIA requests be of the paramount public importance that CREW claims, then surely CREW would be expected to pursue every available avenue to obtain the information. CREW does not explain if has done so, and if not, why not. In any event, both the Criminal Division and the Civil Rights Division are actively processing CREW's FOIA requests. *See* Herrington Decl. ¶¶ 9, 12; Kagle Decl. ¶¶ 9-10. And, even if the Court were to find that expedited processing was warranted, that would only require these Divisions to process the requests as soon as "practicable" which, given the volume of requests they are handling with limited resources, would not be immediate in any event.

For these reasons, CREW cannot make a clear showing of irreparable harm, which in itself is sufficient to deny CREW's motion. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."); *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) ("[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors.").

## III.    The Balance of the Equities and the Public Interest Weigh Against Granting Preliminary Relief.

The third and fourth factor tilt decisively against granting a preliminary injunction here. *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims."), appeal dismissed, No. 23-7136, 2025 WL 313965 (D.C. Cir.

Jan. 27, 2025). Here a preliminary injunction would not be in the public interest and would harm other requesters, including nonlitigants.

The traditional purpose of a preliminary injunction is to "preserve the status quo" so that the court can issue a meaningful decision on the merits. *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) (citation modified). FOIA injunctions, of the kind CREW seeks here depart from this purpose. Requiring agencies to produce documents at a specified rate, as CREW requests, "alter[s], rather than preserve[s], the status quo by commanding [a] positive act." *Elec. Info. Privacy Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (citations modified). Such mandatory injunctions are disfavored as a general matter—and should not be issued except in truly extraordinary circumstances, which FOIA requests rarely if ever pose. *See, e.g., id.* (mandatory injunctions require "the moving party [to] meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction") (citations omitted*); see also Nat'l Conf. on Ministry to the Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) ("A district court should not issue a mandatory preliminary injunction unless the facts and law clearly favor the moving party." (citation modified)).

Separately, a preliminary injunction may not be a way for a plaintiff to short circuit the litigation process, and obtain the full relief it seeks on the merits. *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) ("a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits."); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits."). Yet in a FOIA case such as this one, an order directing an agency to produce records is the ultimate relief CREW seeks. *Compare* Compl. (ECF

No. 1) at 15-16 *with* Proposed Order (ECF No. 8-4). Granting ultimate relief in the guise of a preliminary injunction is improper. *See, e.g., Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 6-7 (D.D.C. 2015).

Moreover, FOIA establishes its own specialized procedural framework controlling the processing of FOIA requests and procedures for FOIA litigation. *See, e.g.*, 5 U.S.C. § 552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and must be filed in accordance with published rules and procedures); *id*. § 552(a)(6)(E)(iii) (requiring FOIA requests granted expedited processing to be processed as soon as practicable); *id*. § 552(a)(4)(C) (requiring responsive filing within thirty days of service of a complaint). Sidestepping this statutory framework through emergency relief undermines Congressional intent and serves to disadvantage other requestors and litigants whose requests must then give way to CREW's interests. CREW should not be permitted to use the "extraordinary and drastic remedy" of an injunction, *Munaf v. Geren*, 553 U.S. 674, 689 (2008), as a means of jumping ahead of other requests or consuming FOIA resources thereby disadvantaging other FOIA requesters (including those whose FOIA requests had also been granted expedited processing, or are subject to court-ordered production).

Indeed, permitting CREW to proceed with a preliminary injunction would incentivize more FOIA litigation, undermining Congress's expressed wishes that litigation be a last resort for FOIA disputes, not the default option. "Court dockets in this district overflow with [FOIA] matters." *Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 79 (D.D.C. 2021). Plaintiffs, like CREW, all too often do not avail themselves of the multiple "alternative[s] to litigation" that Congress created specifically to "help reduce the number of requests that are eventually resolved through costly and time-consuming litigation." 153 Cong. Rec. H16788, 16,790 (Dec. 18, 2007). Congress established at each agency a "FOIA Public Liaison, who shall assist in the resolution of

any disputes between the requester and the agency." 5 U.S.C. § 552(a)(6)(B)(ii). It also created a government-wide Office of Government Information Services to "offer mediation services to resolve disputes . . . as a nonexclusive alternative to litigation." 5 U.S.C. § 552(h)(3). The inclusion of two different voluntary alternatives to litigation signals Congress's preference for encouraging FOIA requesters and agencies, both acting in good faith, to minimize the costs and burdens of FOIA. Yet, CREW failed to avail itself of these options and now seeks to sidestep the orderly litigation process. The Court should not reward CREW's misguided efforts to the detriment of all other requesters and litigants.

Indeed, Courts in this district routinely deny requests for preliminary injunctions in FOIA cases. *See, e.g., Democracy Forward,* 780 F. Supp. 3d at 79 (denying motion for preliminary injunction, which, in the FOIA context, requires "'more than just show[ing] a likelihood of success that [the requestor] is entitled to the expedited processing of its requests'"); *CREW v. U.S. DOGE Service*, 769 F. Supp. at 18-19 (denying motion for preliminary injunction even where the agency had granted a request for expedited processing); *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (given the "broad scope of plaintiff's requests," denying motion for preliminary injunction to compel processing within twenty days, and explaining that "[t]he government has not yet had a chance to review its files, prepare and file a dispositive motion, and provide the Court the information necessary to make a decision on any material that might be subject to an exemption"); *Progress v. CFPB*, Civ. A. No. 17-0686 (CKK), 2017 WL 1750263, at *1 (D.D.C. May 4, 2017) (denying request for a preliminary injunction mandating expedited processing and production where requester failed to show a likelihood of success on the merits and irreparable harm); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, Civ. A. No. 03-2078 (D.D.C. Oct. 20, 2003), ECF No. 4, slip op. at 1 (denying, sua sponte, a request "'enjoining defendant [Department

of Justice] from continuing to deny plaintiff expedited processing of plaintiff's Freedom of Information Act request'" because such relief "would effectively grant all the relief plaintiff seeks"), *vacated as moot*, 2004 WL 2713119 (D.C. Cir. 2004).

The primary effect of granting CREW a preliminary injunction would prejudice other requesters who would be pushed further back in the processing queue and would have to wait longer to receive records. Herrington notes that CREW's FOIA request sits at approximately the 1,111st spot in the administrative request queue and 125th in the litigation queue, and that, to meet CREW's demands in its motion for a preliminary injunction, the Criminal Division "would have to displace those other, FOIA requests (administrative and litigation cases), the vast majority of which pre-date Plaintiff's request, including the requests for which expedition was granted." Herrington Decl. ¶ 17. Indeed, the Criminal Division "cannot meet that deadline without significantly compromising its responsibilities regarding other FOIA requesters" because "hypothetically processing 5,000 pages per month would require 2 or 3 personnel to spend the majority of their time on Plaintiff's request, which would equate to 25-30% of the Division's non-supervisory staff." *Id.* ¶ 18. Kagle similarly warns that requiring the Civil Rights Division to process 5,000 pages per month would consume approximately thirty percent of the Division's processing capacity, thereby "disadvantaging other requesters with pending requests." Kagle Decl. ¶¶ 28. FOIA was intended to be available to all members of the public, not just those who are professional FOIA requesters, like CREW, who have the resources to file a complaint in district court and move for preliminary injunctive relief. It is unfair, particularly on this record, for CREW to jump ahead of other requesters who filed before CREW, and who are patiently waiting in line for their requests to be processed. *See The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding entry of preliminary injunction expediting a FOIA request over other

pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of the FOIA").

This District is intimately familiar with the havoc an unwarranted order for large productions can cause on an agency's FOIA operation. In recent years, the Food and Drug Administration ("FDA") has been subject to two concurrent orders entered in two Northern District of Texas FOIA cases, monopolizing FDA's resources. *See Pub. Health & Med. Pros. for Transparency* ("*PHMPT*") *v. FDA*, Civ. A. No. 21-1058 (N.D. Tex.) ("*PHMPT 1*") and *PHMPT v. FDA*, Civ. A. No. 22-0915 (N.D. Tex.) ("*PHMPT 2*"). As a result of those orders and subsequent orders in the same cases, numerous FOIA matters in this District have been stayed, with stays now extending into 2027. *See* Order (ECF No. 20), *Informed Consent Action Network v. FDA*, Civ. A. No. 25-0824 (AHA) (D.D.C. Jan. 29, 2026) (granting 18-month stay until and including April 16, 2027); Order (ECF No. 21), *Informed Consent Action Network v. FDA*, Civ. A. No. 25-cv-0823 (JEB) (D.D.C. Oct. 16, 2025), (granting 18-month stay until April 16, 2027); Min. Order, *Children's Health Def. v. FDA*, Civ. A. No. 23-2316 (LLA) (D.D.C. Sept. 16, 2025) (extending stay 18 months, until February 22, 2027, with status reports every 90 days). CREW offers no reasonable explanation for denying responses to the hundreds of other patiently waiting requestors.

Moreover, CREW's argument that a preliminary injunction will further FOIA's purposes of informing the citizenry, PI Mem. (ECF No. 8-1), at 41, is unavailing given that every FOIA request should do precisely that: "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). As this Court has observed, "expediting FOIA requests is not an end in itself, as it means that either some requests are merely put ahead of others, or that expedited processing is rendered meaningless, as expediting

- 24 -

all requests is tantamount to expediting none." *Progress*, 2017 WL 1750263, at *7. Diverting limited resources to accelerate the processing of CREW's requests in the manner CREW demands necessarily will be to the detriment of other requesters, many of whom submitted their expedited requests earlier than CREW. *Open Am.*, 547 F.2d at 614 ("We have no doubt that the Government officials would comply promptly and faithfully with any order this court issued giving preferential, expedited treatment to the request of Open America. They would, of course, given their finite human and financial resources, do so by taking personnel away from other prior requests which the FBI is now engaged in processing.").

The public "likewise has an interest in ensuring that only non-exempt materials are released, and consequently, that agencies have sufficient time to review materials before they are produced." *Progress*, 2017 WL 1750263, at *7 (citing *Daily Caller*, 152 F. Supp. 3d at 15). With limited resources working to process all outstanding requests as quickly as possible—including those in which expedited processing was granted—the Divisions have a responsibility to balance the public's interest in disclosure with equally important public and private interests in safeguarding potentially sensitive information. Such balancing cannot be done responsibly by rushing CREW to the front of the line to produce records likely to be subject to various withholdings.

For all of the above reasons, the balance of the equities swing decisively against granting CREW's motion.

## IV.    The Court Should Order that CREW Post a Bond as a Condition of any Preliminary Relief.

Although preliminary injunctive relief is not warranted, were it granted, Defendants respectfully request that any injunctive relief be accompanied by a bond. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an

amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The D.C. Circuit recently clarified that "injunction bonds are generally required." *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025), *reh'g en banc denied* (July 16, 2025). A bond is appropriate here given the substantial resources CREW asks the Department to devote to respond to CREW's FOIA requests were its motion granted.

## CONCLUSION

For these reasons, the Court should deny CREW's motion for a preliminary injunction and permit the parties to file a joint status report in ninety days.

Dated: February 9, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____ /s/ *Dimitar P. Georgiev* _____
DIMITAR P. GEORGIEV, D.C. Bar # 1735756
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252 – 7678

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

       Plaintiff,

   v.

DEPARTMENT OF JUSTICE,

       DEFENDANT.

Civil Action No. 25-4426 (CKK)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's motion for a preliminary injunction, Defendant's opposition, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED, and it is further

ORDERED that the parties shall file a joint status report in ninety days from this Order informing the Court of the status of Plaintiff's FOIA requests.

SO ORDERED:

_____
Date

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge