**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>───────────────────────────────</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>**CITIZENS FOR RESPONSIBILITY AND**</td><td>)</td><td></td></tr>
<tr><td>**ETHICS IN WASHINGTON,**</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Case No. 25-cv-04426-CKK</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>**U.S. DEPARTMENT OF JUSTICE,**</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant.</td><td>)</td><td></td></tr>
<tr><td>───────────────────────────────</td><td>)</td><td></td></tr>
</table>

## DECLARATION OF KILIAN KAGLE

I, Kilian Kagle, declare the following to be true and correct:

1.      I am the Chief of the Freedom of Information/Privacy Act (FOI/PA) Branch of the Civil Rights Division (CRT or the Division) of the United States Department of Justice (DOJ) in Washington, D.C.  My duties include supervision of the FOI/PA Branch, which is responsible for processing all record access requests pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA) 5 U.S.C. § 552a, which are received by the Division.

2.      I make the statements herein based on my personal knowledge, on information acquired in the course of performing my official duties, and on conclusions and determinations reached and made in accordance therewith.

3.      In my capacity as Chief of CRT's FOI/PA Branch, I supervise a staff of attorneys and Government Information Specialists, as well as a contract Program Manager, whose

1

collective mission is to effectively plan, develop, direct, and manage responses to requests for access to CRT records and information pursuant to:  the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; DOJ's Touhy regulation; Presidential, Attorney General, and CRT policies, directives, and procedures; judicial decisions; and Inspector General and Government Accountability Office (GAO) requests.

4.      Due to the nature of my official duties, I am familiar with the procedures followed by CRT in responding to FOI/PA requests generally and to Plaintiff's FOIA request specifically. The purpose of this declaration is to explain the basis for CRT's proposed processing schedule in this case.

**BACKGROUND OF PLAINTIFF'S FOIA REQUEST**

5.      By letter dated November 4, 2025, Citizens for Responsibility and Ethics (CREW) submitted a FOIA request to CRT seeking:

> 1.  All formal or informal data sharing agreements between DOJ and any state or election official providing access to personally identifiable information ("PII").
>
> 2.  All records relating to DOJ's use of the Department of Homeland Security's Systematic Alien Verification for Entitlements ("SAVE") system for purposes of verifying the citizenship of voters or voter registrants in any state.
>
> 3.  Agency records sufficient to show:
>
>      a.  All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of PII it seeks from election officials.  This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match,

2

link, or otherwise combine data obtained from an election official with any other data.

    b.   Privacy or data security safeguards in place for protecting PII shared by election officials.

Exhibit A.

6.      The request covers the period "January 20, 2025 to the date this request is processed." *Id.*

7.      CREW sought expedited processing and a fee waiver. *Id.*

8.      Plaintiff submitted this request to CRT while hundreds of thousands of government employees were furloughed due to a lapse in appropriations for the Executive Branch which lasted from October 1 to November 12, 2025. CRT's FOI/PA Branch employees not excepted from the furlough.

9.      By letter dated January 13, 2026, CRT acknowledged receipt of Plaintiff's FOIA request, assigning it reference number 26-00045-F. Exhibit B.

10.     On the same day, CRT initiated a search of its Voting Section, which is the office in CRT likely to maintain records responsive to Plaintiff's request. That search is ongoing.

## CRT'S FOI/PA BRANCH WORKFLOW

11.     CRT generally processes FOIA requests on a first-in, first-out (FIFO) basis and maintains two FOIA processing tracks: simple and complex. While expediting a request moves it from behind non-expedited requests in a processing track, it does not move it in front of *all* requests in the track. Instead, it takes its place in line behind previously expedited requests.

12.     In addition to me, CRT currently employs four Government Information Specialists (GIS), one Supervisory GIS, and five non-supervisory attorneys to process FOIA and Privacy Act requests.  CRT also employs a contract Program Manager to provide technical support to the FOI/PA program.

13.     To best serve the requesting public and prevent the monopolization of CRT's FOI/PA program by a few large requests, we must carefully balance multiple competing demands to ensure the best use of our finite resources.  To that end, CRT utilizes its available human resources in parallel tracks, depending on whether a request is administrative or in litigation.  Most CRT's FOI/PA requests do not result in litigation.  Accordingly, CRT relies on its GIS staff to handle and manage the bulk of the administrative process, thus allowing its attorney staff to direct their focus to requests in litigation.

14.     Currently, at the administrative stage, GIS staff members are responsible for, *inter alia,* receiving and responding to FOI/PA requests; communicating with requesters about their requests if there are issues that need to be resolved; conducting and/or initiating searches for responsive records; fielding questions about searches and assisting in resolution of any issues; receiving potentially responsive records, conducting responsiveness reviews, and processing responsive records for disclosure; consulting with internal stakeholders and other agencies to ensure that their equities are properly addressed during processing; and making productions of any responsive, non-exempt records to requesters.

15.     Attorneys provide guidance and support to GISs with administrative requests, as necessary, and are responsible for all FOI/PA litigation filed against CRT or involving CRT equities.  Once a request is in litigation, one of two paths lay ahead.

a.     If the request was resolved prior to litigation, attorneys evaluate CRT's response to ensure that its searches, processing, and exemption and segregation decisions are defensible or if they may need some modifications.  If modifications are necessary, the attorneys will take the steps necessary to address any concerns.

b.     If the request was not resolved prior to litigation, attorneys take over responsibility for resolving the request, which can include some or all of the following: conducting or initiating searches, as necessary, and otherwise ensuring that CRT's searches are adequate and defensible; fielding questions about searches and assisting in resolution of any issues; receiving potentially responsive records, conducting responsiveness reviews, and processing responsive records for disclosure; consulting with internal stakeholders and other agencies to ensure that their equities are properly addressed during processing; and making productions of any responsive, non-exempt records to requesters.

16.     Regardless of which path a litigation follows, attorneys are responsible for preparing *Vaughn* indexes and declarations to support motions for summary judgment; drafting and/or reviewing drafts of other motions, status reports, and pleadings; assisting the Assistant U.S. Attorneys/DOJ Trial Attorneys assigned to represent CRT in court; and otherwise performing the full range of agency counsel responsibilities in relation to the litigation.

17.    In litigation cases where requests are not fully resolved at the administrative stage, CRT has instituted a policy of reviewing and processing records in 250-page increments per month per request (or per litigation if multiple requests are at issue in a particular lawsuit). This policy derives from and is part of CRT's effort to ensure prompt disclosure of responsive, non-exempt information, and is sound business practice.  It permits CRT to provide more pages to more requesters per month rather than a single or a few requesters monopolizing CRT's finite FOI/PA processing resources.  It is also the best way to maintain some sort of equity amongst the competing interests of numerous requesters seeking access to records in litigation.  Moreover, breaking responsive records into 250-page segments reduces the risk of inadvertent disclosure, which could expose sensitive, exempt information that if disclosed, could adversely impact CRT's law enforcement activities, intrude upon individuals' privacy rights, violate statutory prohibitions against disclosure, etc.  Finally, in most litigation cases, consultation with subject matter experts in other CRT sections or with other agencies is necessary.  CRT's interim response policy ensures that FOI/PA consultations do not interfere with the work of the sections and allows other agencies to effectively manage the consults in relation to their other FOI/PA workloads and FOIA litigation deadlines.  In sum, maintaining a steady stream of interim responses is key to meeting the demands posed by the growing number, size, and complexity of FOI/PA requests received by CRT; to ensuring that requesters are treated equitably rather than a single or small number of requesters monopolizing finite agency resources; and to maintaining an efficient and sustainable pace of responses.

18.     Without equitable resource management focused on servicing the most requesters on a consistent basis, a distinct minority of requesters seeking a disproportionate number of pending pages can dominate CRT's limited FOI/PA resources.  To prevent such an inverted system, CRT must be a good steward of its available resources to serve the entire public.

### CRT FOI/PA WORKLOAD

19.     CRT's FOI/PA program is small but busy.  CRT receives hundreds of FOIA requests and Privacy Act requests yearly, touching upon some of the most sensitive and publicized topics of the day.

20.     From FY2020-FY2024, CRT experienced a persistent increase in FOI/PA requests received, from less than 300 in FY2020 to nearly 600 in FY2024, and then a precipitous increase to more than 1000 requests received in FY2025.  In FY2026, CRT is on track to have an intake volume similar to its unprecedented FY2025 intake.

21.     In addition to a significantly increased intake, the size and complexity of the FOI/PA requests to CRT continues to grow, particularly as the volumes of electronically stored information (ESI) maintained by CRT, and accessible in response to FOI/PA requests, increases. Complex requests require broad searches of a variety of complex records across the entirety of the Division, often implicating a multitude of equities requiring consultation with other agencies, and sensitivities, including law enforcement information.  These complex requests also often seek and receive expedited handling, further complicating them.

22.     The increased volume and complexity have impeded CRT's ability to keep pace with processing FOI/PA requests.  Consequently, CRT's backlog of FOIA requests has grown to

more than 600 requests, a significant increase from the backlog pending at the end of FY2024 of less than 400 requests.

23.    As the complexity and volume of requests has grown, so too have the number and complexity of lawsuits filed in connection with them.  Currently, CRT's attorneys are handling approximately 10 currently active FOI/PA lawsuits, with at least as many open cases that could reactivate at any time.  These lawsuits include requests where searches yielded large datasets of potentially responsive records.

24.    CRT FOI/PA attorneys also review and respond to FOI/PA consultations from other agencies related to pending FOIA litigation.  As other agencies' FOIA litigation dockets grow, so too does the volume of consultation requests received by CRT.  These consultations typically have short turnaround times, so that the consulting agency can comply with court deadlines and can include hundreds of pages of records that need to be reviewed and processed for CRT equities.

25.    This combination of increased volume of requests, including increased scope and complexity, along with more litigation has substantially increased the amount of time and resources required for CRT to complete its searches and processing, and has exhausted CRT's resources.

26.    Finally, in addition to administering the Division's FOI/PA program, which involves not only processing FOIA and Privacy Act requests received by CRT and responding to consultation requests from other agencies but also programmatic functions like compiling and analyzing data for the annual FOIA Report and similar tasks, the branch also handles myriad

other disclosure responsibilities related to CRT information.  For instance, the FOI/PA Branch's attorneys also assist with audits conducted by the Office of Inspector General and the GAO.

## IMPACT OF PLAINTIFF'S PROPOSED PROCESSING SCHEDULE

27.    As relief in its motion, Plaintiff seeks a processing schedule of 5000 pages processed per month, a rate 20 times greater than CRT's normal processing rate.  This, of course, presupposes that there will be a significant volume of records responsive to its request.  That presumption is premature as CRT has not yet completed its search for responsive records.

28.    However, assuming for the sake of argument that CRT locates a significant volume of responsive records, CRT would have to divert at least three of its FOI/PA employees (or 30% of its non-supervisory staff) to this case alone in order to process 5000 pages per month, disadvantaging other requesters with pending requests.

29.    Moreover, it is likely that any records CRT locates will require consultation with other DOJ components and/or other federal agencies.  The artificially accelerated rate demanded by Plaintiff would also negatively impact other agencies' resources as they would have to review larger-than-typical volumes of records sent to them for consultation.

## CONCLUSION

30.    For the reasons set forth above, CRT respectfully requests that the Court reject Plaintiff's motion and proposed processing schedule.

Pursuant to 28 C.F.R. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A – C attached hereto are true and correct copies.

Executed this 6th day of February 2026.

KILIAN KAGLE

Digitally signed by KILIAN KAGLE
Date: 2026.02.06 16:48:03 -05'00'

Kilian Kagle, Chief
FOI/PA Branch
Civil Rights Division
U.S. Department of Justice
Washington, D.C. 20530

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
**CITIZENS FOR RESPONSIBILITY AND** )
**ETHICS IN WASHINGTON,** )
                                          )
      Plaintiff, )
                                          )
v. )       Case No. 25-cv-04426-CKK
                                          )
**U.S. DEPARTMENT OF JUSTICE,** )
                                          )
      Defendant. )
_____ )

<u>**DECLARATION OF KILIAN KAGLE**</u>

# EXHIBIT A



November 4, 2025

Kilian B. Kagle
FOIA/PA Branch
Civil Rights Division
4CON, Room 6.153
950 Pennsylvania Ave, N.W.
Washington, DC 20530
CRT.FOIArequests@usdoj.gov

**Re:  Freedom of Information Act Request**

Dear FOIA Officer:

Citizens for Responsibility and Ethics in Washington ("CREW") submits this request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Department of Justice ("DOJ") regulations.

Specifically, CREW requests from January 20, 2025 to the date this request is processed:

1. All formal or informal data sharing agreements between DOJ and any state or election official[1] providing access to personally identifiable information ("PII").[2]

2. All records relating to DOJ's use of the Department of Homeland Security's Systematic Alien Verification for Entitlements ("SAVE") system for purposes of verifying the citizenship of voters or voter registrants in any state.

---

[1] "Election official" here is used to describe any state or local official involved in state or federal election administration, including a state's chief election official and members of election boards and commissions.
[2] The term "PII" here is used as defined in OMB Memorandum M-07-16, which refers to information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information that is linked or linkable to a specific individual. Examples of PII include names, social security numbers, and drivers' license numbers. *See* Office of Management & Budget, *Safeguarding Against and Responding to the Breach of Personally Identifiable Information* (May 22, 2007), available at
https://georgewbush-whitehouse.archives.gov/omb/memoranda/fy2007/m07-16.pdf.

info@citizensforethics.org  202.408.5565                                    CITIZENSFORETHICS.ORG

November 4, 2025
Page 2

3. Agency records[3] sufficient to show:

   a. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of the PII it seeks from election officials. This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match, link, or otherwise combine data obtained from an election official with any other data.

   b. Privacy or data security safeguards in place for protecting PII shared by election officials.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

Please be advised that CREW intends to pursue all legal remedies to enforce its rights under FOIA. Accordingly, because litigation is reasonably foreseeable, the agency should institute an agencywide preservation hold on all documents potentially responsive to this request.

### Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures likely will contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. *See id.* § 552(a)(4)(A)(iii). Moreover, the request primarily and

---

[3] "Agency records" here is used within the meaning of 5 U.S.C. § 552 and, unless otherwise indicated, "agency records" sought in this FOIA request and each of its numbered and lettered subparts include communications sent or received by DOJ regarding the subject matter described in that subpart.

November 4, 2025
Page 3

fundamentally is for non-commercial purposes. *See, e.g., McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).

On March 25, 2025, President Trump signed Executive Order 14,248, Preserving and Protecting the Integrity of American Elections (the "Elections EO"), which, among other things, directs DHS to provide State and local officials with "access to appropriate systems for verifying the citizenship or immigration status of individuals registering to vote or who are already registered." 90 Fed. Reg. 14005 (Mar. 28, 2025). The Elections EO also instructs the DOJ to "take all appropriate action to enter into information-sharing agreements . . . with the chief State election official or multi-member agency of each State." To the extent that states are unwilling to cooperate with the federal government's expanded role, the Attorney General is called to "prioritize enforcement of Federal election integrity laws in such States" and "review for potential withholding of grants and other funds" for state and local law enforcement. *Id.*

Following the directives in the EO, the DOJ began demanding an unprecedented volume of confidential voter information, including full copies of computerized voter registration lists, from election officials across the country.[4] At least 40 states have confirmed receiving requests to date[5] seeking information ranging from voter rolls and registration applications to sensitive details such as partial Social Security and driver's license numbers.[6] The scope and aggressiveness of these demands have sparked pushback from state election officials, who are responsible for maintaining accurate voter rolls and ensuring compliance with state and federal election and privacy laws.[7] Several states have

---

[4] Matt Cohen, *All the States Where DOJ is Demanding Voting Data,* Democracy Docket (July 18, 2025), https://www.democracydocket.com/news-alerts/all-the-states-where-doj-is-demanding-voting-data/.

[5] Kaylie Martinez-Ochoa, Eileen O'Connor, and Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Center (last updated: October 28, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[6] Peter Hancock, *Feds Demand Sensitive Illinois Voter Registration Data After State Responds,* J. Courier (Aug. 19, 2025), https://www.myjournalcourier.com/news/article/doj-illinois-voter-database-20822622.php; Tirzah Christopher, *Pa. Responds to Second Justice Department Letter Seeking Sensitive Voter Information*, PennLive (Aug. 21, 2025), https://www.pennlive.com/politics/2025/08/pa-responds-to-second-justice-department-letter-seeking-sensitive-voter-information.html; Fredreka Schouten, *Trump DOJ Seeks Voter Data, Including Social Security Numbers, from States*, CNN (Sept. 1, 2025), https://www.cnn.com/2025/09/01/politics/trump-voter-demands-social-security.

[7] Patrick Marley & Yvonne Wingett Sanchez, *DOJ hits states with broad requests for voter rolls, election data*, Wash. Post (July 16, 2025), https://www.washingtonpost.com/politics/2025/07/16/trump-voter-fraud-elections/; Yunior Rivas, *DOJ Doubles Down on Demands for Maine's Voter Data, Secretary of State Fires Back,* Democracy Docket (Aug. 20, 2025), https://www.democracydocket.com/news-alerts/doj-doubles-down-on-demands-for-maines-voter-data-secretary-of-state-fires-back.

November 4, 2025
Page 4

already rejected requests for unredacted voter data, citing privacy and security concerns, [8] and are now facing federal lawsuits tied to these demands.[9] Records responsive to this FOIA request would shed light on important questions about the security of voter data raised by this unprecedented federal intervention into states' election infrastructure.

CREW is a nonprofit corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the public's right to be aware of the activities of government officials and to ensuring the integrity of the federal government. CREW uses a combination of research, litigation, and advocacy to advance its mission. CREW intends to analyze the information responsive to this request and to share its analysis with the public through reports, press releases, or other means. In addition, CREW will disseminate any documents it acquires from this request to the public through its website, www.citizensforethics.org. The release of information obtained through this request is not in CREW's financial interest.

CREW further requests that it not be charged search or review fees for this request pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because CREW qualifies as a member of the news media. *See Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (holding non-profit a "representative of the news media" and broadly interpreting the term to include "any person or organization which regularly publishes or disseminates information to the public").

CREW routinely disseminates information obtained through FOIA to the public in several ways. For example, CREW's website receives over 150,000 page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. These reports frequently rely on government records obtained through FOIA. CREW also posts the documents it obtains through FOIA on its website.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver.

**<u>Expedited Processing Request</u>**

CREW requests expedited processing this FOIA request pursuant to FOIA, 5 U.S.C. § 552 and 28 C.F.R. 16.5(e). CREW is entitled to expedited processing because there is an "urgency to inform the public concerning actual or alleged Federal Government activity," and CREW "is primarily engaged in disseminating information," 5 U.S.C. § 552(6)(E)(v)(II). In

---

[8] Matt Cohen, *Oregon and Pennsylvania Are Latest to Reject DOJ Demand for Voter Data*, Democracy Docket (Aug. 22, 2025), https://www.democracydocket.com/news-alerts/oregon-and-pennsylvania-are-latest-to-reject-doj-demand-for-voter-data/.

[9] *See* Martinez-Ochoa, supra note 6; Sarah Libby, *Was a Dog Sent a Ballot? Inside the DOJ's Strange Lawsuit Seeking California Voter Data*, S.F. Chron. (July 25, 2025), https://www.sfchronicle.com/politics/article/orange-county-vote-lawsuit-20781036.php.

November 4, 2025
Page 5

addition, DHS should grant expedited processing because there is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(iv).

CREW is "primarily engaged in disseminating information" to the public. This "standard 'requires that information dissemination be the main [and not merely an incidental] activity of the requestor,'" but "publishing information 'need not be [the organization's] sole occupation.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017). CREW routinely disseminates information obtained through FOIA to the public in several ways. For example, CREW's website receives hundreds of thousands of page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. These reports frequently rely on government records obtained through FOIA. CREW also posts the documents it obtains through FOIA on its website. CREW is a credible requestor and disseminator of information often relied on by major media outlets.

Further, the facts demonstrate that (1) the request concerns a matter of current exigency to the American public; (2) the consequences of delaying a response would compromise a significant recognized interest; and (3) the request concerns federal government activity. *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001).

First, the requested records concern a matter of current exigency to the American public. Since early 2025, the Department has sent letters, emails, and phone requests to state election officials seeking voter registration rolls, election records, and in some cases unredacted identifiers such as Social Security and driver's license numbers. These requests are ongoing in the leadup to the November 2026 federal and state elections. DOJ has confirmed that DOJ is sharing state voter roll information with DHS to search for non-citizens for investigatory purposes.[10] The DOJ has filed lawsuits against eight states seeking to compel them to release their full voter registration records.[11] Meanwhile, two states have submitted their full statewide voter registration lists.[12] Without timely disclosure, the public will not know how federal officials are using or storing their voter data. The exigency is increased by the fact that individuals may face criminal investigation and prosecution based on the data their states are sharing with the federal government.

Second, delaying a response would undermine voters' state and federal privacy rights. The Privacy Act of 1974 generally requires federal agencies to identify a lawful authority and purpose for requesting personal records. *See* 5 U.S.C. § 552a(b). Several states,

---

[10] *See* Jonathan Shorman, DOJ is sharing state voter roll lists with Homeland Security, Stateline (Sept 12, 2025), https://perma.cc/ZU9N-GHTC.

[11] Press Release, Justice Department Sues Six States for Failure to Provide Voter Registration Rolls, DOJ (Sept. 25, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls.

[12] *See* Martinez-Ochoa, supra note 6.

November 4, 2025
Page 6

including Oregon and Pennsylvania, have rejected DOJ's requests for unredacted voter data—such as driver's license and Social Security numbers—citing state privacy protections and the absence of clear federal authority.[13] Arizona officials have so far also refused to comply, noting that state law prohibits disclosure of the requested information and that compliance could constitute a felony.[14] California officials have also declined to date, explaining that state law bars release of the requested records.[15] Without expedited disclosure, it will be impossible for the public to evaluate whether their state and federal privacy rights are being protected in the Department's unprecedented requests for large amounts of sensitive personal data before the November 2026 elections. This may affect potential voters' willingness to share their information with state authorities to participate in next year's elections. Once such sensitive voter information is released, the harm to Americans' privacy and voting rights cannot be remedied.

Finally, the management and compelled disclosure of voter data by the Department of Justice is a federal government activity. Expedited processing will allow voters, state officials, and policymakers to assess the scope and legality of these actions before the November 2026 elections.

Separately, DOJ's demands have been the subject of national press coverage, including reports by the Associated Press, Washington Post, and San Francisco Chronicle.[16] This coverage reflects widespread public interest and questions about the integrity of the government's role. Under 28 C.F.R. § 16.5(e), this qualifies as an exceptional case warranting expedited disclosure.

The undersigned certifies that the representations in this expedited processing request are true and correct to the best of his knowledge and belief.

---

[13] Cohen, supra note 8.
[14] Jeremy Duda, *Fontes Rejects DOJ Request for Arizona Voter Database*, Axios (Sept. 2, 2025), https://www.axios.com/local/phoenix/2025/09/02/fontes-rejects-doj-voter-database.
[15] Shaun Robinson, *Vermont secretary of state says she won't share voter data with Trump administration*, Vt. Digger (Aug. 13, 2025), https://vtdigger.org/2025/08/13/vermont-secretary-of-state-says-she-wont-share-voter-data-with-trump-administration/; Sara DiNatale, *California Officials Say They Can't Hand Over Requested Voter Data Without Privacy Protections*, S.F. Chron. (Sept. 2, 2025), https://www.sfchronicle.com/politics/article/san-francisco-trump-voter-data-21027394.php.
[16] Swenson, supra note 5; Marley, supra note 7; Libby, supra note 9.

November 4, 2025
Page 7

### Conclusion

      Where possible, please produce records in electronic format. If you have any questions about this request or foresee any problems in fully releasing the requested records, please email me at kfarchadi@citizensforethics.org and foia@citizensforethics.org or call me at (202) 408-5565. Also, if CREW's request for a fee waiver is denied, please contact our office immediately upon making such a determination.

      Sincerely,

Kayvan Farchadi
Senior Counsel

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
**CITIZENS FOR RESPONSIBILITY AND**        )
**ETHICS IN WASHINGTON,**                            )
                                                                       )
      Plaintiff,                                              )
                                                                       )
v.                                                                     )        Case No. 25-cv-04426-CKK
                                                                       )
**U.S. DEPARTMENT OF JUSTICE,**                 )
                                                                       )
      Defendant.                                           )
_____ )

<u>**DECLARATION OF KILIAN KAGLE**</u>

# EXHIBIT B



U.S. Department of Justice
Civil Rights Division

RG3

*Freedom of Information/PA Unit –4CON*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*

*<u>Via Electronic Mail Only</u>*                                                  1/13/2026
Kayvan Farchadi, Esq.
CREW
foia@citizensforethics.org

Date Received: December 1, 2025                         FOI/PA No. 26-00045-F

Dear Mr. Farchadi:

The Civil Rights Division acknowledges receipt of your Freedom of Information Act request, which was received in this office on the date indicated above.  Your request seeks access to records regarding formal or informal data sharing agreements between DOJ and any state or election official providing access to personally identifiable information and all records relating to DOJ's use of the Department of Homeland Security's Systematic Alien Verification for Entitlements (SAVE) system for purposes of verifying the citizenship of voters or voter registrants in any state. Please read this letter carefully because it contains important information about your request.

As a result of the large number of FOIA and Privacy Acts requests received by the Civil Rights Division, we may encounter delays in processing your request.  To ensure that requesters are treated fairly, the Division processes requests in the approximate order of receipt.  Please be assured that your request is being handled as equitably and promptly as possible. If you have any questions regarding the status of your request, you may contact our office at crt.FOIAcomms@usdoj.gov. Please reference the FOIA/PA No. above in any communications with the Civil Rights Division about your request.

If you are not satisfied with the Civil Rights Division's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  If possible, please provide a copy of your original request and this response letter with your appeal.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.  Please reference the FOIA/PA No. above in any correspondence with OGIS.

Thank you for your interest in the Civil Rights Division.

Sincerely,

*Robert Green*

Robert Green, GIS
Freedom of Information/Privacy Acts Unit
Civil Rights Division