**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | |
| Plaintiff, | Case No. 25-cv-04426-CKK |
| v. | |
| U.S. DEPARTMENT OF JUSTICE, | |
| Defendant. | |

**REPLY IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

SUPPLEMENTAL PROCEDURAL BACKGROUND.................................................... 2

ARGUMENT ...................................................................................................................... 4

   I.  CREW is likely to succeed on the merits. ............................................................. 4

      A.  CREW is likely to succeed on the merits of its claim seeking expedited processing of its FOIA requests for two independent reasons. .................................................. 4

         1.  CREW is entitled to expedited processing under 28 C.F.R. § 16.5(e)(1)(ii). ............. 4

         2.  CREW is separately entitled to expedited processing under 28 C.F.R. § 16.5(e)(1)(iv)............................................................................................. 11

         3.  CREW's requests for expedited processing are not moot. ...................................... 13

      B.  DOJ concedes that it failed to meet FOIA's statutory deadlines. ............................... 13

   II.  CREW will be irreparably harmed absent preliminary relief. .............................. 14

   III. The balance of equities and public interest favor granting a preliminary injunction. ......... 19

   IV. The Court should not require CREW to post a bond. ........................................... 23

CONCLUSION................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*ACLU of N. California v. DOJ*,
No. 04-cv-4447, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ...............................................6

*Al-Fayed v. CIA*,
254 F.3d 300 (D.C. Cir. 2001) ...............................................................................................7

*Am. C.L. Union v. DOJ*,
321 F. Supp. 2d 24 (D.D.C. 2004) ........................................................................................12

*Am. Oversight v. U.S. Dep't of State*,
414 F. Supp. 3d 182 (D.D.C. 2019) ......................................................................................14

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*,
498 F. Supp. 3d 87 (D.D.C. 2020) ........................................................................................20

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ..............................................................................................15

*Clemente v. FBI*,
71 F. Supp. 3d 262 (D.D.C. 2014) ........................................................................................20

*Council on Am.-Islamic Rels. v. Gaubatz*,
667 F. Supp. 2d 67 (D.D.C. 2009) ........................................................................................24

*CREW v. DOJ*,
436 F. Supp. 3d 354 (D.D.C. 2020) ................................................................................6, 12

*CREW v. DOJ*,
820 F. Supp. 2d 39 (D.D.C. 2011) ..........................................................................................6

*CREW v. FEC*,
711 F.3d 180 (D.C. Cir. 2013) ........................................................................................6, 14

*CREW v. HHS*,
481 F. Supp. 2d 99 (D.D.C. 2006) ..........................................................................................6

*CREW v. OMB*,
791 F. Supp. 3d 29 (D.D.C. 2025) ........................................................................................19

*CREW v. U.S. DOGE Serv.*,
769 F. Supp. 3d 8 (D.D.C. 2025) ..............................................................................6, 12, 22

*Ctr. for Pub. Integrity v. DOD*,
411 F. Supp. 3d 5 (D.D.C. 2019) ..............................................................................14, 16, 20

**Cases-continued**

*Democracy Forward Foundation v. OMB*,
    780 F. Supp. 3d 61 (D.D.C. 2025) .................................................................22, 23

*DOJ v. Reps. Comm. For Freedom of Press*,
    489 U.S. 749 (1989) ......................................................................................16

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999) ..........................................................................23

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*,
    502 F. Supp. 3d 492 (D.D.C. 2020) .................................................................23

*Gordon v. Holder*,
    632 F.3d 722 (D.C. Cir. 2011) .........................................................................18

*Hunter v. FERC*,
    537 F. Supp. 2d 9 (D.D.C. 2007) .....................................................................15

*Judicial Watch, Inc. v. Dep't of Energy*,
    191 F. Supp. 2d 138 (D.D.C. 2002) .................................................................21

*Kelleher v. Dream Catcher, L.L.C.*,
    No. 16-cv-02092, 2017 WL 7279397 (D.D.C. July 24, 2017) ...............................24

*Leadership Conf. on C.R. v. Gonzales*,
    404 F. Supp. 2d 246 (D.D.C. 2005) ...............................................................9, 10

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
    780 F. Supp. 3d 135 (D.D.C. 2025) .................................................................24

*Long v. DHS*,
    436 F. Supp. 2d 38 (D.D.C. 2006) ..................................................................23

*Media Matters for Am. v. FTC*,
    No. 25-cv-1959, 2025 WL 2378009 (D.D.C. Aug. 15, 2025) ................................15

*Nat'l Archives & Recs. Admin. v. Favish*,
    541 U.S. 157 (2004) .......................................................................................1

*Nat'l Council of Nonprofits v. OMB*,
    775 F. Supp. 3d 100 (D.D.C. 2025) .................................................................24

*NRDC v. Dep't of Energy*,
    191 F. Supp. 2d 41 (D.D.C. 2002) ...................................................................20

*NTEU v. Trump*,
    No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) (per curiam)..................24

**Cases-continued**

*Open Am. v. Watergate Special Prosec. Force*,
   547 F.2d 605 (D.C. Cir. 1976) ............................................................23

*Open Soc'y Just. Initiative v. CIA*,
   399 F. Supp. 3d 161 (S.D.N.Y. 2019)..............................................21, 22

*Power The Future v. U.S. Dep't of State*,
   No. 24-cv-346, 2025 WL 343175 (D.D.C. Jan. 30, 2025).......................13

*Progress v. Consumer Fin. Prot. Bureau*,
   No. 17-cv-686, 2017 WL 1750263 (D.D.C. May 4, 2017).......................23

*Protect Democracy Project, Inc. v. DOD*,
   263 F. Supp. 3d 293 (D.D.C. 2017) ......................................................6

*Protect Democracy Project, Inc. v. DOJ*,
   498 F. Supp. 3d 132 (D.D.C. 2020) ......................................... *passim*

*Santos v. Collins*,
   No. 24-cv-1759, 2025 WL 1823471 (D.D.C. Feb. 26, 2025)...................15

*Sierra Club v. U.S. Dep't of Energy*,
   825 F. Supp. 2d 142 (D.D.C. 2011) ......................................................17

*Texas v. United States*,
   798 F.3d 1108 (D.C. Cir. 2015) ............................................................15

*The Nation Magazine v. Dep't of State*,
   805 F. Supp. 68 (D.D.C. 1992) ............................................................23

*United States v. Benson*,
   --- F. Supp. 3d ----, No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10,
   2026) .......................................................................................................1

*United States v. Oregon*,
   No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ............1, 13

*United States v. State of Oregon*,
   No. 6:25-cv-1666, Dkt. No. 68 (D. Or. Jan. 26, 2026) ........................17

*United States v. Weber*,
   No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026)..........1, 13, 17

*Wash. Post v. DHS*,
   459 F. Supp. 2d 61 (D.D.C. 2006) ......................................................23

**Statutes, Rules, and Regulations**

5 U.S.C. § 552(a)(6)(B)(i)-(iii) ................................................................3

5 U.S.C. § 552(a)(6)(E)(iii) .....................................................................7

52 U.S.C. 20507(c)(2)(A) ......................................................................10

28 C.F.R. § 16.5(e)(1)*(ii)* ...................................................................4, 7

28 C.F.R. § 16.5(e)(1)*(iv)* ............................................................4, 7, 11

Local Civ. R. 7(b) .................................................................................15

**Other Authorities**

*About CREW*, CREW (last accessed Feb. 10, 2026) .......................................5

Jeff Wald, *Minneapolis shooting: AG Pam Bondi gives Gov. Walz conditions for ICE to leave Minnesota,* FOX 9 Minneapolis-St.Paul (Jan. 25, 2026) ....................8

Kaylie Martinez Ochoa, Eileen O'Conner, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information,* Brennan Ctr. for Just. (last updated Feb. 11, 2026) ...............................................................8, 17

Ltr from Pamela Bondi, U.S. Att'y Gen., to Gov. Tim Walz, Minn. (Jan. 24, 2026) ............................................................................8

National Conference of State Legislatures, *2026 State Primary Election Dates* (Updated Feb. 10, 2026) .............................................................23

Office of Information Policy, *Calculating FOIA Response Times after the 2025 Government Shutdown*, DOJ (Nov. 18, 2025) ...........................................2

Press Release, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, DOJ (Sept. 25, 2025) ..........................................8

*Reports and Investigations*, CREW (last accessed Feb. 10, 2026) .....................5

## INTRODUCTION

In the past four weeks, multiple courts have concluded that DOJ's "chilling" campaign to "create a nationwide database of confidential voter information and use it in unprecedented ways" is patently unlawful. *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026); *see also United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at *1-2 (C.D. Cal. Jan. 15, 2026); *cf. United States v. Benson*, --- F. Supp. 3d ----, No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026). Yet in this case, DOJ seeks to minimize its thrice-declared-illegal quest to centralize millions of Americans' sensitive data as nothing but mundane "interactions with various States related to the collection of certain voter information." DOJ's Opp. to Mot. for a Prelim. Injunction ("PI Opp.") at 18. And DOJ characterizes CREW's FOIA requests—which seek to shed light on DOJ's "unprecedented and illegal" voter data dragnet, *Weber*, 2026 WL 118807, at *1—as "routine." PI Opp. at 2. Nothing could be further from the truth. Instead, this extraordinary FOIA case is a stark reminder of why knowing "what the[] Government is up to" is a "structural necessity in a real democracy." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171-72 (2004).

*First*, DOJ's muddled objections fail to refute CREW's likelihood of success on the merits. CREW is entitled to expedited processing for two independent reasons: (1) judges in this District consistently have concluded that CREW is an information disseminator, and the FOIA requests make clear that CREW and the public urgently need the requested information ahead of impending elections; and (2) CREW established there is widespread and exceptional media interest in DOJ's collection of voters' confidential information, which at least raises "possible questions about the government's integrity," as confirmed by multiple federal courts that have held that DOJ is breaking the law. Nor can DOJ dispute that this case is properly before the

Court because, as DOJ concedes, it has missed its 20-business-day deadline to make a determination on CREW's FOIA requests. That entitles CREW to immediate judicial supervision over DOJ's response to CREW's requests.

*Second*, DOJ ignores three species of irreparable harm that CREW argued it is suffering, thus conceding those arguments. And DOJ's lone response on irreparable harm—that states, not CREW, are the ones allegedly harmed by DOJ's data demands—ignores that CREW is seeking the information so that it can use it to inform the public about DOJ's unprecedented voter data dragnet, a crucial topic of ongoing national importance.

*Third*, DOJ's arguments regarding the public interest and equities disregards the public's robust interests in information concerning Americans' fundamental right to vote, data privacy, and information security. And DOJ's proposed framework would make it impossible for FOIA plaintiffs to *ever* secure preliminary relief, even in extraordinary cases like this one.

*Fourth*, the Court should exercise its broad discretion to require no bond, given that CREW is a public-interest plaintiff and its claims do not seek the expenditure of money or monetary damages.

## SUPPLEMENTAL PROCEDURAL BACKGROUND

**Civil Rights Division Request.** Although DOJ concedes that CREW submitted its FOIA request to the Civil Rights Division on November 4, 2025, DOJ makes much out of the fact that it coincided with a government shutdown. DOJ ignores, however, that the government reopened just six business days later, on November 13, 2025.[1] DOJ does not explain why the Civil Rights Division failed even to *acknowledge receipt* of CREW's FOIA request until January 13, 2026, *40*

---

[1] Office of Information Policy, *Calculating FOIA Response Times after the 2025 Government Shutdown*, DOJ (Nov. 18, 2025) https://perma.cc/J3QY-J3QT (emphasis added).

*business days after the shutdown ended*. *See* Kagle Decl., Ex. B. And the acknowledgement receipt does not invoke FOIA's extension provision for "unusual circumstances." *See generally id.*; *see also* 5 U.S.C. § 552(a)(6)(B)(i)-(iii).

Additionally, although DOJ states the Civil Rights Division acknowledged receipt of CREW's FOIA request on January 13, 2026, DOJ omits three key details about the acknowledgement email.

*First*, the Civil Rights Division did not actually send the acknowledgment to the CREW attorney who submitted the FOIA request, contrary to the request's instructions. *Compare* Hill Decl., Ex. C at 7 ("If you have any questions about this request or foresee any problems in fully releasing the requested records, please email me at kfarchadi@citizensforethics.org and foia@citizensforethics.org or call me at (202) 408-5565."); Farchadi Decl. ¶¶ 2-3; Farchadi Decl., Ex. A (transmitting FOIA request from kfarchadi@citizensforethics.org), *with* Kagle Decl., Ex. B at 1 (Civil Rights Division directing acknowledgment email *only* to generic CREW email address foia@citizensforethics.org); Farchadi Decl., Ex. B (showing same).

*Second*, DOJ omits that the Civil Rights Division's acknowledgment email fails to address CREW's request for expedited processing. *See generally* Kagle Decl., Ex. B.

*Third*, DOJ emphasizes that the Civil Rights Division's search for records is "ongoing." PI Opp. at 5, 14; Kagle Decl. ¶ 10. But the Civil Rights Division has not provided any timeline for that search, let alone identified when it will make a determination or produce responsive records. *See generally* Kagle Decl., Ex. B.

**Criminal Division Request.**  DOJ incorrectly asserts that "on September 16, 2025, the Criminal Division acknowledged receipt of the request and denied Plaintiffs request for expedited processing." Herrington Decl. ¶ 8; *see also* PI Opp. at 4 ("The Criminal Division

timely acknowledged the request, assigned it administrative tracking number CRM-302349203, and denied CREW's request for expedited processing."). In fact, the Criminal Division never responded to CREW's request for expedited processing based on 28 C.F.R. § 16.5(e)(1)***(ii)***. Rather, it only responded to CREW's separate claim for expedited processing under 28 C.F.R. § 16.5(e)(1)***(iv)***. *See* Hill Decl., Ex. B ("You have requested expedited processing of your request pursuant to 28 C.F.R. § 16.5(e)(1)(iv). Pursuant to U.S. Department of Justice policy, we directed your request to the Director of Public Affairs, who makes the decision whether to grant or deny expedited processing under this standard. The Director has determined that your request for expedited processing should be denied.").

## ARGUMENT

### I.    CREW is likely to succeed on the merits.

#### A.    CREW is likely to succeed on the merits of its claim seeking expedited processing of its FOIA requests for two independent reasons.

CREW's FOIA requests identify two independent, equally supported bases for expedited processing. DOJ makes a hash of its response, lumping the distinct grounds for expedited processing together to muddy the record. But the facts and law are clear: Expedited processing is warranted.

##### 1.    CREW is entitled to expedited processing under 28 C.F.R. § 16.5(e)(1)(ii).

###### i.    CREW is primarily engaged in information dissemination.

To start, DOJ wrongly claims that CREW is not primarily engaged in information dissemination, purportedly because "CREW's own description of its main activities on its website fail to mention the dissemination of information." PI Opp. at 9. But DOJ does not engage with the record before it—CREW's FOIA requests—at all. Those FOIA requests clearly stated:

4

> CREW routinely disseminates information obtained through FOIA to the public in several ways. For example, CREW's website receives hundreds of thousands of page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. These reports frequently rely on government records obtained through FOIA. CREW also posts the documents it obtains through FOIA on its website.

Hill Decl., Ex. A at 3-4, Ex. C at 5. That unrefuted record evidence alone is sufficient to establish that CREW is primarily engaged in information dissemination.

Instead of responding to the record, DOJ's sole support for its mischaracterization of CREW is cherry-picked from the mission statement on CREW's website. *See* PI Opp. at 9. But in the very same mission statement, CREW affirms it engages in "strategic communications" to "advocate for ethics and democracy reforms to prevent future abuses of power." *About CREW*, CREW, https://perma.cc/6V3T-3Y2G (last accessed Feb. 10, 2026). Indeed, even the specific language that DOJ quotes refutes its own argument: DOJ says CREW's website "describ[es] CREW's 'mission' as fighting to hold the government accountable through 'bold legal actions,' '*in-depth investigations*' and 'public advocacy work.'" PI Opp. at 9 (quoting CREW website's mission statement) (emphasis added). If DOJ took the time to view the "reports and investigations" page on CREW's website, DOJ would have seen that CREW has publicly disseminated over 750 in-depth investigations, including based on records obtained through FOIA. *See Reports and Investigations*, CREW, https://perma.cc/G8BK-SKKL (last accessed Feb. 10, 2026). At any rate, the "primarily engaged in disseminating information" standard merely "requires that information dissemination be the main [and not merely an incidental] activity of the requestor"; "publishing information 'need not be [the organization's] sole occupation.'" *Protect Democracy Project, Inc. v. DOD*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017). CREW readily meets that standard.

DOJ further ignores numerous cases from this District recognizing that "CREW is primarily engaged in disseminating information to the public and 'routinely disseminates information obtained through FOIA to the public,' including on its website." *CREW v. U.S. DOGE Serv.* ("*CREW v. DOGE*"), 769 F. Supp. 3d 8, 26-27 (D.D.C. 2025), *reconsideration denied*, No. 25-cv-511, 2025 WL 863947 (D.D.C. Mar. 19, 2025); *see also CREW v. DOJ*, 436 F. Supp. 3d 354, 360–61 (D.D.C. 2020) (CREW adequately alleged claim for expediting FOIA request based on assertion that "CREW's primary purpose is to inform and educate the public about the activities of government officials and those who influence public officials. Toward that end, CREW uses statutes like the FOIA to gather information to hold public officials accountable. The request for which CREW seeks expedition will further those goals").[2]

> ii.     **There is a clear urgency to inform the American public about DOJ's collection of millions of voters' personally identifiable information ("PII") and creation of a national voter roll.**

DOJ also wrongly claims that expedited processing is improper because "urgency to inform . . . is lacking." PI Opp. at 9. Three factors contribute to urgency: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the

---

[2] *See also CREW v. HHS*, 481 F. Supp. 2d 99, 116 (D.D.C. 2006) (Kollar-Kotelly, J.) ("CREW has adequately demonstrated its intent and capacity to disseminate information gained through its request to a reasonably broad segment of interested persons."); *CREW v. DOJ*, 820 F. Supp. 2d 39, 45 (D.D.C. 2011) ("CREW freely and publicly disseminates those records it acquires through FOIA requests."); *CREW v. FEC*, 711 F.3d 180, 183 (D.C. Cir. 2013) ("Citizens for Responsibility and Ethics in Washington—known as CREW—is a nonprofit organization that, among other things, advocates for the right of citizens to know about the activities of government officials. CREW pursues that objective through the acquisition and dissemination of information about public officials and federal agencies."). The only case that DOJ can muster—an unpublished, out-of-circuit decision from 2005 regarding a different organization, *see ACLU of N. California v. DOJ*, No. 04-cv-4447, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005)—has no bearing on CREW's well-recognized status as an information disseminator.

request concerns federal government activity." *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001).[3] For each FOIA request here, the exigency and deleterious consequences of delay are substantial.[4]

**Civil Rights Division Request**. CREW's request to the Civil Rights Division and the Division's own actions underscore the exigent need for information and that there would be serious consequences from delaying a response. CREW wrote in the FOIA request that:

> Since early 2025, the Department has sent letters, email, and phone requests to state election officials seeking voter registration rolls, election records, and in some cases unredacted identifies such as Social Security and driver's license numbers. ***These requests are ongoing in the leadup to the November 2026 federal and state elections.*** DOJ has confirmed that DOJ is sharing state voter roll information with DHS to search for non-citizens for investigatory purposes. The DOJ has filed lawsuits against eight states seeking to compel them to release their full voter registrations records. Meanwhile two states have submitted their full statewide voter registration list. ***Without timely disclosure, the public will not know how federal officials are using or storing their voter data. The exigency is increased by the fact that individuals may face criminal investigation and prosecution based on the data their states are sharing with the federal government.***

Hill Decl. Ex. C at 5 (emphasis added) (citations omitted).

To downplay the exigency of DOJ creating a national voter roll and trying to force states and the District of Columbia to turn over voters' PII, DOJ attempts to whitewash its campaign of litigation and coercion as mere "ongoing federal government activity and interactions with various States and alleges illegal government conduct." PI Opp. at 10. But DOJ's own statements

---

[3] DOJ does not dispute, and thus concedes, that the requests concern federal government activity.

[4] Under FOIA, judicial review of an agency's denial of expedited processing is "based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii). As noted above, here neither the Civil Rights Division nor the Criminal Division has made a determination on CREW's request for expedited processing under 28 C.F.R. § 16.5(e)(1)(ii). *See* Hill Decl., Ex. B at 1 (Criminal Division denying request for expedited processing only pursuant to 28 C.F.R. § 16.5(e)(1)***(iv)***); Kagle Decl., Ex. B at 1 (Civil Rights Division acknowledging receipt of FOIA but making no determination on expedited processing at all). Moreover, DOJ's own actions and litigation are plainly "before the agency."

and actions smack of exigency. In one DOJ Press Release that CREW cited in its Civil Rights Division FOIA request, the U.S. Attorney General stated: "Clean voter rolls are the foundation of free and fair elections." Press Release, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, DOJ (Sept. 25, 2025), https://perma.cc/9K9Q-JPA5; *see also* Hill Decl., Ex. C at 5 n.11 (citing same). And since CREW sent its FOIA request to the Civil Rights Division, DOJ's actions have continued to belie routineness: DOJ has filed 17 additional lawsuits against states and the District of Columbia for opposing DOJ's efforts,[5] often simultaneously followed by motions to immediately compel production of voter rolls. In one case, DOJ attempted to strongarm a defendant, Minnesota, into turning over its voter rolls in return for the Administration withdrawing federal immigration agents from the state.[6] Simply put, DOJ cannot square its attempt in this litigation to downplay the exigency of its actions with its own statements and actions elsewhere.

DOJ next argues that there is no exigency here because "the Court often looks to objective time limits or specific events that will occur in the near future." PI Opp. at 10 (collecting cases). CREW agrees and did exactly that in its FOIA request to the Civil Rights Division, demonstrating that objective deadlines in the "leadup to the November 2026 federal and state elections" strongly counsel in favor of expedited processing. Hill Decl., Ex. C at 5. DOJ tries to minimize CREW's and the public's need for information before the November 2026 general election by noting that the general election is "nearly a year" away. PI Opp. at 12-13. But

---

[5] Kaylie Martinez Ochoa, Eileen O'Conner, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (last updated Feb. 11, 2026), https://tinyurl.com/ypf63y95.

[6] Jeff Wald, *Minneapolis shooting: AG Pam Bondi gives Gov. Walz conditions for ICE to leave Minnesota*, FOX 9 Minneapolis-St. Paul (Jan. 25, 2026), https://perma.cc/9EME-ZREP; see also Ltr from Pamela Bondi, U.S. Att'y Gen., to Gov. Tim Walz, Minn. (Jan. 24, 2026) https://perma.cc/KE7Q-5FJJ (full text of demand letter).

DOJ ignores that CREW's request is aimed at obtaining documents about DOJ's voter roll collection efforts in the "*leadup*" to the fast-approaching November elections. Hill Decl., Ex. C at 5 (emphasis added); *see also* Hill Decl., Ex. C at 6 (describing need for information with sufficient time to "assess the scope and legality of [DOJ's] actions *before* the November 2026 elections" (emphasis added)). The public needs this information *now* to understand what the government is doing with their sensitive PII and what actions, if any, they need to take to protect their voting and privacy rights *before* November 2026. *See* CREW's Mem. in Support of Plaintiff's Mot. for a Prelim. Inunction ("PI Mem.") at 13. Thus, DOJ fails in its attempt to escape the many cases CREW cited showing that approaching elections heighten the urgency to inform the public. PI Mem. at 22 (citing *Protect Democracy Project*, 498 F. Supp. 3d at 140, *Wash. Post v. DHS*, 459 F. Supp. 2d 61, 74-75 (D.D.C. 2006), and *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005)).

The case law also refutes DOJ's claim that the November election is too far away to support the requisite urgency here. In *Leadership Conf. on C.R. v. Gonzales*, the court held that expedited processing was proper based on the exigency created by expiration of provisions of the Voting Rights Act more than two years after the at-issue FOIA requests were submitted. *See* 404 F.Supp.2d at 250-51, 260 (stating FOIA requests were submitted in May 2004 in advance of VRA provisions expiring in 2007). The key component of the court's exigency analysis was that "Plaintiff is monitoring election law reform and coordinating the legislative campaign to re-authorize provisions of the Voting Rights Act that are due to expire in 2007. Plaintiff's FOIA requests could have a vital impact on development of the substantive record in favor of re-authorizing or making permanent the special provisions of the Voting Rights Act." *Id.* at 260. Here too, CREW's requested information could have a vital impact on the development of the

substantive record concerning the potential misuse and abuse of millions of voters' sensitive PII ahead of elections less than nine months away, and likely will affect voter behavior during that time.

More still, the National Voter Registration Act ("NVRA") makes it illegal to systematically remove ineligible voters from the official list of eligible voters fewer than 90 days before a general election for federal office. *See* 52 U.S.C. 20507(c)(2)(A). That means that voters need to know what DOJ intends to do with unredacted voter rolls before *August 5, 2026*, the NVRA's 90-day cutoff for voter list maintenance before the November general election. In other words, if DOJ intends to enable mass voter purges using the data it is accumulating for the November general election, it must do so by August 5, 2026, and CREW immediately needs the information it is seeking so that voters know well before August whether their fundamental right to vote is in jeopardy.

Lastly, the leadup to the November 2026 general election is not the only source of urgency identified in CREW's FOIA request to the Civil Rights Division. Rather, CREW emphasized that its need for information about DOJ's collection of voters' PII is heightened because (1) "[w]ithout timely disclosure, the public will not know how federal officials are using or storing their voter data," and (2) "individuals may face criminal investigation and prosecution based on the data their states are sharing with the federal government." Hill Decl. Ex. C at 15. Neither of these exigencies are connected to November elections. They instead relate to *ongoing* threats to voters' privacy and data security accruing every single day that DOJ continues to collect, store, and access voters' PII while concealing its actions behind a veil of secrecy.

**Criminal Division Request**. For the same reasons, CREW's FOIA request to the DOJ's Criminal Division concerns a matter of current exigency and the consequences of delaying a

response would compromise a significant recognized interest. The only difference between the request to the Civil Rights Division and the Criminal Division is that CREW made the request to the Criminal Division in the leadup to the November 2025 general election, rather than in the leadup to the November 2026 general election. And although the November 2025 general election passed and CREW still does not have records because of the Criminal Division's intransigence, that has no bearing on the continued exigency of the request and the consequences that are continuing to accrue as DOJ continues to delay. As CREW noted in the FOIA request to the Criminal Division, "delaying a response would undermine voters' state and federal privacy rights." Hill Decl. Ex. A at 4. That is just as true now, after the November 2025 general election, as it was before the election. Further, just as DOJ's efforts to collect unredacted voter rolls were "ongoing in the months before the November 2025 general elections," *id.*, the same is true in the months after the November 2025 general elections, as DOJ has filed 24 lawsuits trying to force states and the District of Columbia to turn over voters' PII.[7]

> **2.  CREW is separately entitled to expedited processing under 28 C.F.R. § 16.5(e)(1)(iv).**

> > **i.  CREW's FOIA requests concern a matter of widespread and exceptional media interest.**

DOJ wrongly argues that its effort to consolidate the unredacted voter rolls of all 50 states and the District of Columbia to create a first-of-its-kind national voter roll is not generating "extensive media interest." PI Opp. at 12. Each FOIA request, however, cited 12 media reports regarding DOJ's efforts, *see generally* Hill Decl., Ex. A nn.4-14, Hill Decl., Ex. C, nn.4-16, including coverage by national outlets like the Associated Press, Washington Post, and San Francisco Chronicle, Hill Decl., Ex. A at 5 & n.14, Ex. C at 6 & n.16, and local outlets like

---

[7] *See* Martinez Ochoa, et al.*, supra* n.5.

the Illinois Journal Courier and Penn Live, Hill Decl., Ex. A at 3, n.6, Ex. C at 3 n.6. Thus, as in

*CREW v. DOGE*, CREW cited "numerous news articles" demonstrating widespread media

interest. 769 F. Supp. 3d at 27. And judges in this District have rejected any minimum number of

articles a requester must cite to demonstrate such interest. *See, e.g., Am. C.L. Union v. DOJ*, 321

F. Supp. 2d 24, 31-32 (D.D.C. 2004) ("The articles cited by plaintiffs in their request . . .

demonstrate that the manner and frequency of the government's use of section 215 are matters of

'widespread and exceptional media interest.' Although plaintiffs presented only a handful of

articles, they were published in a variety of publications, and repeatedly reference the ongoing

national discussion about the Patriot Act and section 215.").

> ## ii.    CREW's FOIA requests concern possible questions about the government's integrity.

DOJ's protestations that there are no questions about the government's integrity also fall

flat. To start, DOJ ignores the standard. "[N]either FOIA nor the departmental regulations

require the requester to prove wrongdoing by the government in order to obtain documents on an

expedited basis. The request must simply provide grounds to support the contention that . . .

'there exist *possible* questions about the government's integrity that affect public confidence.'"

*CREW v. DOJ*, 436 F. Supp. 3d at 361 (emphasis added). CREW's FOIA requests did exactly

that: They raised *possible* questions about whether DOJ's collection and aggregation of voters'

private data may violate federal and state privacy protections and the Privacy Act, and

emphasized that "[w]ithout expedited disclosure, it will be impossible for the public to evaluate

whether their state and federal privacy rights are being protected in the Department's

unprecedented requests for large amounts of sensitive personal data." Hill Decl., Ex. A at 4-5,

Ex. C at 5-6.

Moreover, these questions are no longer mere possibilities—federal courts have expressly held that DOJ's voter data collection efforts violate multiple federal and state privacy laws. *See Weber*, 2026 WL 118807, at *18-19 (holding that DOJ's voter data demands violate the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act); *Oregon*, 2026 WL 318402, at *6 (holding that "Oregon law clearly prohibits Defendants from disclosing the Sensitive Voter Data" to DOJ). Given that CREW's FOIA requests discussed the need for information to determine whether DOJ is violating state and federal law (which multiple courts have since confirmed), CREW's FOIA requests sufficiently demonstrated possible questions about the government's integrity.

### 3. CREW's requests for expedited processing are not moot.

DOJ also argues that expedited processing should be denied because the Civil Rights and Criminal Divisions have begun searching for records. PI Opp. at 13-14. But the Civil Rights Division has failed to commit to a proposed deadline for making even a *determination* on CREW's request, let alone propose a schedule for processing and production. Instead, DOJ vaguely states the Civil Rights Division's "search is ongoing." PI Opp. at 14; *see also* Kagle Decl., ¶ 10. As for the Criminal Division, it offered only an aspirational deadline of making "an interim disclosure determination" of records "by approximately April 28, 2026." PI Opp. at 13-14; *see also* Herrington Decl., ¶¶ 12, 19. Thus, neither request for expedition is moot, since neither Division has "conducted its search, applied exemptions it deems appropriate, and produced the requested record[s] to the requestor." *Power The Future v. U.S. Dep't of State*, No. 24-cv-346, 2025 WL 343175, at *4 (D.D.C. Jan. 30, 2025).

### B. DOJ concedes that it failed to meet FOIA's statutory deadlines.

DOJ concedes—as it must—that it missed its 20-business-day deadline to respond to CREW's FOIA requests to the Civil Rights and Criminal Divisions. PI Opp. at 15-16; Herrington

Decl., ¶¶ 7-12; Kagle Decl. ¶¶ 5-10. But it asserts that the only "penalty" for that tardiness is "that the agency cannot rely on the administrative exhaustion requirement." PI Opp. at 15. That is wrong. Although it is true that DOJ's failure to make a determination does not by itself entitle CREW to immediate production of documents, CREW's separate claim for expedited processing does. *See supra* Argument § 1.A. And CREW is also likely to succeed on its claim that DOJ failed to make a timely determination, entitling CREW to "judicial oversight" of DOJ's processing of its requests. *CREW v. FEC*, 711 F.3d at 190. A claim challenging an agency's untimely determination is "mooted" only "when the agency makes the required determination during litigation and produces documents." *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019). That has not occurred here, s*ee* Herrington Decl., ¶¶ 7-12; Kagle Decl. ¶¶ 5-10. Rather, because DOJ "has missed the statutory deadlines, [CREW] is certain to succeed on the merits of its claim that [DOJ] owes it a determination on its requests," and "since disclosure of non-exempt documents must follow shortly thereafter, the Court may order those disclosures at the same time under its customary supervisory authority in FOIA matters," including by way of a preliminary injunction. *Id.*; *see also Ctr. for Pub. Integrity v. DOD.*, 411 F. Supp. 3d 5, 7, 8 (D.D.C. 2019) (Kollar-Kotelly, J.) (granting preliminary injunctive relief, including expedited processing, where "prior to the filing of this lawsuit, Defendants did not provide a determination on Plaintiff's requests").

## II.    CREW will be irreparably harmed absent preliminary relief.

CREW's motion demonstrated that it is being irreparably harmed by being "denied access to information that is highly relevant to an ongoing public debate." *Protect Democracy Project*, 498 F. Supp. 3d at 141 (citing cases). As CREW established, DOJ's voter data collection efforts are "national" in scope (since the agency has already reached out to all 50 states and the District of Columbia), ongoing (as DOJ is continuing to press and litigate its demands for states'

full voter rolls), and unquestionably subject to ongoing public debate. *See* PI Mem. at 26-27. CREW also identified several other specific ways that it is being irreparably harmed that DOJ's opposition does not even mention, let alone refute. That includes the irreparable harm caused by DOJ's refusal to provide information about whether it is violating federal laws and fundamental rights, *id.* at 27-29, how DOJ is using voters' data, *id.* at 29-30, and what if anything DOJ is doing to protect Americans' data security and privacy. *See id.* at 30-32. DOJ is silent about all these arguments. *See* PI Opp. at 16-19. By failing to respond, DOJ has conceded each argument. *See* Local Civ. R. 7(b); *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) ("[Local Rule 7(b)] is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."); *Media Matters for Am. v. FTC*, No. 25-cv-1959, 2025 WL 2378009, at *22 (D.D.C. Aug. 15, 2025) (defendant conceded irreparable harm argument by failing to address it).[8]

    DOJ instead wrongly argues that CREW's asserted harm arising from the "Department's interactions with various States related to the collection of certain voter information" does not

---

[8] The non-FOIA cases cited by DOJ are inapposite. In *Chaplaincy of Full Gospel Churches v. England*, the court concluded that the alleged injury—potential reduced opportunities for promotion in the future based on past allegations of unlawful employment practices—was "far too speculative to warrant preliminary injunctive relief." 454 F.3d 290, 298 (D.C. Cir. 2006). In *Santos v. Collins*, the court concluded past "discriminatory treatment alone is sufficient to establish irreparable harm." No. 24-cv-1759, 2025 WL 1823471 at*7 (D.D.C. Feb. 26, 2025). And in *Hunter v. FERC*, the court held that the plaintiff's allegations that in the future his business would benefit by enjoining FERC was speculative because the plaintiff's "contention that the traders would return if the FERC action is discontinued is conditioned on" future actions. 527 F. Supp. 2d 9, 15 (D.D.C. 2007). Here, CREW's informational injury is not speculative and does not rely on past behavior or predictions about future conduct. DOJ is *currently* depriving CREW of information about DOJ's voter data dragnet, while it is rapidly amassing and using millions of voters' data with no transparency to the American public. CREW needs the information now to inform the public about DOJ's continuing activities.

constitute irreparable harm to CREW because "CREW does not challenge the propriety of the Department's interactions with the various states, or indeed Executive Order 14,248 setting the government's policy." PI Opp. at 18. DOJ misses the point. CREW's irreparable informational injury turns not on its need to obtain the information for use in substantive litigation, but rather on CREW's need to *inform the public* about ongoing federal actions of urgent national importance. Just as the court concluded when it granted a preliminary injunction in *Protect Democracy Project, Inc. v. DOJ*, "the American public has a need to know information regarding [DOJ] investigations into matters potentially affecting voting rights while the inquiries are still ongoing." 498 F. Supp. 3d at 142; *see also Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 13 ("absent an expedited response to Plaintiff's FOIA request, it is not clear to the Court that the public would otherwise have access to this relevant information"). After all, "the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny,'" and "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose." *DOJ v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 772 (1989).

DOJ's other arguments on irreparable harm likewise fail. According to DOJ, "CREW's sole request is access to government records, without even asserting it would enable it to take unspecified actions related to this issue." PI Opp. at 18. That is not true. As CREW's motion explicitly states, "CREW needs to inform the public about alleged federal government activity—DOJ's collection of voters' confidential and sensitive data and creation of a national voter roll[.]" PI Mem. at 2 (emphasis added). More specifically,

CREW will widely disseminate to the public, analyze, and otherwise use the records it obtains from DOJ in carrying out CREW's mission-critical functions.[9]

Nor did CREW inexcusably delay in filing its preliminary injunction motion. *Cf.* PI Opp. at 6, 18. CREW filed this suit on December 19, 2025, at the beginning of the winter holiday season, and then moved for a preliminary injunction on January 30, 2026, in response to major intervening developments including: (1) two federal court decisions on January 15, 2026, and January 26, 2026, declaring DOJ's voter data dragnet unlawful, *see Weber*, 2026 WL 118807; Minute Order, *United States v. State of Oregon*, No. 6:25-cv-1666, Dkt. No. 68 (D. Or. Jan. 26, 2026); (2) the U.S. Attorney General's January 24, 2026, coercive demand letter to Minnesota conditioning the withdrawal of federal immigration agents occupying Minnesota on the state turning over all its voter data to DOJ,[10] and (3) public reporting indicating that, as of January 28, 2026, at least 11 states had either provided, or said they will provide, DOJ with their full statewide voter registration list including PII.[11]

CREW's decision to seek preliminary relief because of these major intervening factual developments means its motion does not remotely approach the sort of "untimely filings" that

---

[9] For similar reasons, *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142 (D.D.C. 2011), is inapposite. There, the Sierra Club argued it would be irreparably harmed by a construction project, which was contingent on grant funding, so it sought to enjoin the grant funding. In dicta, the court determined that because the builder attested that "it will proceed with the Kemper project with or without CCPI assistance or a loan guarantee," Sierra Club "failed to meet its burden of showing that it will be irreparably harmed by DOE's funding of the Kemper Project absent the injunction it seeks." *Id.* at 153. Here, if CREW gets the records it seeks, it will inform the public about them, meaning there is no similar question about whether an injunction will redress CREW's asserted harm.

[10] *See* Wald, *supra* n.6.

[11] Kaylie Martinez Ochoa, Eileen O'Conner, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (archived Jan. 28, 2025), https://web.archive.org/web/20260128132746/https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

"may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong" because "delay indicates a lack of irreparable harm." *Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011). Indeed, as the D.C. Circuit made clear in *Gordon*, "[a]lthough federal courts have at times bolstered their denials of preliminary injunctions by referring to the late hour of a filing, those cases in no way stand for the proposition that a late filing, on its own, is a permissible basis for denying a preliminary injunction." *Id.* at 724. But here, CREW's preliminary injunction motion was neither "untimely" nor "late."

Finally, DOJ argues that CREW cannot establish irreparable harm because it did not explain "what efforts, if any, it has made to obtain the requested information from other sources." PI Opp. at 18. But DOJ does not dispute that the overwhelming majority of the materials CREW seeks are uniquely in the agency's possession. *See* Hill Decl. Ex. A at 1-2, Ex. C at 1-2 (requesting "All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning *DOJ's legal basis* for requesting and accessing PII held by election officials"; "All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the *scope of DOJ's use of the PII it seeks* from election officials"; DOJ's "Privacy or data security safeguards in place for protecting PII shared by election officials"; and "All records relating *DOJ's use* of the Department of Homeland Security's Systematic Alien Verification for Entitlements ('SAVE') system for purposes of verifying the citizenship of voters or voter registrants in any state" (emphasis added)).

For the one category of documents even conceivably available from other sources—"formal or informal data sharing agreements between DOJ and any state or election official providing access to personally identifiable information," Hill Decl., Ex.

A at 1, Ex. C at 1—"none of [DOJ's] proposed alternatives provide [CREW] with timely information." *CREW v. OMB*, 791 F. Supp. 3d 29, 50 (D.D.C. 2025). CREW does not even know for certain which states have entered into formal or informal data sharing agreements with DOJ. The best source of information CREW is aware of is one caveated report stating that "*[a]t least* 11 states have *either provided or* said they *will provide* their full statewide voter registration lists," and even among those states, "Mississippi, South Dakota, and Tennessee refused to sign the agreement [with DOJ] when they provided their voter rolls." [12] CREW cannot seek documents from other sources if they do not know who to ask for those documents, nor is it likely the materials would be made available more promptly through the state public records laws that DOJ would have CREW use. *See Protect Democracy Project*, 498 F. Supp. 3d at 142 (concluding that possible availability of materials through other sources is irrelevant where it is "uncertain whether there is any information currently available to the public").

### III.    The balance of equities and public interest favor granting a preliminary injunction.

DOJ's arguments about the balance of equities and public interest could be made in response to any preliminary injunction motion in a FOIA case: that granting preliminary relief moves one FOIA requester to the front of the line ahead of other requesters. PI Opp. at 19-25. But as this Court has made clear, "hardship on other FOIA requesters is not a bar to [preliminary] relief," because "extraordinary circumstances . . . warrant such line-cutting." *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 14; *see also Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 103 (D.D.C. 2020) (same). This makes sense. Given FOIA's

---

[12] Martinez Ochoa, et al., *supra* n.5, (emphasis added).

purpose of providing timely information about the activities of the government to inform democratic decision-making, the public interest strongly favors expedited processing where "[t]he requested information has the potential to inform citizens about an issue of the highest national concern," like the potential for mass disenfranchisement and misuse of voters' most sensitive data ahead of impending elections. *Id.* at 15. DOJ is therefore wrong. CREW is not merely trying, like all other FOIA requesters, to "ensure an informed citizenry," PI Opp. at 24; it is trying to ensure an informed citizenry *about an issue of the highest national concern.*" *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 15 (emphasis added).

DOJ also balks at CREW's proposed processing rate of 5,000 pages a month, *see* PI Opp. at 23, but courts have ordered similar or higher processing rates in arguably less urgent circumstances. *See, e.g.*, *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (ordering processing of 5,000 pages per month where records concerned relationship between FBI and several informants); *NRDC v. Dep't of Energy*, 191 F. Supp. 2d 41, 42-43 & n.5 (D.D.C. 2002) (ordering processing of the "vast majority of" 7,584 pages in a month where records concerned composition, activities, and operation of energy task force chaired by Vice President Cheney); *Judicial Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138, 140-41 (D.D.C. 2002) (ordering processing of 9,000 pages in two months where records concerned same Vice Presidential task force); *Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 162 (S.D.N.Y. 2019) (ordering processing rate of 5,000 pages per month where records concerned assassinated journalist Jamal Khashoggi).

DOJ speculates about the potential time and manpower it would take to process 5,000 pages of records per month, PI Opp. at 23, but is offers pure guesswork. DOJ has no idea how many documents its searches will return. The Criminal Division does not expect to complete its

search for documents for another two and a half months, until "approximately" April 28, 2026, at which point it will make "an interim disclosure determination." Herrington Decl., ¶ 12. And the Civil Rights Division has provided even less detail about where it is in the document retrieval process, noting only that its search for documents is "ongoing," with no apparent timeframe for providing a determination. Kagle Decl., ¶ 10. Plus, CREW's requests are limited in scope, each seeking only four narrow categories of documents over a period of months. Where, as here, a "request is relatively limited in that it only seeks [documents] regarding a narrowed subject matter and time period," courts in this District have said it is "not persuaded that [DOJ] would face a particularly heavy burden." *Protect Democracy Project*, 498 F. Supp. 3d at 144. Additionally, DOJ's "[v]ague suggestions that inadvertent release of exempted documents *might* occur are insufficient to outweigh the very tangible benefits that FOIA seeks to further— government openness and accountability." *Protect Democracy Project*, 498 F. Supp. 3d at 144 (quoting *Elec. Priv. Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 42 (D.D.C. 2006)). Insofar as DOJ claims it lacks sufficient resources to comply with its statutory obligations, FOIA authorizes this Court to order DOJ "to augment, temporarily or permanently, its review resources, human and/or technological" because a "heightened commitment of resources is warranted for this particular FOIA request." *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 166, 169 ("The Court was aware when it originally ordered a 5,000-page-per-month processing rate that this directive would require the State Department either to divert resources from other FOIA requests or to mobilize additional resources.").

The other cases DOJ cites regarding the public interest and balance of equities also are no help. In *CREW v. DOGE*, although the court ruled against CREW as to its FOIA request *to OMB*, the court further concluded that as to CREW's FOIA request *to DOGE,* the balance of

equities and public interest weighted in CREW's favor because "[n]ot only would the public benefit from participation in the "ongoing debate" discussed above, but an agency's compliance with a mandatory statutory regime is presumably always in the public interest." 769 F. Supp. 3d at 30. The same is true here: The public needs information to participate in the ongoing debate about DOJ's voter data dragnet and creation of a national voter roll, and the information CREW is seeking bears on whether DOJ is complying with not just one "mandatory statutory regime," but several state and federal laws. *Id.*

Additionally, in *Democracy Forward Foundation v. OMB*, the court was not convinced "that implementation of the [reduction in force] plans at issue [in the FOIA request] is imminent," 780 F. Supp. 3d 61, 75 (D.D.C. 2025), and because of that lack of imminence, determined that "allowing Democracy Forward to jump to the front of the FOIA processing line risks harming other requestors with more urgent needs." *Id.* at 78. Here, by contrast, there is no dispute that DOJ's voter data collection is *underway*—at least 11 states have already agreed to turn over their unredacted voter data and DOJ is suing more than 20 other jurisdictions for the same materials—meaning CREW's requests are far more urgent than the requests were in *Democracy Forward Foundation*, especially given the fundamental privacy and voting rights at stake. *Id.* Several other cases DOJ cites all are distinguishable for the same reasons. *See Long v. DHS*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006); *Progress v. Consumer Fin. Prot. Bureau*, No. 17-cv-686, 2017 WL 1750263, at *7 (D.D.C. May 4, 2017); *The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992); *Open Am. v. Watergate Special Prosec. Force*, 547 F.2d 605, 615 (D.C. Cir. 1976).

"If anything, the public's interest in this case is best assessed through the statutory provisions passed by the public's elected representatives. In that vein, pursuant to the statutory

provision mandating expedited treatment, the public's interest in expedited processing of the plaintiff's request outweighs any general interest that it has in first-in-first-out processing of FOIA requests." *Wash. Post*, 459 F. Supp. at 76. Moreover, because elections are fast approaching throughout 2026—including primaries in Arkansas, Texas, and North Carolina in less than three weeks[13]—and because "there is significant media attention and public debate on the topic of alleged voter fraud, the public interest is particularly well-served by the timely release of the requested documents." *Protect Democracy Project*, 498 F. Supp. 3d at 144.

### IV.    The Court should not require CREW to post a bond.

DOJ briefly suggests that, if the Court issues a preliminary injunction, it should require CREW to post security under Federal Rule of Civil Procedure 65(c). PI Opp. 25-26. The Court should deny that request. Rule 65(c) "vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond," *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999), "including the discretion to require no bond at all." *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020). "Exercising that discretion, federal courts typically require substantial bonds only in suits between private parties with significant monetary interests at stake." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 224 (D.D.C. 2025) (Kollar-Kotelly, J.). "Accordingly, multiple courts in this District have recently declined to require plaintiffs to post any bond as a condition of obtaining an injunction against agencies or officers of the federal government." *Id.* (collecting cases). Here, CREW is a public-interest plaintiff, its claims do not seek the expenditure of money or monetary damages, DOJ has not meaningfully demonstrated it "will suffer any material harm

---

[13] *See* National Conference of State Legislatures, *2026 State Primary Election Dates* (Updated Feb. 10, 2026), https://tinyurl.com/d3hby7su.

or monetary loss," *id.* at 225, and the balance of equities strongly favors CREW. Thus, no bond

or a nominal bond is appropriate. *See id.*; *Council on Am.-Islamic Rels. v. Gaubatz*, 667 F. Supp.

2d 67, 81 (D.D.C. 2009) (Kollar-Kotelly, J.) (denying request for bond); *see also Nat'l Council*

*of Nonprofits v. OMB*, 775 F. Supp. 3d 100, 130 (D.D.C. 2025) (same).[14]

## CONCLUSION

The Court should enter a preliminary injunction requiring DOJ to expedite processing of

CREW's FOIA requests and produce all nonexempt records along with a *Vaughn* index on a

rolling basis, processing no fewer than 5,000 pages of potentially responsive records per month.

The Court should further order DOJ to prioritize processing and production of the following sub-

categories of requested records: (1) records reflecting data sharing agreements with any state or

local official or private party regarding state voter data, (2) records reflecting agreements with

any private contractor retained to assist DOJ in reviewing state voter data, (3) records relating to

DOJ's use of DHS's SAVE system for voter citizenship checks, and (4) privacy or data security

policies and procedures for state voter data containing PII.

---

[14] DOJ cites only one case in support of its argument that the Court should enter a bond here: *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) (per curiam), *reh'g en banc denied* (July 16, 2025). But that "unpublished per curiam order . . . does not constitute binding precedent." *Kelleher v. Dream Catcher, L.L.C.*, No. 16-cv-02092, 2017 WL 7279397, at *1 (D.D.C. July 24, 2017) (citing *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011)). Further, in *NTEU*, the court's observation about bonds was dicta and limited to the facts of that case: it stated only that "we *doubt* that $0 was the 'appropriate bond' *in this case*." 2025 WL 1441563 at *3 n.4 (emphasis added).

Dated: February 13, 2026                    Respectfully submitted,

                                            /s/ Nikhel S. Sus
                                            Nikhel S. Sus (D.C. Bar No. 1017937)
                                            Kayvan Farchadi (D.C. Bar No. 1672753)
                                            John B. Hill (N.Y. Bar No. 5505508)[+]
                                            CITIZENS FOR RESPONSIBILITY
                                            AND ETHICS IN WASHINGTON
                                            P.O. Box 14596
                                            Washington, D.C. 20044
                                            (202) 408-5565
                                            nsus@citizensforethics.org
                                            kfarchadi@citizensforethics.org
                                            jhill@citizensforethics.org

                                            *Counsel for Plaintiff*

                                            [+]*admitted pro hac vice*