UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 25-4426 (CKK) |

## JOINT STATUS REPORT

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") and Defendant the Department of Justice ("DOJ"), collectively "the parties," submit this status report to apprise the Court of the progress in this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## Background

CREW brought this action pursuant to FOIA seeking records relating to DOJ's "collection of confidential voter information and personally identifiable information ("PII")." *See* Compl. (ECF No. 1) 1. CREW made FOIA requests to three divisions of DOJ: the Civil Division ("CIV") and the Criminal Division ("CRM") on September 4, 2025; and the Civil Rights Division ("CRT") on November 4, 2025.

CREW moved for a preliminary injunction on January 30, 2026 (ECF No. 8). On February 19, 2026, this motion was granted in part and denied in part without prejudice (ECF No. 14). The Court ordered the DOJ to expedite its processing of CREW's FOIA requests as to CRM and CRT, and to produce nonexempt, responsive records on a rolling basis, accompanied by a *Vaughn* index if appropriate; ordered the parties to meet and confer on or before March 13, 2026, in good faith

1

to prioritize among the records to be processed in response to CREW's FOIA requests and to develop a schedule for expedited processing, with productions to begin as soon as practicable; ordered the Parties to file a joint status report on or before March 20, 2026, advising the Court of the status of the processing of CREW's FOIA requests, stating the date on which DOJ made or will make its initial production of responsive records, and proposing a schedule for further proceedings, if appropriate; and ordered that, until further order of this Court, the parties shall continue to file joint status reports every 30 days advising the Court of the status of the processing of CREW's FOIA requests and any other matters requiring the Court's attention (ECF Nos. 14 and 15).

CREW provided proposed priority items to DOJ counsel via email on February 23, 2026. On February 27, 2026, DOJ confirmed via email to CREW that DOJ is prioritizing the CRT and CRM FOIA requests. (DOJ informed CREW at the parties' March 11 conferral that DOJ objects to CREW's proposed priority items; DOJ did not prioritize CREW's proposed priority items and DOJ's objections are elaborated below in Defendant's Statement.)

The FOIA requests and CREW's proposed priority items may be found at the end of this document as an appendix.

### **Meet and Confer**

On March 11, 2026, the Parties met and conferred as instructed by the Court.

CREW agreed to forgo as part of its FOIA requests court filings that are publicly available in their entirety and do not include internal commentary.

CRT agreed to produce formal agreements with states relating to voter data or verifying voter citizenship on or before March 20, 2026. CRT expressed concerns regarding CREW's

proposed priority items; these concerns, and CREW's response, are discussed more fully below in Plaintiff's and Defendant's Statements below.

CRM represented that it has initiated four electronic searches. Two are complete and did not locate any responsive records. CRM represented that it expected to complete the remaining two searches within 30 days.

CIV represented that it would determine the locations or custodians that may need to be searched for potentially responsive documents within two weeks.

### Defendant DOJ's Statement

A. **The Status of Processing**

Below, the relevant DOJ divisions advise the Court on the status of the processing of CREW's FOIA requests.

**CRT:**

CRT believes that it is the component most likely to possess responsive documents in this litigation. CRT made an initial production of responsive records on March 19, 2026.

CRT has completed its search for potentially responsive documents as of March 20, 2026. Responsiveness reviews are ongoing. CRT anticipates there will be less than 8,000 responsive documents to process in this case.

CRT is willing to work in good faith with CREW to narrow and prioritize CREW's requests; however, CRT objects to CREW's proposed prioritization list as it now stands for two reasons.

First, "an agency is required to read a FOIA request as drafted, 'not as either the agency or [the requester] might wish it was drafted.'" *Judicial Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 456 (D.D.C. 2016) (RMC) (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)).

CREW's proposed prioritization list substantially rewrites the "FOIA request as drafted," turning three requests into four priorities. Individual priorities seek documents from multiple requests. For example, Priority 1.i is covered by Request 1, but Priority 1.iii, to the extent that it is not broader than the underlying FOIA request, is covered by Request 2. The proposed prioritization list as it now stands is a redraft of the request as CREW might wish it was drafted, not a narrowing and prioritization of the FOIA requests CRT received.

Second, CREW's proposed prioritization list does not "narrow." The proposed prioritization list is broader than the underlying FOIA requests. For example, CREW's Priority 1.ii, "All final formal or informal agreements with non-governmental third parties relating to voter data or verifying voter citizenship," is not covered by an underlying FOIA request.

CRT offers to meet and confer with CREW to discuss remaining issues in an attempt to resolve these disputes without burdening the court with further litigation.

CRT expects to process at least 250 pages per month on a rolling basis moving forward, with the next interim response expected on or before April 24, 2026 and monthly responses thereafter until production is complete.

**CRM:**

As of the filing of this status report, CRM has located no potentially responsive records. A search for potentially responsive records will be concluded within three weeks, on or by April 10, 2026.

**CIV:**

CIV has completed its internal inquiries and has determined that any relevant potentially responsive documents would likely fall within CRT's purview; as a result, CIV believes that it does not possess potentially responsive records.

If CRT's searches identify a CIV custodian who would have potentially responsive materials beyond what is possessed by CRT, CIV is willing to follow that lead and revisit its search.

B. **Response to Plaintiff CREW's Statement:**

As an initial matter, CREW's Statement is in the nature of a motion for specified relief rather than the status update that the Court requested. Defendant maintains that none of the specific relief requested by CREW at the end of its statement below is warranted or consistent with this Court's prior ruling or the expedited processing provision of FOIA, which directs only that records be processed "as soon as practicable" (ECF No. 14 at 12). Should the Court be inclined to consider any of the relief requested by CREW, Defendant requests a reasonable opportunity to provide a comprehensive response as CREW's Statement below was not provided to undersigned counsel until the afternoon of March 20, 2026. Reserving the right to respond more fully to CREW's Statement as the Court may direct, Defendant addresses below certain mischaracterizations by CREW, and makes no concessions by not addressing all of CREW's contentions below.

1. CREW states: "DOJ rebuffed CREW's multiple requests for dates to meet and confer prior to March 11, refused to provide requested updates about record processing, and did not search for records in accordance with CREW's proposed priorities, despite the Court's direction that DOJ work in good faith to do so." The Court had ordered the parties to meet and confer by March 13, 2026; DOJ agreed in good faith to a meet and confer two days prior to that, at the earliest time that gave the DOJ divisions an opportunity to make reasonable progress on their searches for responsive documents. DOJ objects to the implication that meeting *in advance* of the Court-ordered date for a meet and confer is a failure to "work in good faith." DOJ further objects that it did not "refuse[] to provide

requested updates about record processing;" processing had not begun at that point, as DOJ was conducting initial searches for potentially responsive documents. Finally, DOJ is willing to work with CREW to prioritize the FOIA requests received, but CREW does not have the right to unilaterally set priorities that differ from and go beyond the underlying FOIA requests.

2. CREW's new list of "Uncontested Priority Items," which DOJ was first presented with at 12:46 p.m. on Friday, March 20, 2026, does not accurately reflect statements DOJ made at the meet and confer. For example, CREW states "CREW Priority Item 2.i to which DOJ has no objection" – but in fact, at the meet and confer, DOJ objected that Priority 2.i is broader than the FOIA request itself.

3. CREW states: "DOJ's Civil Rights Division has not even complied with its own paltry proposed processing rate. To date, the Civil Rights Division processed *only 19 pages*, consisting of two documents." DOJ notes that this was a first production, made before the first Joint Status Report, in a good-faith attempt to begin productions "as soon as practicable" and to honor what the DOJ understood to be CREW's top priority. DOJ objects to CREW's characterization. CRT also notes that it has suggested a processing rate of 250 per month as a floor ("at least"); that this is a reasonable and practicable rate for CRT in response to a FOIA request[1]; that the universe of documents to be produced can shrink with narrowing and responsiveness reviews.

DOJ has been, and continues to be, committed to working in good faith with Plaintiff to produce responsive documents in a timely fashion. The DOJ does not believe that this process is

---

[1] CRT notes that their FOIA branch is a small program with a growing intake volume and backlog; 250 pages per month ensures accuracy, promotes fairness to other requesters, prevents one or a few requesters from monopolizing CRT's finite resources, and respects the demands of other FOIA programs that may be called upon to review records on consult.

helped when its good faith efforts – like meeting and conferring earlier than required by the Court or making an initial production of documents in advance on the first status report – are mischaracterized by Plaintiff.

Finally, DOJ notes that FOIA responses are a process – search, processing, production. Now that the most relevant DOJ division, CRT, has completed initial searches, more fruitful discussions about narrowing and prioritization are possible. DOJ believes a new meet and confer may allow the parties to successfully narrow and prioritize the potentially responsive documents to be processed.

### Plaintiff CREW's Statement

CREW respectfully renews its request that the Court set a specific processing rate and schedule for production, which the Court previously denied without prejudice, and requests that the Court order DOJ to prioritize CREW's Priority Items, *see* Appendix § C, consistent with the Court's order that the parties "prioritize the prompt production of records for which the public interest in disclosure is most urgent and therefore most likely to outweigh other requestors' interest in prompt processing of other FOIA requests." ECF 14 at 2.

Since the Court entered a preliminary injunction on February 19 recognizing the "strong public interest in understanding the details of DOJ's efforts to compile a national voter list, which may affect individuals' and States' decisions about how to protect both voter privacy and the fundamental right to vote," ECF No. 15 at 21, DOJ has redoubled its voter data collection efforts and intensified its accusations of widespread voter fraud. The Civil Rights Division has confirmed in court filings that "[a]s of March 13, 2026, fourteen states have provided their [statewide voter registration lists ("SVRLs")] without any [memorandum of understanding ("MOU")], and two

states have agreed to provide their SVRL under the terms of the MOU."[2] And DOJ claims that, as of March 17, it has completed a "review of 50–60 million voter records," which it asserts "has revealed there are thousands of ineligible and outdated registrations—including non-citizens."[3]

In stark contrast to its lightning-fast collection and review of millions of Americans' voter data, DOJ has responded to this Court's preliminary injunction with delay, opacity, and intransigence. DOJ rebuffed CREW's multiple requests for dates to meet and confer prior to March 11, refused to provide requested updates about record processing, and did not search for records in accordance with CREW's proposed priorities, despite the Court's direction that DOJ work in good faith to do so. DOJ's Civil Rights Division has processed only two documents, consisting of 19 pages, to date. *See* Letter from Civil Rights Division FOIA Officer to CREW (Mar. 19, 2026), https://tinyurl.com/fbn7axp5. And going forward, DOJ has proposed a meager processing rate of just 250 pages a month. *See supra* p. 4. That is *half* of the *standard* processing rate in this District. *See* ECF No. 15 at 23 (noting that 500 pages a month is standard). But as this Court has already recognized, this case is far from standard. It instead fits the "small category" of FOIA cases warranting emergency relief. *Id.* at 21.

Because DOJ has the resources to rapidly ingest and review tens of millions of Americans' sensitive voter records from 16 states' SVRLs, it should have no difficulty promptly complying

---

[2] *See* Neff Decl. ¶ 15, *United States v. Fontes*, ECF No. 35-1, No. 26-cv-00066 (D. Ariz. March 13, 2026), https://tinyurl.com/3w66vy4f.

[3] Dep't of Just. Civil Rights Division Assistant Attorney General Harmeet Dhillon (@AAGDhillon), X (March 17, 2026 at 2:43 PM), https://tinyurl.com/5e763c6h; *see also* Fred Lucas, *DOJ Review of Voter Rolls Uncovers Alarming Names—and It's Only the Beginning*, The Daily Signal (March 11, 2026), https://tinyurl.com/482rck3z ("The Justice Department is finding thousands of noncitizens and dead people on voter rolls as it pursues more state election records, said Harmeet Dhillon, the assistant attorney general for civil rights, in an interview. 'We're finding tens of thousands of noncitizens on the voter rolls, hundreds of thousands of dead people on the voter rolls, and duplicate registrations between states,' Dhillon said ….").

with its obligations under FOIA and this Court's preliminary injunction. That is especially true for high priority records that DOJ should be able to identify and release (or confirm do not exist) with minimal effort.

CREW respectfully requests that the Court order DOJ to prioritize processing and production of responsive records as detailed below.

> **1. The Court should order DOJ to process and produce by a date certain readily identifiable, non-exempt records it concedes are within the scope of CREW's FOIA requests.**

During the parties' March 11 conferral, DOJ's counsel represented that the Civil Rights Division has no objection to the following portions of CREW's priority items:

- **Uncontested Priority Item A** - "All final formal or informal agreements with states relating to voter data or verifying voter citizenship." *See* Appendix § C (unmodified CREW Priority Item 1.i, to which DOJ has no objection).

- **Uncontested Priority Item B** - "All final formal or informal agreements with . . . DHS relating to . . . the Systematic Alien Verification for Entitlements (SAVE) system." *See* Appendix § C (modified to reflect the portions of CREW Priority Item 1.iii to which DOJ has no objection).

- **Uncontested Priority Item C** - "All final formal or informal policies, procedures, analyses, determinations or conclusions (including underlying memoranda) relating to DOJ's use of [the PII it seeks from election officials]." *See* Appendix § C (modified to narrow the scope of CREW Priority Item 2.i to track CRT FOIA Request 3.a verbatim). Above, in DOJ's Statement, DOJ objects to Uncontested Priority Item C. *See supra* p. 6. But because Uncontested Priority Item C is identical to CREW's original CRT FOIA Request 3.a, there is no basis to object to CREW's request that DOJ prioritize one of CREW's underlying FOIA requests to the Civil Rights Division.

- **Uncontested Priority Item D** - "All final formal or informal policies, procedures, analyses, determinations or conclusions (including underlying memoranda) relating to DOJ's use of SAVE." *See* Appendix § C (unmodified CREW Priority Item 2.ii, to which DOJ has no objection).[4]

---

[4] DOJ also did not object to the following priority item, which is directed only to the Criminal Division: "All formal or informal policies, determinations or conclusions (including underlying memoranda) relating to DOJ's legal basis for requesting and accessing PII held by election officials."

Of these four categories, DOJ has not provided a date by which it will respond to any of Uncontested Priority Items B, C, and D. Rather, DOJ has produced only a subset of documents covered by Uncontested Priority Item A: DOJ's formal MOUs with the only two states that have executed MOUs (Alaska and Texas).

The Court should order DOJ to respond in full to each of these four uncontested priority items by March 30. Each category of records is readily identifiable, should not be voluminous, is not subject to any plausible FOIA exemption claim, and is highly relevant to the issues of national importance that undergird this Court's preliminary injunction.

As noted above, DOJ has acknowledged in court filings that at least 14 states have provided their SVRLs to the Civil Rights Division without a formal MOU.[5] CREW is seeking any "informal agreements," policies, or procedures governing these 14 states' transfer of millions of Americans' voter data to DOJ. DOJ does not explain why it cannot easily identify and produce such records, or confirm they do not exist. This should not be an onerous task. And if DOJ is properly handling millions of Americans' sensitive voter data in compliance with statutory safeguards, then it should have no difficulty pinpointing the operative records governing the data's transfer, storage, and use. Or, if no such records exist, DOJ should be able to promptly confirm that fact.

Similarly, DOJ should have no difficulty promptly identifying and releasing any agreement that DOJ has with DHS relating to use of the SAVE system for "voter verification" purposes. To use SAVE, federal agencies "must execute a Memorandum of Agreement or Computer Matching Agreement with the U.S. Citizenship and Immigration Services that includes terms that the SAVE

---

[5] *See* Neff Decl. ¶ 15, *supra* n. 2.

Program will be used in accordance with the law."[6] DOJ either has some user agreement to access SAVE, and documents relating to any use of SAVE by DOJ, or it does not. Any executed SAVE agreement would be a final decisional document and would not be subject to any plausible FOIA exemption claim.[7]

In light of (1) DOJ's ongoing and rapid efforts to review millions of voters' data from 16 states and climbing, (2) DOJ's acknowledgement that the Uncontested Priority Items are within the scope of CREW's FOIA requests, (3) the records' relevance to issues of urgent national importance, and (4) the lack of burden on DOJ to identify and produce these discrete records, CREW requests that the Court order the Civil Rights Division to produce all non-exempt records responsive to Uncontested Priority Items A-D outlined above, or confirm that it has no such responsive records, by March 30, 2026.

### 2. The Civil Rights Division's scope-based objections to CREW's remaining priority items are meritless.

On the parties' March 11 conferral call, DOJ raised (for the first time) objections to the remainder of CREW's proposed priority items, claiming they are broader than or not covered by CREW's FOIA requests. DOJ's objections are meritless. "In light of FOIA's pro-disclosure purpose, an agency has 'a duty to construe a FOIA request liberally.'" *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)). Thus, "cases within this Circuit have often disapproved of agencies narrowing the scope of a FOIA request to exclude materials reasonably

---

[6] DHS, *Privacy Impact Assessment for the Systematic Alien Verification Entitlements "SAVE" Program*, DHS Ref. No. DHS/USCIS/PIA-006(d), at 21 (Oct. 31, 2025), https://perma.cc/G92ULYPM.

[7] Indeed, DHS recently produced an administrative record in another case that includes dozens of SAVE "voter verification" MOAs—none of which are with DOJ. *See* DHS Corrected A.R. Index at 4-8, *League of Women Voters v. DHS*, 25-cv-3501-SLS, ECF No. 65-2 (D.D.C.), https://tinyurl.com/4pfrmfbr.

within the description provided by the requester." *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 102 (D.D.C. 2013). "For instance, where a request contains different layers of specificity, an agency should take the 'broader reading' that the request is 'reasonably susceptible' to, since 'the drafter of a FOIA request might reasonably be seeking all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof.'" *NBC 7 San Diego v. DHS*, No. 19-1146, 2022 WL 17820557, at *6 (D.D.C. Dec. 20, 2022) (quoting *LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (citation modified)). An agency's narrow interpretation of a FOIA request is "lawful only if the agency is truly not 'able to determine precisely what records were being requested.'" *Inst. for Just. v. IRS*, 941 F.3d 567, 572 (D.C. Cir. 2019) (citation modified); *see also Ctr. for Immigr. Stud. v. HHS*, No. 24-1661, 2025 WL 1835978, at *1, 2 (D.D.C. July 3, 2025) ("Defendant's search was inadequate because it failed to 'liberally' construe Plaintiff's request," including "additional gloss" that Plaintiff provided "to define the scope of the request").

DOJ's overly narrow construction of CREW's FOIA requests runs afoul of these settled principles. Specifically, DOJ has made the following scope-based objections to CREW's priority requests:

| CREW Priority Item | DOJ's Objection |
|---|---|
| **CREW Priority Item 1.2 -** All final formal or informal agreements with non-governmental third parties relating to voter data or verifying voter citizenship | It is CREW's understanding that DOJ objects to this priority item in full as "not covered by an underlying FOIA request." |
| **CREW Priority Item 1.3 -** All final formal or informal agreements with any federal agency, including but not limited to DHS, relating to voter data, verifying voter | It is CREW's understanding that DOJ objects to this priority item as "broader than the underlying FOIA requests," except for records relating to SAVE, to which DOJ does not object, as noted above |

| | |
|---|---|
| citizenship, or the Systematic Alien Verification for Entitlements (SAVE) system. | |
| **CREW Priority Item 2.1 -** All final formal or informal policies, procedures, analyses, determinations or conclusions (including underlying memoranda) relating to DOJ's use of state voter data. | It is CREW's understanding that DOJ objects to this priority item because DOJ views the term "state voter data" as "broader than the underlying FOIA requests." As described above DOJ does not object to providing records related to DOJ's use of "the PII it seeks from election officials." |
| **CREW Priority Item 3.1 -** All external communications between DOJ and any third party relating to voter data, verifying voter citizenship, or SAVE | It is CREW's understanding that DOJ objects to this priority item as "broader than the underlying FOIA requests," except for records relating to SAVE, to which DOJ does not object, as noted above. |
| **CREW Priority Item 4.1 -** All other communications relating to voter data and verifying voter citizenship, or SAVE | It is CREW's understanding that DOJ objects to this priority item as "broader than the underlying FOIA requests," except for records relating to SAVE, to which DOJ does not object, as noted above |

DOJ overlooks that each of these priority categories are encompassed by the plain text of CREW's CRT FOIA Request item 3.a, which comprehensively seeks "[a]gency records sufficient to show . . . [a]ll formal or informal policies, determinations or conclusions (including underlying memoranda) *concerning the scope of DOJ's use of the PII it seeks from election officials. This includes records reflecting any plans for how [DOJ] will compile, aggregate, synthesize, match, link, or otherwise combine data obtained from an election official with any other data,*" ECF 8-3 at 12 (CRT FOIA Request item 3.a) (emphasis added), and CRT FOIA Request item 2, which in similarly inclusive fashion seeks all "records *relating to* DOJ's use of the [SAVE] system *for purposes of verifying the citizenship of voters or voter registrants in any state,*" ECF 8-3 at 11 (CRT FOIA Request item 2) (emphasis added). These FOIA requests are "reasonably susceptible"

to a reading that CREW is seeking *all* records relating to DOJ's use of voters' sensitive data and verifying voters' citizenship, including but not limited to any relevant agreements or communications with contractors or other private parties whom DOJ has enlisted to aid its secretive voter "list maintenance verification procedures." *See* MOU between DOJ and Alaska Division of Elections (Dec. 2025) at 7, https://tinyurl.com/5n6rnus5; MOU between DOJ and Office of the Texas Sec'y of State (Dec. 2025) at 7, https://tinyurl.com/4575zjs2. That is true even if CREW's requests "evinc[e] a heightened interest" in voters' PII and the SAVE system. *LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d at 348; *see also Nation Magazine*, 71 F.3d at 890 (holding that FOIA request seeking records "'pertaining to' [Ross] Perot" and specifically "ask[ing] for records indexed under Perot's name" was "sufficient to alert the agency that appellants sought information about Perot, even if it was not indexed under his name").

Similarly, **CREW's Priority Item 4.3** seeks "All formal or informal policies, determinations or conclusions (including underlying memoranda) relating to DOJ's privacy or data security safeguards for protecting PII shared by election officials." This category mirrors the language of CRT FOIA Request item 3, which seeks "[a]gency records sufficient to show . . [p]rivacy or data security safeguards in place for protecting PII shared by election officials." It is unclear what DOJ's basis is for objecting to this category, but its plain text is materially identical to CRT FOIA Request item 3.

In sum, DOJ's scope-based objections to CREW's priority items are meritless because DOJ failed to "liberally"—or even fairly—construe CREW's FOIA requests. *See Evans*, 951 F.3d at 583; *see also Ctr. for Immigr. Stud.*, 2025 WL 1835978, at *1; *Behrens v. United States*, 183 F. Supp. 3d 1, 5 (D.D.C. 2016).

      **3. The Court should order an expedited processing rate of 5,000 pages per month.**

CREW renews its request that DOJ process 5,000 pages a month. Courts in this District have ordered similar or higher processing rates in arguably less urgent circumstances and in the face of less government intransigence. "[R]elevant case law establishes that courts have the authority to impose concrete deadlines on agencies that delay the processing of requests meriting expedition." *EPIC v. DOJ*, 416 F. Supp. 2d 30, 38 (D.D.C. 2006). For example, where DOJ's processing was "unnecessarily slow and inefficient," a court in this District ordered the agency to process 1500 pages every 15 calendar days until processing was complete. *Id.* (citing *EPIC v. DOJ*, No. 05-845, slip op. at 4–5 (D.D.C. Nov. 13, 2005)).

As CREW previously demonstrated, a 5,000 page-a-month processing rate is supported by other decisions in this District. *See*, *e.g.*, *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (ordering processing of 5,000 pages per month where records concerned relationship between FBI and several informants); *Nat. Res. Def. Council v. U.S. Dep't of Energy*, 191 F. Supp. 2d 41, 42-43 & n.5 (D.D.C. 2002) (ordering processing of the "vast majority of" 7,584 pages in a month where records concerned composition, activities, and operation of energy task force chaired by Vice President Cheney); *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 191 F. Supp. 2d 138, 140-41 (D.D.C. 2002) (ordering processing of 9,000 pages in two months where records concerned same Vice Presidential task force); *Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 162 (S.D.N.Y. 2019) (ordering processing rate of 5,000 pages per month where records concerned assassinated journalist Jamal Khashoggi). Such a processing rate would ensure DOJ completes its review of the 8,000 potentially responsive documents at issue here within a few months. "[C]ourts often find that one to two months is sufficient time for an agency to process broad FOIA requests…." *EPIC*, 416 F. Supp. 2d at 40 (collecting cases). That is true even in more complicated cases which, unlike this one, "involve classified or exempt material." *Id.*; *see also ACLU v. U.S.*

*Dep't of Defense*, 339 F. Supp. 2d 501, 504-05 (S.D.N.Y.2004) (ordering processing and production of all responsive documents within one month, even though they implicated national security issues); *Judicial Watch, Inc*, 191 F. Supp. 2d at 140–41 (ordering agencies to process over 6,000 pages of material within 60 days).

Moreover, DOJ's proposed processing rate of 250 pages per month, *see supra* p. 4, is woefully inadequate. 250 pages per month is half of the standard processing rate in this District, as this Court has already observed. *See* ECF No. 15 at 23. And in light of DOJ's estimate there are as many as 8,000 "documents" responsive to CREW's FOIA requests (which likely means many more *pages*), *see supra* p. 3, DOJ's proposed 250 page processing rate "ensures that larger requests [like CREW's] are subject to an interminable delay in being completed." *Seavey v. DOJ*, 266 F. Supp. 3d 241, 246 (D.D.C. 2017). "Telling the requester 'You'll get the documents 15, or eight, years from now' amounts as a practical matter in most cases to saying 'regardless of whether you are entitled to the documents, we will not give them to you.'" *Id.* (quoting *Fiduccia v. DOJ*, 185 F.3d 1035, 1041 (9th Cir. 1999)). DOJ's "desire for administrative convenience is simply not a valid justification for telling" CREW that it "must wait decades for the documents [it] needs." *Id.*

DOJ's Civil Rights Division has not even complied with its own paltry proposed processing rate. To date, the Civil Rights Division processed *only 19 pages*, consisting of two documents. Letter from Civil Rights Division FOIA Officer to CREW (Mar. 19, 2026), https://tinyurl.com/fbn7axp5 ("For this interim response, the Civil Rights Division reviewed 19 pages of responsive records and is releasing 19 pages to you in whole or in part…."). But a month ago, on February 19, the Court ordered DOJ to "develop a schedule for expedited processing, with productions to begin *as soon as practicable*." ECF 14 at 2 (emphasis added). In other words, over the last month, DOJ has come up 231 pages short of even its own proposed processing rate.

16

As the Court recognized in granting preliminary relief, "there is an unusually strong public interest in timely disclosure" here. ECF No. 15 at 22. Because of that urgency and because "the glacial pace at which defendant agencies have been responding to plaintiffs' requests shows an indifference to the commands of FOIA, and fails to afford accountability of government that the act requires," *ACLU*, 339 F. Supp. 2d at 504, the Court should order DOJ to process 5,000 pages per month.

*    *    *

For the foregoing reasons, CREW respectfully requests that the Court order DOJ to (1) process and produce all non-exempt Civil Rights Division records responsive to Uncontested Priority Items A-D outlined above, accompanied by a *Vaughn* index if appropriate, by March 30, 2026; (2) process and produce all non-exempt records responsive to the balance of CREW's FOIA requests on a rolling basis at a rate of 5,000 pages per month, accompanied by a *Vaughn* index if appropriate, prioritizing processing in accordance with CREW's remaining Priority Items, *see* Appendix § C; and (3) affirmatively confirm if DOJ has no records responsive to any Priority Item.

**<u>Conclusion</u>**

In light of the foregoing, the parties propose that they submit a status report to the Court within 30 days, or by April 20, 2026, to apprise the Court of progress in this matter.

Dated: March 20, 2025

Respectfully submitted,

| | |
|---|---|
| /s/ *Nikhel S. Sus* | JEANINE FERRIS PIRRO |
| Nikhel S. Sus (D.C. Bar No. 1017937) | United States Attorney |
| Kayvan Farchadi (D.C. Bar No. 1672753) | |
| John B. Hill (N.Y. Bar No. 5505508)* | By: /s/ *Samuel G. Settle* |
| CITIZENS FOR RESPONSIBILITY AND | SAMUEL G. SETTLE |
| ETHICS IN WASHINGTON | Assistant United States Attorney |
| P.O. Box 14596 | 601 D Street, NW |
| Washington, D.C. 20044 | Washington, DC 20530 |
| (202) 408-5565 | (202) 252-7705 |
| nsus@citizensforethics.org | |
| kfarchadi@citizensforethics.org | *Attorneys for the United States of America* |
| jhill@citizensforethics.org | |

*Counsel for Plaintiff*

**pro hac vice* pending

**Appendix: FOIA Requests and CREW's Proposed Priority Items**

**A. CIV and CRM FOIA Requests (September 4, 2025) (ECF No. 1-1):**
1) All formal or informal data sharing agreements between DOJ and any state or election official providing access to personally identifiable information ("PII").
2) Agency records sufficient to show:
   a. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning DOJ's legal basis for requesting and accessing PII held by election officials.
   b. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of the PII it seeks from election officials. This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match, link, or otherwise combine data obtained from an election official with any other data.
   c. Privacy or data security safeguards in place for protecting PII shared by election officials.

**B. CRT FOIA Request (November 4, 2025) (ECF No. 1-5):**
1. All formal or informal data sharing agreements between DOJ and any state or election official providing access to personally identifiable information ("PII").
2. All records relating to DOJ's use of the Department of Homeland Security's Systematic Alien Verification for Entitlements ("SAVE") system for purposes of verifying the citizenship of voters or voter registrants in any state.
3. Agency records sufficient to show:
   a. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of the PII it seeks from election officials. This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match, link, or otherwise combine data obtained from an election official with any other data.
   b. Privacy or data security safeguards in place for protecting PII shared by election officials.

**C. CREW's Proposed Priority Items:**
1. Priority 1: From January 20, 2025 – present
   i. All final formal or informal agreements with states relating to voter data or verifying voter citizenship (based on CRM FOIA Req. 1 and CRT FOIA Req. 1).
   ii. All final formal or informal agreements with non-governmental third parties relating to voter data or verifying voter citizenship (based on CRM FOIA Req. 2.b and CRT FOIA Reqs. 2 & 3.a).
   iii. All final formal or informal agreements with any federal agency, including but not limited to DHS, relating to voter data, verifying voter citizenship, or the Systematic Alien Verification for Entitlements (SAVE) system (based on CRM FOIA Req. 2.b and CRT FOIA Reqs. 2 & 3.a).
2. Priority 2: From January 20, 2025 – present

19

    i.    All final formal or informal policies, procedures, analyses, determinations or conclusions (including underlying memoranda) relating to DOJ's use of state voter data (based on CRM FOIA Req. 2.b and CRT FOIA Reqs. 2 & 3.a).

    ii.    All final formal or informal policies, procedures, analyses, determinations or conclusions (including underlying memoranda) relating to DOJ's use of SAVE (based on CRM FOIA Req. 2.b and CRT FOIA Reqs. 2 & 3.a).

3. Priority 3: From January 20, 2025 – present

    i.    All external communications between DOJ and any third party relating to voter data, verifying voter citizenship, or SAVE (based on CRM FOIA Req. 2.b and CRT FOIA Reqs. 2 & 3.a).

4. Priority 4: From January 20, 2025 – present

    i.    All other communications relating to voter data, verifying voter citizenship, or SAVE (based on CRM FOIA Req. 2.b and CRT FOIA Reqs. 2 & 3.a).

    ii.    All formal or informal policies, determinations or conclusions (including underlying memoranda) relating to DOJ's legal basis for requesting and accessing PII held by election officials (based on CRM FOIA Req. 2.a).

    iii.    All formal or informal policies, determinations or conclusions (including underlying memoranda) relating to DOJ's privacy or data security safeguards for protecting PII shared by election officials (based on CRM FOIA Req. 2.c and CRT FOIA Req. 3.b).