**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

        Plaintiff,

        v.

U.S. DEPARTMENT OF JUSTICE,

        Defendant.

Civil Action No. 25-cv-4426-CKK

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE OR CLARIFY
THE COURT'S FEBRUARY 19 AND MARCH 24 ORDERS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT .................................................................................................................... 4

    I.    DOJ is indefinitely and unlawfully stalling the release of the Consultation Pages, which DOJ has already determined are responsive to CREW's highest priority requests. ........... 4

       A.    The Court's February 19 and March 24 Orders bind the Consulting Agencies under Federal Rule 65(d)(2)(c). ...................................................................................... 4

       B.    FOIA's processing requirement is not satisfied while DOJ's consultations remain pending with the other agencies. ................................................................................ 8

    II.    DOJ's interim *Vaughn* indices are facially inadequate. ................................................... 13

CONCLUSION ................................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Cases**

*CREW v. FEC*,
711 F.3d 180 (D.C. Cir. 2013) ..................................................................................9, 10, 11, 12

*Defs. of Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C. 2009) ...............................................................................13, 14

*Elec. Priv. Info. Ctr. v. DOJ*,
296 F. Supp. 3d 109 (D.D.C. 2017) .....................................................................................10

*Founding Church of Scientology v. Bell*,
603 F.2d 945 (D.C. Cir. 1979) .............................................................................................13

*Golden State Bottling Co. v. NLRB*,
414 U.S. 168 (1973) ..............................................................................................................4

*Greenberg v. U.S. Dep't of Treasury*,
10 F. Supp. 2d 3 (D.D.C. 1998) ...........................................................................................11

*Keys v. DHS*,
570 F. Supp. 2d 59 (D.D.C. 2008) .......................................................................................12

*McGehee v. CIA*,
697 F.2d 1095 (D.C. Cir. 1983) ......................................................................................11, 12

*Oglesby v. U.S. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ...............................................................................................10

*Schoenman v. FBI*,
604 F. Supp. 2d 174 (D.D.C. 2009) .....................................................................................14

*Summers v. DOJ*,
140 F.3d 1077 (D.C. Cir. 1998) ...........................................................................................13

*Matter of Wade*,
969 F.2d 241 (7th Cir. 1992) ...............................................................................................11

*Wash. Metro. Area Transit Com'n v. Reliable Limousine Serv.*,
776 F.3d 1 (D.C. Cir. 2015) ...................................................................................................4

**Statutes, Rules, and Regulations**

5 U.S.C.
§ 552(6)(B)(ii) .....................................................................................................................10
§ 552(6)(C)(i) .......................................................................................................................10
§ 552(a)(3)(A) ...................................................................................................................9, 12
§ 552(a)(3)(C) .......................................................................................................................12
§ 552(a)(3)(D) .......................................................................................................................12
§ 552(a)(6)(A)(i) ....................................................................................................................9
§ 552(a)(6)(B) .......................................................................................................................10
§ 552(a)(6)(B)(i) ...............................................................................................................10, 12
§ 552(a)(6)(B)(iii) ...........................................................................................................9, 10, 12
§ 552(b) ..................................................................................................................................9
§ 552(f) ...................................................................................................................................8

**Statutes, Rules, and Regulations—continued**

28 C.F.R.
    § 16.4(d) ....................................................................................................11
    § 16.4(d)(1) ...............................................................................................11

Fed. R. Civ. P. 65(d) ...........................................................................................3, 4

**Other Authorities**

DHS, *DHS/USCIS/PIA-006 Systematic Alien Verification for Entitlements (SAVE)
    Program* .......................................................................................................7

Executive Office of the President, the White House ..............................................6

Fox News Clips, *DOJ takes legal action against 29 states, DC to access voter
    rolls*, at 5:05 (YouTube, April 20, 2026) ....................................................7

Glenn Thrush & Devlin Barrett, et al., *Administration Targets Noncitizen Voting,
    Despite Finding It Rare*, N.Y. Times (Feb. 18, 2026) ..................................8

ICE, *HSI: Who We Are* ........................................................................................7

Office of Management and Budget, the White House..............................................6

Press Release, DHS, *DHS, USCIS, DOGE Overhaul Systematic Alien Verification
    for Entitlements Database* (Apr. 22, 2025).................................................6

Sarah Lynch, *Justice Dept. close to finalizing deal to hand over states' voter roll
    data to Homeland Security, sources say*, CBS News (March 26, 2026) ..................8

Sarah Lynch, *US Justice Dept considers handing over voter roll data for criminal
    probes, documents show*, Reuters (Sept. 9, 2025) .......................................8

In this Freedom of Information Act ("FOIA") action, the Court has already set the rules for the road and taken DOJ to task for skirting them. Yet by disclaiming responsibility for completing processing of hundreds of pages sent from DOJ to other government agencies for "consultation,"[1] DOJ is still shirking its obligation to make determinations, finish processing, and produce nearly 600 pages pending consultation that DOJ has already identified as responsive to CREW's highest priority FOIA requests. Those 600 pages represent a significant portion of the records at issue, considering that DOJ has so far produced only approximately 1,200 pages with substantive content. Likewise, by failing to produce adequate *Vaughn* indices, DOJ is effectively filibustering summary judgment by preventing CREW from assessing whether DOJ is properly withholding some 13,000 pages—more than 10x the 1,200 or so pages with substantive content that DOJ has produced.

At the outset of this case, the Court determined that DOJ violated FOIA by ignoring CREW's election-related FOIA requests. The Court held CREW is entitled to expedited processing because the requests concern a "federal effort to compile a national voter list at DOJ" amid an election cycle that is "is inherently time-limited" and "delaying a response to CREW's FOIA requests would compromise the public's interest in understanding the nature of the allegedly ongoing effort before the upcoming elections pass by." February 19, 2026, Memorandum Opinion, ECF 15 (the "February 19 Mem. Op."), at 19.

---

[1] Those external agencies are the Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), the White House Executive Office of the President ("EOP"), the Office of Management and Budget ("OMB"), and the Social Security Administration ("SSA") (collectively, the "Consulting Agencies"). *See* Exs. 1 & 2, n.1 (transmittal letters for DOJ's interim productions listing consulting agencies receiving document referrals from DOJ).

1

A month later, the Court had no choice but to intervene again. DOJ's intransigence in processing responsive records led the Court to conclude that the government's "processing rate [wa]s not commensurate with the 'importance and urgency' of CREW's FOIA requests, which this Court previously concluded give rise to 'an unusually strong public interest in timely disclosure.'" March 24, 2026, Order, ECF 18 (the "March 24 Order"), at 3 (quoting February 19 Mem. Op. at 14 & 22).

Now, DOJ is once again forcing CREW to seek the Court's intervention. This time, CREW asks the Court to enforce or clarify its past orders, which DOJ is violating in two respects.

*First*, DOJ is indefinitely and unlawfully stalling—through interagency "consultations"— the release of pages that DOJ has already determined are responsive to CREW's highest priority requests. Although DOJ purports to have "finished processing all responsive records in this case," Ex. 3, DOJ has sent 575 pages (the "Consultation Pages") to processing purgatory by sending them to the Consulting Agencies without indicating when these consultations will be completed. Yet even though the Consultation Pages remain outstanding, DOJ claims it has completed processing them, disclaiming any further obligation under this Court's orders or FOIA with respect to those pages.

Essentially, DOJ posits that under FOIA, if responsive records include "equities of one or more other agencies," Exs. 1 & 2, the government can permanently freeze processing of those records and render federal courts powerless to enforce their own injunctions, simply by passing the processing buck from a defendant agency to any other non-defendant agency. But DOJ's position is contrary to both the Federal Rules of Civil Procedure and FOIA.

Even though they are not parties to this case, the Consulting Agencies are still subject to this Court's injunctive orders under Federal Rule 65(d), which states that other parties "who are in

active concert or participation with" a party subject to an injunction are likewise bound by it if have "actual notice" of the order. Fed. R. Civ. P. 65(d)(2)(c). Here, DOJ has confirmed that the Consulting Agencies received actual notice of the Court's orders and they are working in concert with DOJ, both in DOJ's voter roll collection efforts and in reviewing related records responsive to CREW's FOIA requests. The Consulting Agencies are therefore bound by the Court's orders under Rule 65(d)(2)(c) and must process the Consultation Pages at a rate of 1,000 pages per week.

Further, under FOIA, interagency consultations are a *component* of an agency's obligation to "process" records. An agency in receipt of a valid FOIA request has not discharged its obligation to finish "processing" a responsive record until after it has sent the record for consultation, the consultation is complete, the original responding agency makes a "determination" regarding that responsive record, and then releases or withholds it.

In addition to being legally erroneous, DOJ's position on the Consulting Pages would allow agencies to freely evade preliminary injunctions and expedited processing orders in any case where another agency may have "equities" requiring "consultation" as to certain records. Such a rule would turn FOIA on its head and significantly undermine the courts' equitable authority.

*Second*, DOJ's interim *Vaughn* indices, Exs. 4, 5, 6, & 7, are insufficiently detailed and do not comply with the Court's directive that "DOJ shall produce nonexempt, responsive records on a rolling basis, accompanied by a *Vaughn* index if appropriate." February 19, 2026, Order, ECF 14 (the "February 19 Order") at 1; *see also* March 24 Order at 5. Now that DOJ purports to have finished processing all responsive records in this case, Ex. 3, DOJ must comply with its obligation under the Court's order to provide an adequate *Vaughn* index for the processed records. This is especially crucial given the enormous quantity of pages that DOJ has withheld—more than 12,000—in contrast to the mere 750 or so pages with substantive content DOJ has produced.

Accordingly, the Court should enter an order (1) clarifying that its February 19 and March 24 Orders apply to responsive records DOJ has sent to external agencies for "consultation," (2) clarifying that DOJ has not completed processing the Consultation Pages that are still pending consultation with the Consulting Agencies, and (3) enforcing the February 19 and March 24 Orders against DOJ by ordering it to produce a revised *Vaughn* index, including adequate detail about the withheld documents for CREW to assess DOJ's exemption claims.

### ARGUMENT

**I.    DOJ is indefinitely and unlawfully stalling the release of the Consultation Pages, which DOJ has already determined are responsive to CREW's highest priority requests.**

**A.  The Court's February 19 and March 24 Orders bind the Consulting Agencies under Federal Rule 65(d)(2)(c).**

The Court's February 19 and March 24 Orders bind the Consulting Agencies under Federal Rule 65(d)(2)(c) and require those agencies to process the Consultation Pages at the rate already set by the Court. Under Rule 65(d)(2), an injunction "binds" not only "the parties," but also "other persons who are in active concert or participation with" the parties and "who receive actual notice of [the injunction] by personal service or otherwise." Fed. R. Civ. P. 65(d)(2). As the D.C. Circuit has explained, "Rule 65(d)(2) incorporates the common-law principle that an injunction 'not only binds the parties defendant but also those identified with them in interest, in 'privity' with them.'" *Wash. Metro. Area Transit Com'n v. Reliable Limousine Serv.,* 776 F.3d 1, 9 (D.C. Cir. 2015) (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973)). Because that standard is met here, the Court's February 19 and March 24 Orders bind the Consulting Agencies.

**i.   The Consulting Agencies have "actual notice" of the Court's February 19 and March 24 Orders.**

DOJ has confirmed the Consulting Agencies have actual notice of the Court's orders. *See* Parties' April 22, 2026, Joint Status Report, ECF 20 (the "April 22 JSR"), at 7 (DOJ stating that

"[c]onsulting agencies and components have been repeatedly impressed that this matter is subject to expedited processing and a preliminary order"). In email communications between counsel for the parties, counsel for DOJ explicitly stated DOJ has "confirmed that when the consultation requests were sent out they were accompanied by a copy of the March 24th order." In addition to attaching the Court's March 24 Order, the consultation requests DOJ sent to the Consulting Agencies stated:

> The Civil Rights Division is processing an **expedited** request from CREW for specified records related to the Division's efforts to obtain state voter registration lists.  The Court partially granted CREW a **Preliminary Injunction**.

> The Court has ordered the Division to process at least 1000 pages of responsive records per week and make interim productions of non-exempt information every 14 days starting on March 31, 2026.

> We located records in which your agency has equities.  Accordingly, we are providing the records to you for review and input as to any additional redactions of information.  **We ask that you expedite this litigation consultation to the extent possible.**

Having received this email and the Court's March 24 Order, the consulting agencies are on actual notice of the Court's preliminary injunction expediting processing of CREW's FOIA requests and the order instating a processing rate of "no less than 1,000 pages of potentially responsive records per week." March 24 Order at 5.

> ### ii.  DOJ is also "in active concert or participation with" the Consulting Agencies.

DOJ has already conceded it is in active concert or participation with the Consulting Agencies by sending the Consultation Pages to those agencies. Because this is a FOIA case and the central issue is whether DOJ is processing requested records, the fact that that the Consulting Agencies are assisting in processing is dispositive of them being "in active concert or participation with" DOJ under Rule 65(d)(2)(c).

To the extent any additional showing is required—and none is—the Consulting Agencies are also acting in concert with and participating in DOJ's efforts to collect and review voter rolls.

**1. DOJ is acting in concert with and seeking the participation of the White House.**[2] As the Court already recognized, "*in response to the President's Executive Order*, DOJ is attempting to assemble a national voter roll containing voter registration lists from nearly every State and the District of Columbia." February 19 Mem. Op. at 5 (emphasis added). The records DOJ has already produced confirm the White House is participating in DOJ's voter roll collection efforts. *See*, *e.g.*, Ex. 8, CREW v. DOJ - CRT – 000066 (internal email among DOJ Civil Rights Division attorneys regarding voter roll collection efforts stating "[t]here is another call with the White House next week on progress"); Ex. 8, CREW v. DOJ - CRT – 000793 (internal email among DOJ Civil Rights Division attorneys regarding voter roll collection efforts and desire to obtain access to DHS's SAVE system, stating "[w]e need to get ODAG or Associates office involved and maybe WH").

**2. DOJ is acting in concert with and seeking the participation of DHS, USCIS, and SSA.** The Court has also identified that "public reporting shows that DOJ is sharing some of the voter data that it receives from States with the Department of Homeland Security ('DHS') to run 'citizenship checks' using an online service called the Systematic Alien Verification for Entitlements ('SAVE') Program." February 19 Mem. Op at 8; *see also id.* at 9 ("DOJ is also reportedly sharing some voter data directly with DHS for the purpose of running voter lists through

---

[2] EOP and OMB are located within the White House. *See* Executive Office of the President, the White House, https://www.whitehouse.gov/eop/; Office of Management and Budget, the White House, https://www.whitehouse.gov/omb/.

6

SAVE to check individuals' citizenship status.").[3] The SAVE system is run and operated by USCIS (a DHS component) and now accesses and relies on data provided by SSA,[4] meaning those agencies are all participating in or acting in concert with DOJ in reviewing voter rolls. The records DOJ has already produced also establish DOJ seeking SAVE access to assist with its voter roll analysis. *See*, *e.g.*, Ex. 8, CREW v. DOJ - CRT – 000047 (email from DOJ attorney to Montana regarding request for Montana's voter rolls, stating "we are requesting a copy of Montana's statewide voter registration list, so that we can facilitate a review for noncitizens and dead voters via DHS"); Ex. 8, CREW v. DOJ - CRT – 000751-52 (email chain including discussion of efforts by DOJ to access to SAVE system); Ex. 8, CREW v. DOJ - CRT – 000780 (same); Ex. 8, CREW v. DOJ - CRT – 000793 (same); Ex. 8, CREW v. DOJ - CRT – 000828 (same); Ex. 8, CREW v. DOJ - CRT – 000887 (same).

**3. DOJ is acting in concert with and seeking the participation of ICE and HSI.**[5] DOJ's *Vaughn* index in this case shows DOJ working in concert with HSI and ICE. DOJ is withholding producing a document entitled "HSI Non-Citizen Hits.xlsx." *See* Ex. 6 at 3. DOJ officials' statements and public reporting also confirm DOJ is working with HSI and ICE after DOJ identifies purported non-citizens on states' voter rolls. Last week, Assistant Attorney General Harmeet Dhillon said in an interview that DOJ has "referred approximately 25,000 people with no citizenship records to the Homeland Security to dig into that further and see the extent to which

---

[3] USCIS is the DHS component responsible for SAVE. *See* Press Release, DHS, *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database* (Apr. 22, 2025), https://perma.cc/Y8A5-YX3M; *see also* March 24 Order at 8-9 (citing same).

[4] See DHS, *DHS/USCIS/PIA-006 Systematic Alien Verification for Entitlements (SAVE) Program*, https://perma.cc/8F2V-XBXR; March 24 Order at 8 (citing same).

[5] HSI is a component of ICE. *See* ICE, *HSI: Who We Are*, https://perma.cc/VUU7-E8DW (describing HSI as a "directorate within" ICE).

people voted."[6] Likewise, reports show that "[t]he Justice Department will share voter roll data that its Civil Rights Division is collecting from states with Immigration and Customs Enforcement Homeland Security Investigations as part of an effort to determine whether non-citizens are unlawfully registered or have cast ballots in prior elections, the sources said. . . . The formal request for access to the data is expected to come from Todd Lyons, who is currently the senior official performing the duties of the acting director of ICE."[7]

*              *              *

The Consulting Agencies have actual notice of the Court's orders, are acting in concert with DOJ and participating in processing CREW's highest priority FOIA requests, and are acting in concert with DOJ and participating in reviewing states' voter rolls. Thus, under Federal Rule 65(d)(2)(C), the Court's February 19 and March 24 Orders and a 1,000 page-per-week processing rate bind the Consulting Agencies.

### B. FOIA's processing requirement is not satisfied while DOJ's consultations remain pending with the other agencies.

DOJ has not completed "processing" any record that is still pending review by a Consulting Agency.[8] Under FOIA, processing ends when an agency has determined whether a record is

---

[6] Fox News Clips, *DOJ takes legal action against 29 states, DC to access voter rolls*, at 5:05 (YouTube, April 20, 2026), https://www.youtube.com/watch?v=3eJVzgDj5TY.

[7] Sarah Lynch, *Justice Dept. close to finalizing deal to hand over states' voter roll data to Homeland Security, sources say*, CBS News (March 26, 2026), https://perma.cc/MC69-6XYU; *see also* Sarah Lynch, *US Justice Dept considers handing over voter roll data for criminal probes, documents show*, Reuters (Sept. 9, 2025), https://tinyurl.com/yc4bmnxw; Glenn Thrush & Devlin Barrett, et al., *Administration Targets Noncitizen Voting, Despite Finding It Rare*, N.Y. Times (Feb. 18, 2026), https://tinyurl.com/2u3k79rd.

[8] DOJ's previous representations in this case have conflated *agencies* and *components*. FOIA's obligations run to the entire "agency," not to its individual components. *See* 5 U.S.C. § 552(f) (defining agency as an "executive department"). Even when DOJ has established "a decentralized system for responding to FOIA requests," April 22 JSR at 6, the statutory obligation to comply with FOIA rests with DOJ, not its components, or with other agencies. *See* April 23, 2026, Minute Order (stating that the Court's FOIA orders apply to "all components of DOJ, including

8

responsive and either (1) discloses it or (2) withholds it under a claimed exemption. DOJ's contrary position cannot be squared with FOIA's text, structure, or longstanding circuit precedent.

FOIA's processing framework encompasses every step from receipt of a valid request to disclosure or withholding. Within twenty days of receipt of a valid FOIA request, a recipient agency must determine whether and to what extent it will comply with the request and then notify the requester of that "determination." 5 U.S.C. § 552(a)(6)(A)(i). To issue a qualifying "determination," the agency "must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013) (Kavanaugh, J.). A recipient agency's "determination" under FOIA is the threshold decision that triggers its obligation to make responsive records "promptly available" to the requester, or, where authorized, withhold them under a specific statutory exemption. 5 U.S.C. §§ 552(a)(3)(A), (b). Until each of those steps is complete, processing remains ongoing.

When determining whether to comply with a given FOIA request, recipient agencies sometimes identify records containing information implicating other agencies' "substantial interests." 5 U.S.C. § 552(a)(6)(B)(iii). In such "unusual circumstances," the recipient agency may consult with the interested agency before making a release or withholding determination.[9] *Id*. Such

---

components that receive records referred internally for consultation" and that "a DOJ component that receives exactly 1,000 pages for consultation must complete the consultation within one week so that the Civil Rights Division can make a timely determination with respect to those pages and produce all responsive, non-exempt records to CREW").

[9] A "referral for consultation" or "consultation" should not be confused with a "referral," which is a discrete action under FOIA, as interpreted by the D.C. Circuit. Recipient agencies can "refer" a record to another agency to make a "determination" when the record originated with that other agency; by contrast, when a record contains information implicating the "substantial interests" of another agency, the recipient agency is responsible for making the "determination," but may

9

consultation extends the recipient agency's timeline for making its "determination" by 10 working days.[10] *Id.* § 552(a)(6)(B). The recipient agency must give the requester written notice of the need for interagency consultation and provide "the date on which a determination is expected to be dispatched," which may not be extended. *Id.* U.S.C. § 552(a)(6)(B)(i); *see Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) ("[T]he agency may grant itself one ten-day extension of time for either the initial response or the administrative appeal, upon notice to the requester.").

FOIA's statutory scheme places such interagency consultations at the front end of the recipient agency's processing sequence, "*before* a 'determination' can be made." *CREW*, 711 F.3d at 189 n.8 (emphasis added); *see Elec. Priv. Info. Ctr. v. DOJ*, 296 F. Supp. 3d 109, 123 n.4 (D.D.C. 2017) ("[I]f the consultation process is used," an agency consults "with another before making *its own* release determination") (emphasis added); *see also* 5 U.S.C. § 552(a)(6)(B)(iii) (directing agencies to conduct consultations only "to the extent reasonably necessary to the proper *processing* of the particular request") (emphasis added).

It follows that DOJ's processing of a record sent out for interagency consultation is not complete until DOJ exercises its own judgment about whether to release or withhold it, and then produces or withholds that record. DOJ inadvertently appears to have conceded this point when it asserted that "[c]onsultations are a recognized part of the 'processing' of a FOIA request." April 22 JSR at 6. To deem DOJ's processing complete while a record is still awaiting review by another agency—at a stage that, by statute, occurs *before* DOJ's own "determination" can issue—inverts

---

choose to "consult" the interested agency before doing so. There were no referrals here—only consultations.

[10] FOIA allows agencies to extend this deadline further if the scope of the request is so broad that it is impossible to make a determination within the given time, and offer the requestor an opportunity to narrow, 5 U.S.C. § 552(6)(B)(ii), or if "exceptional circumstances" apply, subject to Court supervision, *id.* § 552(6)(C)(i).

the FOIA sequence. DOJ cannot have finished processing a record on which it has yet to make its threshold "determination." And while DOJ "may desire to keep FOIA requests bottled up in limbo" by arguing that it has completed processing on hundreds of potentially responsive pages by initiating open-ended consultations with other agencies, "the statute simply does not countenance such a system." *CREW v. FEC*, 711 F.3d at 186–87.

DOJ's own regulations track this framework: consultation is a tool that DOJ components may use to *inform* their own "determinations"—not to *transfer* the responsibility of making one. DOJ regulations direct each processing component to assess whether "another agency of the Federal Government is better able to determine whether the record is exempt from disclosure under the FOIA." 28 C.F.R. § 16.4(d). If the answer is yes, the component "should typically consult with that other component or agency *prior to making a release determination*." *Id.* § 16.4(d)(1) (emphasis added). The regulation contemplates interagency consultations as an input; it does not authorize DOJ to treat an agency record as fully processed before that input has been received and acted upon.

Longstanding Circuit precedent supports this interpretation. While CREW has identified no case directly addressing consultations, even where a record has been *fully referred* to another agency for processing because the records originated with that agency—which, as noted above, is not the case here—the original recipient agency continues to bear "responsibility" for ensuring the "processing the request" complies with FOIA. *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983); *see Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 26 (D.D.C. 1998) ("In order to discharge their burden under the FOIA, the FBI must ensure that plaintiffs received adequate responses concerning the three referred documents"); *see also Matter of Wade*, 969 F.2d 241, 247–48 (7th Cir. 1992) ("Once a FOIA request has been made to an agency, that agency's referral to a

11

different agency regarding disclosure does not divest the original agency of responsibility to respond to the FOIA request.") (citing *McGehee*). Indeed, the legality of an agency's referral procedure is "best determined on the basis of [its] consequences"; a referral system constitutes a "withholding" under FOIA "if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *McGehee*, 697 F.2d at 1110; *see also Keys v. DHS*, 570 F. Supp. 2d 59, 70 (D.D.C. 2008) (agency "ignored its responsibilities under FOIA" by failing to follow up with two other agencies to which it had referred records during an eleven-month gap).

DOJ's responsibility here is clearer than in the referral cases, because the records at issue *are* DOJ records that originated *with DOJ*. As such, the records it sent for *consultations* remain squarely subject to DOJ's statutory obligations to fully process them. 5 U.S.C. § 552(a)(3)(A), (C), (D). If a complete referral—which transfers decision-making authority entirely—does not relieve the recipient agency of its FOIA processing responsibilities, *McGehee*, 697 F.2d at 1110, then a consultation—which keeps the "determination" decision with DOJ—certainly cannot.

Despite DOJ's protestations, FOIA explicitly calibrates the process and timetables for external agency consultations: it labels consultation an "unusual circumstance," allows a ten-day *processing* extension on notice, and demands that the consultation proceed "with all practicable speed" and only "to the extent reasonably necessary." 5 U.S.C. § 552(a)(6)(B)(i), (iii). The penalty for not abiding by these deadlines is judicial review. While this understandably imposes burdens on agencies, "Congress made that decision. If the Executive Branch does not like it or disagrees with Congress's judgment, it may so inform Congress and seek new legislation." *CREW v. FEC*, 711 F.3d at 190.

DOJ cannot claim compliance with this Court's March 24 processing order by sending records for interagency consultation while indefinitely deferring the threshold "determination" that FOIA commits to DOJ alone. DOJ's argument to the contrary has no basis in law. The Court should reject DOJ's position and order DOJ to complete processing of all records pending interagency consultations according to this Court's previously entered processing schedule.

## II.    DOJ's interim *Vaughn* indices are facially inadequate.

DOJ has withheld as exempt or duplicative more than 13,000 pages but is not complying with the Court's February 19 and March 24 Orders requiring DOJ to provide *Vaughn* indices with its rolling productions that permit CREW to assess whether those withholding determinations were proper. DOJ's interim *Vaughn* indices, Exs. 4, 5, 6, & 7, come nowhere near complying with the requirements for such an index. "When an agency declines to produce a requested document, the agency bears the burden before the trial court of proving the applicability of claimed statutory exemptions." *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). So that a FOIA requester can assess the government's withholding decision, "[t]he *Vaughn* index 'must adequately describe each withheld document or deletion from a released document,' and 'must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant.'" *Id.* (quoting *Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C. Cir. 1979)).

Here, DOJ's "descriptions of the documents withheld and the reasons for withholding them are unduly vague and general." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 89 (D.D.C. 2009). Each interim *Vaughn* index merely includes a field called "exemption," and the specific exemption claimed, e.g., (b)(5) or (b)(6), without any reasoning for invoking the exemption. *See* Exs. 4, 5, and 6. Additionally, each interim *Vaughn* index merely includes the "Title" of the document—typically the subject line of an email or the file name of a saved document—without any description of document. *See id.* "Broad categorical descriptions such as

13

these are inadequate to allow a reviewing court to engage in a meaningful review of the agency's decision." *Defs. Of Wildlife*, 623 F. Supp. 2d at 89 (cleaned up). "In addition to failing to provide adequate detail about the identity and contents of the documents, the *Vaughn* Index provides only bare legal conclusions regarding the exemptions relied upon by [CRT] to justify withholding." *Id.* As a result, DOJ "has not met its burden to disclose as much information as possible in its Vaughn Index." *Id.* at 90 (cleaned up). Although DOJ has indicated during conferrals a willingness to address questions about specific entries in the interim *Vaughn* indices or suggested such issues should be dealt with through summary judgment, DOJ must address endemic issues—the inadequacy of document descriptions and its bases for withholding—on a systemic rather than individual level and it must do so *before* summary judgment so that the parties know what the operative facts are. *See Schoenman v. FBI*, 604 F. Supp. 2d 174, 179, 195 (D.D.C. 2009) (granting "Motion for Order Requiring FBI to Provide Complete Vaughn Index" before deciding summary judgment because courts "cannot resolve the merits . . . until an adequate *Vaughn* index is compiled," and deciding *Vaughn* indices were "utterly inadequate" because "FBI failed to provide a single, comprehensive *Vaughn* index that accounts for all sample documents Plaintiff intended to be included in the index and that adequately explains the FBI's withholdings"). CREW therefore requests that the Court order DOJ to comply with the Court's previous orders by producing a revised, comprehensive *Vaughn* index that includes adequate detail about the withheld documents and adequate withholding justifications for CREW to assess whether DOJ's claims of exemptions are meritorious. And given the Court's previous findings about urgency, CREW requests that DOJ take these corrective steps within two weeks of the Court deciding this Motion. And for the Consultation Pages still pending, CREW requests that the Court order DOJ to produce an adequate, comprehensive *Vaughn* index when DOJ completes processing.

**CONCLUSION**

For the foregoing reasons, CREW respectfully requests that the Court (1) clarify that its February 19 and March 24 Orders apply to responsive records DOJ has sent to external agencies for "consultation," (2) clarify that DOJ has not completed processing the Consultation Pages that are still pending consultation with the Consulting Agencies, and (3) enforce the February 19 and March 24 Orders against DOJ by ordering it to produce a revised, comprehensive *Vaughn* index, including adequate detail about the withheld documents and adequate withholding justifications for CREW to assess whether DOJ's claims of exemptions are meritorious.

Dated: May 1, 2026                                           Respectfully submitted,

                                                            /s/ *Nikhel S. Sus*
                                                            Nikhel S. Sus (D.C. Bar No. 1017937)
                                                            Kayvan Farchadi (D.C. Bar No. 1672753)
                                                            John B. Hill (N.Y. Bar No. 5505508)*
                                                            CITIZENS FOR RESPONSIBILITY
                                                            AND ETHICS IN WASHINGTON
                                                            P.O. Box 14596
                                                            Washington, D.C. 20044
                                                            (202) 408-5565
                                                            nsus@citizensforethics.org
                                                            kfarchadi@citizensforethics.org
                                                            jhill@citizensforethics.org

                                                            *Counsel for Plaintiff*

                                                            *admitted *pro hac vice*

15